


**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

RAJ P. SABHLOK AND MICHAEL C. PATTISON,

Defendants.

No. C 08-04238 CRB

**ORDER DENYING MOTIONS TO DISMISS AND MOTION TO STRIKE**

This is a Securities and Exchange Commission ("SEC") enforcement action alleging fraud in violation of the federal securities laws. Defendants are two former executives of Embarcadero Technologies, Inc. ("Embarcadero") who engaged in a scheme to backdate stock options granted to the company's employees and officers. Before the Court are (1) Defendant Pattison's Motion to Strike untimely allegations in the complaint; (2) Defendant Pattison's Motion to Dismiss; and (3) Defendant Sabhlok's Motion to Dismiss. The Court DENIES Defendants' Motions, as the SEC has sufficiently alleged that Defendants were engaged in a fraudulent backdating scheme and the claims are not time-barred.

Background

Embarcadero is a software company that went public in 2000. See Compl. ¶ 11. Defendant Raj Sabhlok served as the chief financial officer of Embarcadero from January

2000 through October 2005. Id. ¶ 9. As CFO, Sabhlok was responsible for reviewing and signing Embarcadero's financial statements and disclosures. Id. ¶ 57. Sabhlok continued in other executive positions with the company through November 2007. Id. Defendant Michael Pattison was Embarcadero's controller from April 2000 through October 2005. Id. ¶ 10. As controller, Pattison was responsible for carrying out the majority of day-to-day accounting functions. Id. ¶ 58. The SEC alleges that from 2000 through 2004, Sabhlok and Pattison engaged in a fraudulent scheme to grant backdated stock options and hide millions of dollars in compensation expenses. Id. ¶ 1.

In October 2000, the Compensation Committee authorized the CEO to grant options to non-executive employees. Id. ¶ 18. Over the next four years, Embarcadero made over 800 options grants, representing over four million shares. Id. For sixteen consecutive quarters, Sabhlok and Pattison, together with the CEO, secretly granted in-the-money options with strike prices selected from among the low closing prices Embarcadero's stock had experienced prior to the day on which the grant was actually made. Id. ¶ 19. Defendants then backdated records to make it appear as if the grants had been made on the date corresponding to the low price. Id. The SEC alleges that along with the CEO, Sabhlok and Pattison were actively involved in formulating and executing the backdating plan. Id. ¶¶ 18-34. Both Sabhlok and Pattison also received significant grants of backdated options. Id. ¶¶ 40, 48-52.

The SEC alleges that Defendants concealed the scheme from the shareholders, auditors, and the government by making materially misleading representations in Embarcadero's public statements. Id. ¶¶ 4, 14, 53. Embarcadero was required to record a compensation expense for options granted to employees and executives, but it failed to do so in its annual audited financial statements. Id. ¶ 54. Defendants' conduct resulted in significant misstatements of Embarcadero's profitability, with an understatement of net losses by over 530 percent in fiscal year 2002. Id. ¶¶ 3, 83

During the company's 2006 internal investigation, Sabhlok continued to conceal the backdating scheme from the Audit Committee. Id. ¶ 78. The Audit Committee announced in

late 2006 that it had discovered evidence of backdating and was expanding the scope of its investigation. Id. ¶ 81. Sabhlok refused to be interviewed by the company's investigators. Id. ¶ 82. In 2007, Embarcadero restated its previously filed financial statements for 2002 through 2006. Id. ¶ 83. It recorded approximately $14.6 million in stock option compensation expenses. Id. One month later, a private equity firm acquired Embarcadero and it was privatized. Id. ¶ 11.

The SEC alleges that Defendants violated the antifraud provisions of the federal securities laws, falsified books and records, lied to Embarcadero's accountants, and caused Embarcadero falsely to report its financial results. The complaint sets forth twelve different causes of action. The SEC seeks civil penalties, disgorgement, and an order enjoining both defendants from future violations of the securities laws. Id. ¶ 5. The SEC further seeks an order barring Sabhlok from serving as an officer or a director of a public company. Id.

Defendants have each filed a motion to dismiss. They argue that the SEC's fraud allegations are insufficient, and that the applicable statute of limitations precludes certain claims. Defendant Pattison has also filed a motion to strike, on the ground that certain allegations in the complaint are immaterial to the claims because they relate to conduct that occurred outside of the relevant time period.

## Discussion

I.   Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Defendant Pattison contends that allegations in the complaint describing conduct that occurred five years before the filing of the complaint should be stricken because of a statute of limitations problem. The limitation period, found at 28 U.S.C. § 2462, does not apply to the SEC's request for equitable relief. See SEC v. Rind, 991 F.2d 1486, 1492 (9th Cir. 1993) (holding that injunctive relief requested in SEC enforcement actions is not subject to a

limitations period); SEC v. Berry, 580 F. Supp. 2d 911, 919 (N.D. Cal. 2008) ("Berry I") (holding that § 2462 does not apply to SEC action seeking equitable relief).

Pattison's argument that the SEC's complaint seeks punitive remedies that fall in the ambit of § 2462 is unavailing. Under the "concurrent remedy" rule, a statute of limitations may bar a claim for injunctive relief that is connected to a claim for legal relief. See Cope v. Anderson, 331 U.S. 461, 464 (1947); FEC v. Williams, 104 F.3d 237, 240 (9th Cir. 1996). However, equitable claims that are not exercised "in aid or support of a legal right" are not subject to the same statutes of limitations. See Russell v. Todd, 309 U.S. 280, 289 (1940). Here, the SEC seeks injunctive relief independent from its claim for civil penalties. The complaint requests an order prohibiting Defendants from violating securities laws, which is a remedy exclusive from an order that Defendants pay civil penalties. Disgorgement is another separate equitable remedy sought by the SEC.

In SEC v. Mercury Interactive, LLC, 2008 WL 4544443, *4 (N.D. Cal. 2008), another court in this district rejected the very same argument asserted by Defendant Pattison here. Under this analysis, the concurrent remedy rule does not apply. The allegations Pattison seeks stricken are pertinent to the SEC's claims for equitable relief. The Court DENIES Defendant Pattison's Motion to Strike.[1]

II. Motions to Dismiss

    A. Legal Standards

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw

---

[1] Pattison's Motion to Strike also argues that the Court should strike the SEC's request for civil penalties based on the statute of limitations. As that argument is central to Pattison's Motion to Dismiss, it is discussed infra.

4

all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading party. Walling v. Beverly Enters., 476 F.2d 393, 395-96 (9th Cir. 1973).

Mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, __, 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

Claims for fraud must meet the particularity requirements of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[2] Scienter need only be pled generally. Id. Rule 9(b) requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal citation, quotation marks omitted).

To plead a violation of Sections 10(b), 10b-5 and 17(a) of the Exchange Act, the SEC must allege that a defendant has made a misstatement or omission of material fact, and that he acted with knowledge or recklessness. See Howard v. Everex Sys., Inc., 228 F.3d 1057, 1061-63 (9th Cir. 2000). To prevail on an aiding and abetting claim, the SEC must allege

---

[2]The heightened pleading requirements adopted in the Private Securities Litigation Reform Act of 1995 ("PSLRA") apply only to private securities actions, and not to enforcement actions brought by the SEC. See 15 U.S.C. § 78u-4(b)(2); SEC v. ICN Pharm., Inc., 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000).

5

that a defendant has actual knowledge that he was furthering violations of the securities laws. See SEC v. Fehn, 97 F.3d 1276, 1295 (9th Cir. 1996).

### B. Claims Against Defendant Pattison

#### 1. Fraud Claims

Defendant Pattison argues that the complaint's fraud claims fail to meet the heightened pleading standard of Rule 9(b). Specifically, Defendant Pattison contends that the SEC has failed to allege: (1) that Pattison made a material misstatement or omission; and (2) that Pattison was involved in a scheme to defraud. The Ninth Circuit has held that "substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements." Howard, 228 F.3d at 1061, n.5. "Where the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely, the 'in connection with' requirement is generally met by proof of the means of dissemination and the materiality of the misrepresentation or omission." SEC v. Trabulse, 526 F. Supp. 2d 1001, 1006 (N.D. Cal. 2007) (quoting SEC v. Rana Research, Inc., 8 F.3d 1358, 1362 (9th Cir. 1993)(emphasis omitted)). Because the Exchange Act's purpose is to protect investors, interpretations of the "in connection with" language remains as broad and flexible as is necessary in SEC actions. Rana, 8 F.3d at 1362.

The SEC's complaint states that Pattison participated in a stock options backdating scheme. As Embarcadero's controller, he prepared several documents to be used for filing with the SEC and provided low strike prices to use in the scheme. Additionally, Pattison provided incorrect data for the Human Resources department to prepare stock options agreements for Sabhlok to sign. Compl. ¶ 27. Pattison also provided incorrect data for Equity Edge, the database that Embarcadero used to prepare its publicly-reported financial statements. Id. ¶¶ 25-26. The complaint further alleges that Pattison provided Embarcadero's auditors with incorrect spreadsheets and stock option agreements. Id. ¶ 28. The allegations in the SEC's complaint are sufficient to state a claim of fraud against Pattison

1 because they provide specific information about the SEC's theory of his participation in the
2 backdating scheme.

### a. Material Misrepresentation

Pattison argues that the complaint fails to allege facts that he made a material misstatement or omission. Pattison contends that the fact that he did not sign any publicly-filed documents is instrumental. Pattison moves on to contend that because he did not sign any documents, he could only make a material misstatement if he substantially participated in the preparation of the fraudulent statements of others. Also, Pattison's argument concludes that the SEC has not adequately illustrated that he participated in preparing specific public filings. Pattison contends that the SEC has not pled an adequate nexus between his preparation of financial statements and the preparation of Embarcadero's public filings. Citing SEC v. Thielbar, Pattison states that the SEC has not met the requirements that it must allege that the defendant both provided false information to others, and that the defendant knew that the information would be incorporated into SEC filings. 2007 WL 2903948 at *6 (D.S.D. 2007). The SEC meets all of these requirements, however.

Regardless of the fact that Pattison did not sign any publicly-filed documents, when looking at the complaint in its entirety, it is clear that the SEC has pled the "who, what, when, where, and how" of his material misrepresentations and omissions. One example that the SEC provides concerns the fiscal year-end 2002 financial statements. These statements, included in the annual report to shareholders and filed with the SEC on Form 10-K, materially understated net losses by about 536 percent. Compl.¶ 83. After determining who would receive the backdated options, Pattison, Sabhlok, and the company's CEO selected a purported date that they would record as the options' strike date. Using this information, Pattison prepared spreadsheets documenting this "strike price." Id. ¶ 23. Pattison also sent the spreadsheets' information for a vendor to enter into the company's "Equity Edge" records. Id. ¶¶ 25-26. Pattison provided the spreadsheet information for Embarcadero's outside auditors to use in conducting the annual audits of Embarcadero's financial statements. Id. ¶ 28. In at least nineteen letters, Pattison stated to the external auditors that:

7

(1) Emabarcadero's financial statements adhered to GAAP; (2) Sabhlok and Pattison had provided to the auditors all financial records and related data; (3) Sabhlok and Pattison acknowledged their responsibilities for the design and implementation of controls to detect and prevent fraud, and there were no significant deficiencies in these internal controls; and (4) there were no instances of fraud involving management or material transactions that had not been properly recorded. Id. ¶ 77. Pattison was also responsible for preparing the financial statements that were attached to each quarterly report. Id. ¶ 58. Throughout the complaint, the SEC documents Pattison's similarly fraudulent activities that occurred over the course of several years.

### b. Scheme to Defraud

Additionally, Pattison argues that the SEC's complaint fails to allege adequate facts that he was involved in a scheme to defraud. He argues that the SEC has not pled that his contributions to the transactions and overall scheme had a deceptive purpose and effect. See Simpson v. AOL Time Warner, Inc., 452 F.3d 1040, 1048 (9th Cir. 2006), overruled on other grounds Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S.Ct. 761, 767 (2008). "[T]o be liable as a primary violator of § 10(b) for participation in a 'scheme to defraud,' the defendant must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." Id. Additionally, "the defendant's own conduct contributing to the . . . scheme must have had a deceptive purpose and effect." Id. The SEC has adequately pled that the overall scheme had a deceptive purpose and effect.

In 2001, Pattison granted options to about seventeen employees using a date during the first week of April 2001 that corresponded to a lower share price. Compl. ¶ 36. These options had already been granted and entered into Equity Edge. Id. Most of the options had been recorded with grant dates of March 6, 2001 or March 19, 2001. Id. Around April 10, 2001, Pattison backdated these grants to correspond to the prior week's $10.625 closing price. Id. ¶ 37. As these grants had been recorded in Equity Edge, Pattison contacted the vendor and claimed that the grants needed to be "correct[ed]," and told the vendor to change

the database to correspond with the April 5, 2001 grant date. Id. Pattison did not mention that the grants were not made until after April 5, 2001, thus backdated. Id. Until approximately mid-August 2001, Pattison continued to backdate grants to April 5, 2001.

Because Sabhlok was an executive officer, any grants to him had to be authorized by the Compensation Committee of Embarcadero's board of directors. Id. ¶ 50. In order to circumvent this rule, Pattison and Sabhlok falsified Compensation Committee minutes to suggest an October 2, 2001 meeting had occurred. Id. The complaint documents that this type of activity occurred several times throughout the time period.

The complaint also alleges that Pattison carried out the scheme with the requisite intent, knowingly or recklessly, and that he prepared the false spreadsheets to enable the scheme to go on. Id. ¶¶ 25-29. On several accounts, Pattison made an effort to hide the backdating scheme. Id. ¶¶ 28, 45, 47, 50. This allegation also addresses Pattison's contention that the scheme was not secret or deceptive.

Pattison relies heavily on SEC v. Berry, 580 F. Supp.2d 911 (N.D. Cal. 2008) ("Berry I"). In Berry I, the SEC failed to plead with particularity the defendant's role in making material misstatements. 580 F. Supp. 2d at 922. Here, the SEC has alleged with specificity how Pattison was involved in falsifying financial records. Pattison also contends that the complaint uses generalized allegations, as in Berry I. While the SEC uses Berry I terms like "reviewed, "discussed", and "finalized," the complaint goes further to explain in more detail how Pattison contributed to the financial misstatements. These inferences are apparent when viewing the complaint in its entirety.

As for his arguments regarding scheme liability, Pattison moves away from Berry I. In Berry I, the court noted that the defendant need only make an intentionally deceptive contribution to an overall fraudulent scheme to face liability. 580 F. Supp. 2d at 923. Here, as in Berry I, the SEC has met that standard.

Accordingly, the Court DENIES Defendant Pattison's motion to dismiss because the SEC has adequately pled its claims of fraud.

9

### 2. Aiding and Abetting

The SEC has brought five aiding and abetting claims against Defendant Pattison, so it must plead that he knew that Embarcadero (1) fraudulently made material misstatements (count two); (2) filed materially false and misleading periodic reports (count four); (3) did not keep accurate records (count five); (4) failed to maintain a sufficient system of internal accounting controls (count six); and (5) solicited proxies through false and misleading statements or omissions (count eleven).   The SEC's complaint is sufficient on the aiding and abetting claims as it adequately details Pattison's participation in and knowledge of the backdating scheme.

#### a. Aiding & Abetting Fraud Claims

Pattison contends that the SEC fails to plead his actual knowledge of a securities violation or that he substantially assisted in a securities fraud violation. Because the SEC has adequately pled that Pattison substantially participated in the backdating scheme, it has also pled that he substantially assisted in the securities fraud violation. The SEC has also pled Pattison's actual knowledge of the securities violation.

#### b. Aiding & Abetting Proxy Claims

Pattison argues that the SEC fails to allege sufficiently his participation in preparing the proxy statements and an actionable misstatement in connection with the proxies.  As discussed above, the SEC has pled that Pattison was substantially involved in preparing false financial documents, including the proxy statements.  Also, the SEC has alleged that the proxies contained actual misstatements.  The SEC has provided that the grants in each statement are backdated and includes information regarding dates and strike prices, with option dates specifically identified.

#### c. Aiding & Abetting Books and Records Violation

Section 13(b)(5) provides that the SEC must plead facts that Pattison knowingly did one or more of the following: (1) circumvented a system of internal accounting controls; (2) failed to implement a system of internal accounting controls; or (3) falsified any book, record, or account. The SEC has alleged that Pattison has knowingly done at least two of

1 these things. Pattison supplied false records for an outside vendor to log into Equity Edge,
2 falsified Compensation Committee minutes, and supplied Embarcadero's outside auditors
3 with false spreadsheets and option agreements. Id. ¶¶ 25-26, 28, 37, 50. Additionally,
4 because the SEC has pled that Pattison was substantially involved in the scheme, which was
5 dependent upon false records, the complaint adequately addresses Pattison's contention that
6 he was neither primarily liable nor an aider or abettor.

7 Accordingly, the Court denies Defendant Pattison's motion to dismiss the aiding and
8 abetting claims.

        C.     Claims Against Defendant Sabhlok

             1.     Fraud Claims

11 Defendant Sabhlok contends that the fraud claims in the complaint fail to meet the
12 heightened pleading standard of Rule 9(b). The Ninth Circuit has held that an officer who
13 knowingly signs a document containing a material misrepresentation may be liable for
14 securities fraud. Howard, 228 F.3d at 1061-63; see also In re Zoran Corp. Deriv. Litig., 511
15 F. Supp. 2d 986, 1101 ("Furthermore, employees and directors who sign or prepare financial
16 disclosures can be held liable for misstatements and omissions therein.").

17 The SEC's complaint asserts that Sabhlok was an active participant in a scheme to
18 backdate stock options. In particular, Sabhlok allegedly authored, signed, and certified false
19 financial statements in public findings. In the complaint, the SEC identifies numerous false
20 and materially misleading statements made in annual reports, quarterly reports, current
21 reports, and proxy statements. The complaint further alleges that Sabhlok personally helped
22 to select dates, determined how and when to backdate options, directed others to change
23 exercise prices, and received communications about the progress of the backdating. These
24 allegations are sufficient to maintain a claim of fraud against Sabhlok because they give
25 specific information about the SEC's theory of his participation in the backdating scheme.

26 Sabhlok's primary argument is that the complaint fails to allege scienter, which only
27 needs to be plead generally. See Fed. R. Civ. P. 9(b). The main piece of evidence relied
28 upon by the defense is an October 2004 email between Sabhlok and a partner at Heller

11

1 Ehrman, Embarcadero's former outside counsel.  In the email, Sabhlok asked: "Can [the
2 CEO] grant awards retroactively?  In other words, the grant date is earlier than the date that
3 he approves the grant."  See McKaig Decl. Ex. 9.  The attorney responded "No.  Absolutely
4 not.  The vesting can be retroactive, however.  Let's discuss."  See id.

5       Under Sabhlok's theory, this email demonstrates that Sabhlok was unaware that
6 retroactive option grants were problematic.  He contends it "defies logic" to think Sabhlok
7 would ask if the retroactive option grants were permissible if he was on notice of the illegal
8 nature of the company's pricing practices.  The Court is not convinced.  Simply because
9 Sabhlok decided to ask a question of his attorney in 2004 does not undercut all of the
10 evidence showing that Sabhlok knowingly changed dates on options so that they would yield
11 higher returns, that he created false documents in January 2002 to make it appear as though
12 backdated options granted to Sabhlok had been approved during a committee meeting that
13 never occurred, and that he knowingly signed numerous reports that made false
14 representations about the company's financial picture.  Sabhlok's interpretation of the
15 evidence asks the Court to draw an inference that is strained, at best.  The more reasonable
16 inference is that Sabhlok knew exactly what he was doing when he engaged in this plan.

17       The complaint has clear allegations of scienter.  It states that Sabhlok "knew, or w[as]
18 reckless in not knowing, that Embarcadero's stock option compensation expenses were not
19 accurately stated in its publicly filed financial statements included with its public filings.
20 Sabhlok . . . also knew, or w[as] reckless in not knowing, that the backdating scheme
21 rendered the disclosures in Embarcadero's public filings about how options were granted
22 were false and misleading."  Compl. ¶ 74; see also ¶¶ 29, 54, 61.  At this stage in the
23 proceedings, the Court does not weigh the evidence; rather it accepts the allegations as true
24 and credits the inferences to be drawn from them.  Sabhlok's contention that he was an
25 ignorant, innocent bystander to this scheme is simply not enough to warrant a dismissal of
26 the complaint.

27 ///
28 ///

### 2. Aiding and Abetting Claims - Actual Knowledge

The SEC has brought five aiding and abetting claims against Defendant Sabhlok. For the same reasons discussed above, the SEC's complaint is sufficient on the aiding and abetting claims. Sabhlok offers no new arguments as to why the pleadings on these claims must fail. The complaint adequately details Sabhlok's participation in and knowledge of the backdating scheme.

### 3. Sarbanes-Oxley's Clawback Provision

Section 304 of the Sarbanes-Oxley Act (SOX § 304) permits the SEC to seek forfeiture of bonuses and stock profits if "an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws." 15 U.S.C. § 7243(a). The SEC's prayer for relief requests forfeiture of Sabhlok's bonuses, incentive compensation, and profits from the sale of stock. The SEC has limited its request to forfeiture of funds obtained after the date of the first filing made after the enactment of SOX § 304, which was a quarterly report filed in August 2002. This avoids the problem of retroactivity raised in Sabhlok's motion.

The complaint demonstrates that Embarcadero was required to restate multiple financial statements as a result of Sabhlok's alleged conduct. See Compl. ¶ 83. Sabhlok urges that recovery under SOX § 304 should be dismissed because the complaint did not sufficiently allege how he benefitted from the backdating scheme. In particular, the SEC does not allege that Sabhlok exercised any of the backdated stock options he received.

The Court denies Sabhlok's request for dismissal of this claim. SOX § 304 permits recovery when the SEC can demonstrate that a CFO's conduct caused a company to issue a financial restatement. The issue of whether the Embarcadero's financial restatements was due to the "material noncompliance" of Sabhlok has not been resolved yet, but there is no reason why the SEC should at this point be precluded from seeking this form of relief. SOX § 304 has no requirement, on its face, that the funds the SEC seeks to have reimbursed were received directly from the exercise of backdated options. Rather, the section merely states

1 that if an officer's misconduct causes a financial restatement, the CFO shall reimburse "<u>any</u>
2 bonus or other incentive-based or equity-based compensation received by that person from
3 the issuer" and "<u>any</u> profits realized from the sale of securities of the issuer." 15 U.S.C. §
4 7243(a) (emphasis added). The statute contemplates that a non-compliant CFO will have to
5 reimburse whatever profits or compensation he received in the period directly following the
6 misconduct.

### 4. <u>Disgorgement</u>

8 The complaint includes a separate request for disgorgement, <u>see</u> Prayer for Relief IV,
9 along with the SEC's request for relief under SOX § 304, <u>see id.</u> VI. Defendant Sabhlok's
10 motion discusses both of these forms of relief as though they were one in the same, and seeks
11 to have the SOX § 304 claim thrown out based on a case that dismissed a specific request for
12 disgorgement. <u>See SEC v. Berry</u>, 2008 WL 4065865, at *9-10 (N.D. Cal. Aug. 27, 2008)
13 ("<u>Berry II</u>"). SOX § 304 creates a statutory mechanism whereby the SEC may seek a
14 specific form of disgorgement, <u>see In re Digimark Corp. Deriv. Litig.</u>, 549 F.3d 1223, 1232-
15 33 (9th Cir. 2008), but it is a means of relief independent from general equitable
16 disgorgement. Accordingly, it should be analyzed separately.

17 Whereas the SEC does allege Defendant Pattison exercised his backdated options, it
18 does not have evidence that Defendant Sabhlok did the same. At this time, the Court will
19 permit the request for disgorgement to proceed, although the SEC will need to make a further
20 showing as to what would be the appropriate funds to be disgorged.

### 5. <u>Section 16(a) Claim - Filing Requirements</u>

22 Section 16(a) provides that certain officers and directors must file periodic reports
23 disclosing any change in the beneficial ownership of securities. <u>See</u> 15 U.S.C. § 78p(a).
24 There is no dispute that Sabhlok indeed filed periodic reports as required by § 16(a), but the
25 SEC alleges that he lied in one of his filings by misrepresenting the date on which certain
26 grants occurred. <u>See</u> Compl. ¶ 51.

27 Sabhlok first contends that the SEC may not hold him liable under § 16(a) because the
28 claim is time-barred. The form at issue was filed in February 2002, while the complaint was

14

1  not filed until September 2008 – more than six years later.  As discussed above, the SEC is
2  seeking equitable remedies which are not barred by 28 U.S.C. § 2462.

3  Sabhlok next contends that § 16(a) cannot be the basis for liability, as it is merely a
4  requirement to file a statement, and there is no dispute that Sabhlok filed such statements.
5  The SEC counters that it "routinely brings enforcement actions against executives for false or
6  misleading statements and omissions in required disclosures."  Opp. Mot. at 22.  Nothing on
7  the face of § 16(a) suggests that it creates a cause of action for an allegedly misleading filing.
8  In SEC v. IMC Int'l, Inc., however, a district court held that "[t]he reporting provisions of the
9  Exchange Act are clear and unequivocal, and they are satisfied only by the filing of
10 complete, accurate and timely reports."  384 F. Supp. 889, 893 (N.D. Tex. 1974), aff'd, 505
11 F.2d 733 (5th Cir. 1974) (emphasis added).  "Once the Court determines that the plaintiff has
12 proven a violation of the statute, the proper test for the issuance of a statutory injunction is
13 whether there is a reasonable expectation of further violations by such defendants."  Id.  In
14 IMC, the district court permitted the SEC to seek injunctive relief against the defendant on
15 the basis of untimely and false information presented in a § 16(a) filing.  Id. at 894.

16 Here, if the SEC can prove that Sabhlok's § 16(a) filing contained inaccurate
17 information, then he cannot maintain that he satisfied his obligation.  Entering a public
18 statement with false information is hardly better, if not worse, than making no statement at
19 all.  Sabhlok cites to Scientex Corp. v. Kay, 689 F.2d 879 (9th Cir. 1982) for the proposition
20 that the SEC may not seek relief based upon § 16(a).  In that case, however, the Ninth Circuit
21 held only that there is no private right of action for relief under § 16(a), without addressing
22 whether there the SEC has such a right.  Id. at 880.  Accordingly, the Court DENIES
23 Defendant's motion to dismiss the claim for relief under § 16(a).

24 6. False Certification Claim

25 Count Ten of the complaint alleges that Sabhlok violated Exchange Act Rule 13a-14,
26 17 C.F.R. § 240.13a-14.  This provision requires CFOs to certify annual and quarterly reports
27 to shareholders.  The complaint asserts that Sabhlok made numerous false certifications,
28 beginning with the quarterly report for the quarter that ended June 30, 2002.  Compl. ¶¶ 61-

15

1  62. Sabhlok first argues the certification claim should be dismissed for its failure to specify
2  the public filings upon which it is based. The complaint clearly specifies, however, the
3  particular filings that included the false certifications, beginning with the quarterly report for
4  June 2002.

5  In the alternative, Sabhlok contends the false certification claim should be limited
6  based on the statute of limitations. Under 28 U.S.C. § 1658(a), "a civil action arising under
7  an Act of Congress enacted after the date of the enactment of this section [December 1,
8  1990] may not be commenced later than four years after the cause of action accrues." If §
9  1658(a) applies, then any alleged false certification claim can only be based on filings that
10 occurred after September 9, 2004.

11  The SEC contends that § 1658(a) does not apply because (1) Rule 13a-14 is not an
12 "Act of Congress," and (2) the SOX should be treated as if it arose under the Exchange Act
13 of 1934, and § 1658(a) does not apply to Exchange Act claims.[3] First off, Sabhlok is correct
14 in pointing out that the SEC errs by construing the claim as not arising under an "Act of
15 Congress." The SEC promulgated the rule's certification requirements pursuant to the
16 mandate of Congress through the passage of SOX, and therefore such claims "arise under" an
17 Act of Congress. See also In re Intelligroup Sec. Litig, 527 F. Supp. 2d 262, 287 (D.N.J.
18 2007) (holding that SOX "required the SEC to implement rules under which principal
19 executive and financial officers of public companies certify to the general truthfulness of the
20 company's quarterly and annual reports").

21  The SEC counters that, in passing SOX, Congress made clear that an enforcement
22 action utilizing its provisions should be treated the same way as any other enforcement action
23 under the Exchange Act:

> A violation by any person of this Act, any rule or regulation of the Commission issued under this Act, or any rule of the Board shall be treated for all purposes in the same manner as a violation of the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) or the rules and regulations issued thereunder, consistent with the provisions of this Act, and any such person shall be subject to the

---

[3] The Sarbanes-Oxley Act actually amended 28 U.S.C. § 1658 by adding subsection (b), which provides a five year statute of repose for fraud claims. See Pub. L. No. 107-204, tit. VIII, § 804(a), July 30, 2002, 116 Stat. 801.

16

<u>same penalties, and to the same extent, as for a violation of that Act</u> or such rules or regulations.

15 U.S.C. § 7202(b)(1) (emphasis added). According to this argument, Congress provided that the enforcement of SOX should proceed under the same terms applicable to other portions of the Exchange Act. Thus, the limitations period in § 1658(a) would not apply.

Defendant does not respond to the language of § 7202(b)(1), but rather argues that SOX operated as an amendment to the Exchange Act of 1934. In <u>Jones v. R.R. Donnelley & Sons Co.</u>, the Supreme Court applied § 1658's limitation period to claims arising out of the Civil Rights Act of 1991, which amended and was part of the Civil Rights Act of 1866, even though the original version of the statute was enacted before 1990. 541 U.S. 369, 383 (2004). The Supreme Court held that where an amendment to a statute creates "new rights of action and corresponding liabilities," it should be treated as an independent "Act of Congress." <u>Id.</u>

In <u>SEC v. Mercury Interactive, LLC</u>, another court in this district faced the same question on the applicability of § 1658(a). <u>See</u> 2008 WL 4544443, at *8. It stated:

> Even assuming without deciding that the four-year period applies for purposes of this motion [to dismiss], the [false certification] claim clearly would not be subject to dismissal because it alleges that false certifications were included in [defendant's] annual and quarterly reports through 2005. The Court declines to carve out and dismiss a portion of the claim as Defendants appear to be requesting. Accordingly, the Court will deny the motions with respect to the sixth claim.

<u>Id.</u> Similarly, the SEC alleges here that Defendants made false certifications within the purported limitations period. The Court opts not to "carve out and dismiss" a portion of the claim based on the limitations argument. <u>See id.</u>

D. <u>Statute of Limitations Does Not Bar the SEC's Claims</u>

1. <u>Statute of Limitations - 28 U.S.C. § 2462</u>

Both Defendants contend that the five-year statute of limitations found in 28 U.S.C. § 2462 bars the legal remedies sought by the SEC. Section 2462 provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. The limitations period applies to civil penalties

and other relief that is punitive in nature. See SEC v. Jones, 476 F. Supp. 2d 374, 381 (S.D.N.Y. 2007). Equitable relief that seeks to remedy a past wrong or protect the public from future harm is not subject to the limitations period. See id. Defendants argue that the relief sought by the SEC is punitive in nature, and therefore barred by the statute of limitations insofar as it is premised on conduct occurring before September 9, 2003.

The parties dispute whether or not the statute of limitations should apply at all to the injunctive relief sought by the SEC. As discussed above, the Court finds that the limitation period found at § 2462 would not apply to the SEC's request for equitable relief. See SEC v. Rind, 991 F.2d 1486, 1492 (9th Cir. 1993); Berry I, 580 F. Supp. 2d at 919. Furthermore, the Court finds the statute equitably tolled on account of Defendants' fraudulent conduct. See FEC v. Williams, 104 F.3d 237, 241 (9th Cir. 1996) ("section 2462 is subject to equitable tolling"); Berry II, 2008 WL 4065865, at *8-9. In order to toll the statute, the SEC must demonstrate that (1) Defendants' conduct resulted in the concealment of the operative facts; (2) the SEC failed to discover the operative facts within the limitations period; and (3) the SEC acted with due diligence before it discovered Defendants' alleged misconduct. See Berry I, 580 F. Supp. 2d at 919.

The SEC has adequately alleged that Defendants concealed material information through lying to the company's auditors, creating false documents, and certifying public filings that contained erroneous information. See SEC v. Jones, 476 F. Supp. 2d 374, 382 (S.D.N.Y. 2007) ("for a fraud to be self-concealing, the defendant must have engaged in some misleading, deceptive or otherwise contrived action or scheme, in the course of committing the wrong, that [was] designed to mask the cause of action") (internal quotations omitted). This course of conduct prevented the SEC's discovery of Defendants' misconduct. Upon Embarcadero's disclosure that there were inaccuracies in its public filings, the SEC diligently pursued its own investigation. Compl. ¶ 84. Accordingly, the Court finds that the SEC has demonstrated that equitable tolling is appropriate in these circumstances. See Berry II, 2008 WL 4065865, at *9 (applying equitable tolling in backdating case where defendant was involved in filing false papers with the SEC).

## Conclusion

Based on the foregoing, the Court hereby (1) DENIES Defendant Pattison's Motion to Strike, (2) DENIES Defendant Pattison's Motion to Dismiss, and (3) DENIES Defendant Sabhlok's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: February 18, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE