UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>Plaintiff,<br><br>v.<br><br>RAJ P. SABHLOK and MICHAEL C. PATTISON,<br><br>Defendants.<br>_____/ | No. C 08-4238 CRB   (JL)<br><br>**ORDER GRANTING ISSUANCE OF SUBPOENA PURSUANT TO 28 USC § 1783 FOR DEPOSITION IN THE UNITED STATES (Docket # 72); AMENDMENT TO ORDER AT Docket # 75** |

**I.   Introduction**

The issue before the Court in this case is whether the deposition of non-party Stephen Wong should be taken in Hong Kong or in the United States, and whether the deposition should be voluntary, or should be compelled, pursuant to 28 U.S.C. §1783, the "Walsh Act."

The matter came on for hearing. Appearing for Plaintiff Securities and Exchange Commission ("Commission") was Susan LaMarca; appearing for Defendant Michael Pattison was James Vorhis, Nossaman, LLP, San Francisco; appearing for Defendant Raj Sabhlok was Ronda McKaig, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California (by telephone); appearing for non-party Stephen Wong was David J. Schindler, Latham & Watkins, Los Angeles, California (by telephone). The Court carefully considered the moving and opposing papers and the arguments of counsel and concludes that Mr.

Wong's deposition should be taken in the United States and that it should be compelled pursuant to the Walsh Act.

## II. Procedural Background

All discovery in this case has been referred by the district court (Hon. Charles R. Breyer) pursuant to 28 U.S.C. §636(b). Jury trial is scheduled for January 25, 2010. Judge Breyer on October 14, 2009, set discovery deadlines pursuant to the parties' stipulation:

1. Subject to the exceptions set forth herein, the discovery cut-off for fact discovery shall be November 13, 2009:

   a. An exception shall be made in order to accommodate the following depositions:

      I. Dennis Wong, whose deposition will be completed by Nov. 16, 2009;

      ii. Tim Chou, whose deposition will be completed by Nov. 18, 2009;

      iii. Any deposition of Gary Haroian, Michael Roberts or Wayne Williams will be completed by Nov. 20, 2009.

   b. An exception shall be made in order to accommodate the deposition of Stephen Wong, and any Court intervention in advance of such a deposition; although the parties expect the deposition may occur no later than November 18, 2009, if additional time is necessary in order to obtain the Court's assistance, the deposition will occur on or before December 18, 2009.

2. The deadline for the parties to disclose, pursuant to Fed. R. Civ. Proc. 26(a)(2), any witness who may be used at trial to present expert opinions (except opinions to be offered solely to contradict or rebut evidence on the same subject identified by another party) is November 13, 2009; in addition, any deposition of a person so disclosed shall be taken not later than December 4, 2009.

3. The deadline for the parties to disclose, pursuant to Fed. R. Civ. Proc. 26(a)(2), any witness who may be used at trial to present expert opinions solely to contradict or rebut evidence on the same subject identified by another party is December 4, 2009; in addition, any deposition of a person so disclosed shall be taken not later than December 18, 2009.

## III. Factual Background

**A. Stephen Wong's alleged role in the stock option backdating at Embarcadero**

Stephen Wong served as the Chief Executive Officer of Embarcadero Technologies, Inc. ("Embarcadero") from its inception until January 2007. At Embarcadero, Mr. Wong worked with Defendant Michael Pattison (Embarcadero's controller) and Mr. Sabhlok, who

served as Embarcadero's Chief Financial Officer for several years before transitioning to an operations role and ultimately replacing Mr. Wong as CEO. On September 9, 2008, the SEC filed a Complaint against Mr. Sabhlok and Mr. Pattison alleging that they, along with Mr. Wong, engaged in a scheme to secretly "backdate" stock option grants and to hide compensation expenses from Embarcadero's investors. The SEC filed a separate, contemporaneous complaint against Mr. Wong. According to the SEC's allegations:

- Mr. Wong was the individual authorized to grant stock options to nonexecutive employees.
- Mr. Wong personally selected many of the favorable grant dates.
- Mr. Wong was ultimately responsible for approving the "backdated" stock grants.
- Mr. Wong made false records of his approvals by signing documentation bearing false grant dates.
- Mr. Wong, Mr. Pattison and Mr. Sabhlok were all involved in a scheme to defraud.

Wong Complaint at .. 19-21, *SEC v. Wong*, No. C-08- 4239 (N.D. Cal. 2008).

**B.      Terms of the judgment following settlement of the separate case against Stephen Wong**

The SEC's case against Mr. Wong was settled and the district court (Hon. Claudia Wilken) on September 16, 2008, entered judgment for the SEC including that Defendant Stephen Wong and his agents, employees and others are permanently enjoined from violating a number of provisions of the Securities Act involving schemes to defraud purchasers of securities,  making fraudulent misrepresentations regarding the securities or related transactions, aiding or abetting an issuer of securities from failing to file certain reports with the Commission or from filing misleading reports,  assisting an issuer of securities in misrepresenting transactions and dispositions of assets,  assisting an issuer in failing to devise and maintain a system of adequate internal accounting controls or falsifying books or records, and finally from making false or misleading proxy statements or solicitations of proxies.

Defendant Wong agreed to pay a civil penalty in the amount of $250,000 pursuant to Section 20(d) of the Securities Act and Section 21(a) of the Exchange Act.

Mr. Wong was also prohibited, for a period of five years following the date of entry of the Final Judgment, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]. (Judgment entered September 16, 2008).

### C. Mr. Wong is expected to testify regarding the actions of his former colleagues at Embarcadero.

Now Defendant Sabhlok seeks to depose Wong, and Defendant Pattison, as well as the SEC, also wish to question him. Mr. Wong is expected to offer relevant testimony regarding stock option practices at the company, including any involvement by Mr. Sabhlok, and other testimony bearing on the allegations in the Complaint regarding the alleged "scheme". Mr. Wong has not previously provided any substantive testimony in this case, although the SEC attempted to depose him in January 2008 at which time he invoked his Fifth Amendment rights. According to his attorney Mr. Wong is an American citizen currently residing in Hong Kong with his family. McKaig Declaration at p.3. Mr. Wong allegedly cares for his children while his wife has regular visits with her mother, who is terminally ill. Id. at . 5. At the hearing the Court was advised that Mr. Wong's mother-in-law resides in Paris, France. Mr.Wong through his attorney, contends that his life is in Hong Kong, and he has no plans to come to the United States in the near future. Id. Accordingly, Mr. Wong requests that any deposition take place in Hong Kong. Id. Defendants are willing to accommodate Mr. Wong's request. Mr. Wong's deposition has been tentatively scheduled for November 18, 2009, in Hong Kong. However, the SEC requests an order from this Court authorizing issuance of a subpoena compelling Mr. Wong to appear for deposition in the United States. Hawaii has been proposed as a location, with no response from Mr. Wong.

**IV.     Legal Analysis**

**A.     The requirements of the Walsh Act and this case**

Under the Walsh Act, the Court may order the issuance of a subpoena to an American citizen who is located outside of the United States where the testimony sought "is necessary in the interest of justice," and "it is not possible to obtain his testimony in admissible form without his personal appearance." 28 U.S.C. § 1783(a). The Court finds that the conditions of the Walsh Act are easily satisfied here.

Testimony is "necessary in the interest of justice" if it is relevant under the liberal standards set forth in Federal Rule of Civil Procedure 26(b). *SEC v. Sandifur*, 2006 WL 3692611, at *4 (W.D. Wash. 2006) (finding the "interests of justice" prong was satisfied if the party seeking the order established that testimony would be discoverable under the federal rules). Here, Mr. Wong's testimony is relevant and is necessary in the interests of justice because it bears directly on the key issues in this case. The Complaint alleges that Mr. Wong was delegated the authority to grant stock options to Embarcadero's employees, and that pursuant to this authority, Mr. Wong authorized over 800 stock option grants, most of which were allegedly "backdated." *Id.* The Complaint further alleges that Mr. Sabhlok acted with Mr. Wong and Mr. Pattison to allegedly "backdate" stock options, and that Mr. Sabhlok allegedly participated in discussions with Mr. Wong regarding altering stock option grant dates and related compensation charges. *Id.* .. 19-20.

Mr. Wong, who was undisputedly a key actor in the option granting processes at Embarcadero, will provide critical testimony on those processes and Mr. Sabhlok's involvement. Specifically, Mr. Wong may provide testimony regarding Mr. Sabhlok's involvement in or awareness of Embarcadero's option pricing decisions, the documentation of the allegedly "backdated" grants, and Mr. Sabhlok's role in preparing documentation for allegedly "backdated" grants, if any. Mr. Wong may also provide testimony regarding Mr. Sabhlok's familiarity with stock option accounting, including whether Mr. Wong and Mr. Sabhlok ever had any discussions regarding "backdating" and any related accounting implications. This testimony is not only relevant, it is critical to Mr. Sabhlok's defense.

In *Sandifur*, defendants in a securities fraud case sought a subpoena pursuant to the Walsh Act for a nonparty witness residing in Luxembourg. Defendants represented that the witness had personally reviewed the four mortgage applications at the core of the SEC's case. *Sandifur*, 2006 WL 3692611, at *4. The court found that the "interests of justice" prong was satisfied based on the witness's knowledge of the mortgage applications, and noted that the SEC's interest in taking testimony from the witness further corroborated the relevance of the witness's testimony. *Id.* at *4.

The reasoning and analysis in *Sandifur* is applicable here, to the limited extent that it authorizes an American court to issue a subpoena to a witness residing outside the United States. Although the court in *Sandifur* ordered the deposition to take place in Luxembourg, this Court finds that the facts of this case distinguish it from the facts underlying that decision, as discussed below. There is good cause for Mr. Wong's deposition. He has personal knowledge of the most relevant facts in this case, including who was involved in granting, pricing and documentation of stock options facts at the heart of the SEC's complaint. Moreover, as in *Sandifur*, the fact that the SEC sought testimony from Mr. Wong in January 2008 corroborates that Mr. Wong is a relevant witness, although Mr. Wong declined to provide substantive testimony at that time. There can be no question that Mr. Wong's testimony is highly relevant, and is in "the interest of justice"'' under the first prong of the Walsh Act's.

The Walsh Act's second requirement "that the testimony cannot be otherwise obtained" is also satisfied here. Mr. Wong's testimony is a unique source of evidence and Mr. Wong has not previously provided any substantive testimony regarding the allegations at issue in the case. In *Sandifur*, the court issued the order for subpoena despite the fact that the proposed witness had previously been deposed by the SEC as part of the SEC's investigation, and other witnesses who had also reviewed the mortgage applications at the core of the SEC's case had already been deposed. *Id.* at *2 The court found that the witness's prior deposition transcript and testimony by other witnesses were not a substitute

for the witness's testimony. *Id.* at *4. The need for Mr. Wong's testimony is even greater here, where Mr. Wong has given no prior substantive testimony, and there are no documents or comparable witnesses that could supplant Mr. Wong's testimony.

**B.    Location of the deposition should be in the United States and it should be a compelled deposition.**

This Court finds the reasoning of the SEC to be persuasive in disposing of Mr. Wong's insistence on his being a voluntary deposition in Hong Kong.

This Court finds that Wong's Opposition fails to address the law providing that a Walsh Act subpoena compels a United States citizen's attendance in the United States, and that it is not appropriate as a means to compel testimony in a foreign sovereign's territory. The arrangement Wong and defendant Sabhlok advocate is a purely "voluntary" arrangement, not a compelled deposition pursuant to a subpoena issued under the Walsh Act and Rule 45 of the Federal Rules of Civil Procedure. As the Commission has consistently informed the parties, a "voluntary" deposition of Wong is not an acceptable substitute for his compelled testimony in this case, as there is no reason to treat a person whom the Commission sued differently than every other witness, especially given the Commission's experience with Wong's assertion of a privilege, as well as other instances in this case in which the Commission's discovery rights have been inappropriately thwarted.

The Walsh Act, 28 U.S.C. § 1783, was enacted in 1926 in order to compel Americans living abroad to return to the United States to testify at a trial in a criminal case, if the testimony was deemed by the court issuing the subpoena to be of sufficient importance. The Supreme Court upheld the statute shortly thereafter, including the provision for contempt for failure to appear, stating: "Nor can it be doubted that the ***United States possesses the power inherent in sovereignty to require the return to this country of a citizen, resident elsewhere, whenever the public interest requires it, and to penalize him in case of refusal***." *Blackmer v. United States*, 284 U.S. 421, 437 (1932) (Emphasis added). The Court further stated: "It is also beyond controversy that one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned. And

1  the Congress may provide for the performance of this duty and prescribe penalties for
2  disobedience." *Id.* (citation omitted). In arriving at this conclusion, the Court analyzed the
3  provision for service of the subpoena, finding: "The mere giving of such a notice to the
4  citizen in the foreign country of the requirement of his government that **he shall return** is in
5  no sense an invasion of any right of the foreign government and the citizen has no standing
6  to invoke any such supposed right." *Id.* at 439 (Emphasis added).

7  In 1964 the Walsh Act was amended to permit issuance of subpoenas to compel
8  testimony in civil cases. However, as Congress made clear at the time, a subpoena in a
9  civil action "may be issued only if the court finds that its issuance is in the interest of justice,
10  and, in addition, that the testimony or evidence sought cannot be obtained in another
11  manner. The purpose of the different language used with respect to noncriminal cases is ***to
12  restrict still further the extraordinary subpoena power in such cases***." S. REP.
13  88-1580, at 10, reprinted in 1964 U.S.C.A. 3782, 3791 (1964) (Emphasis added). The
14  legislative history emphasizes the need for the court to balance the hardship imposed on
15  the person abroad against the need for his testimony and order such a subpoena only
16  where there is a "compelling reason." *Id.*

17  Balancing the hardship to the witness against the needs of the litigation must be
18  conducted by the court to determine whether such a subpoena should issue at all. In
19  assessing whether the requested subpoena

20  "is in the interest of justice, the court may take into account the nature of the proceedings, the nature of the testimony or the evidence sought, the convenience of
21  the witness or the producer of the evidence, the convenience of the parties, and other facts bearing upon the reasonableness of requiring a person abroad to appear
22  as a witness or to produce tangible evidence. ***The new criteria guarantee not only that in proper cases a subpoena will always be available, but also that
23  burdens upon U.S. citizens and residents abroad will not be imposed without compelling reason***."
24

25  S. REP. 88-1580, at 10 (emphasis added).   No such balancing process would be
26  necessary if the witness could be so readily compelled to submit to a deposition where he
27  lived abroad.  Furthermore, unlike a subpoena issued solely pursuant to Rule 45, the
28  statute makes explicit the requirement that travel expenses be tendered with the subpoena
   itself, so that the witness may comply. 28 U.S.C. § 1783 (a); *Klesch & Co. Ltd. v. Liberty*

*Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003) (ordering tender of $12,000 as estimated travel costs). However, as described below, a witness cannot be lawfully compelled to submit to testimony abroad simply through the issuance of a subpoena by a United States court, as doing so contravenes international – and United States – law.

As set forth in the statute, a Walsh Act subpoena will only be issued when "necessary in the interests of justice," as demonstrated to the court issuing the order for the subpoena. 28 U.S.C. § 1783(a). The statute further provides an enforcement mechanism for persons who fail to appear as ordered. 28 U.S.C. § 1784. The Court's jurisdiction to enforce compulsion, however, is not available outside of the United States. As the D.C. Circuit described in *Federal Trade Commission v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1313 (D.C. Cir. 1980) (footnotes omitted): "When compulsory process is served, however, the act of service itself constitutes an exercise of one nation's sovereignty within the territory of another sovereign. Such an exercise constitutes a violation of international law." Section 1783(b) provides that service of a Walsh Act subpoena must comply with Federal Rule of Civil Procedure 4(f), following international treaties and international law. In reaching this conclusion, the D.C. Circuit relied upon long-standing principles of international law, in particular that "[T]he first and foremost restriction imposed by international law upon a State is that failing the existence of a permissive rule to the contrary it may not exercise its powers in any form in the territory of another State." Id. at 1313, n.67 (citation omitted).

As the court in *FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson* explained, there is an important distinction between the power to create laws that prescribe certain conduct, and the separate authority to enforce those prescriptive rules:

> The exercise of jurisdiction by any governmental body in the United States is subject to limitations reflecting principles of international and constitutional law, as well as the strictures of the particular statute governing that body's conduct. When more than one nation is involved, jurisdictional issues are often elusive. . . . The Restatement (Second) of the Foreign Relations Law of the United States distinguishes two types of jurisdiction of a state: jurisdiction to prescribe and jurisdiction to enforce. Jurisdiction to prescribe signifies a state's authority to enact laws governing the conduct, relations, status or interests of persons or things, whether by legislation, executive act or order, or administrative rule or regulation. Jurisdiction to enforce, by contrast, describes a state's authority to compel compliance or impose sanctions for noncompliance with its administrative or judicial

orders. International law imposes different limitations upon a state's exercise of its jurisdiction, depending upon whether the jurisdiction exercised is prescriptive or enforcement jurisdiction.

Id. at 1315-16, citing the Restatement (Second) of Foreign Relations Law of the United States §§ 6-7 (1965) (footnotes omitted; emphasis added). The decision explains the limitation on the Court's enforcement jurisdiction, using a hypothetical that captures the situation presented here:

> The two types of jurisdiction are not geographically coextensive "(a) state having jurisdiction to prescribe a rule of law does not necessarily have jurisdiction to enforce it in all cases," for unlike a state's prescriptive jurisdiction, which is not strictly limited by territorial boundaries, enforcement jurisdiction by and large continues to be strictly territorial. The Restatement illustrates this disjunction with the following hypothetical:
>
>> X is a national of state A residing in state B. A has jurisdiction to prescribe a rule subjecting X to punishment if he fails to return to A for military service. X does not return. A has no jurisdiction to enforce its rule by action against X in the territory of B. If a state should enforce a rule which it does not have jurisdiction to enforce, it violates international law, thus giving rise to a claim by the state adversely affected which may then be adjudicated in an appropriate international forum. This would be true even if the state had jurisdiction to prescribe the rule in the first place.

Id. at 1316-17, quoting Restatement, § 7 (emphasis added; footnotes omitted).

As the cases the Commission cited in its Response to Sabhlok's Motion advise, even where such jurisdictional issues are not squarely at issue, the Court should ensure that it can feasibly supervise ordered discovery. E.g., *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994). Where, as here, the subpoena is sought under the Court's authority to compel the testimony of a United States citizen, there is simply no basis in law for permitting the testimony to occur in Hong Kong. The Court lacks jurisdiction over the process, and the Court's lack of jurisdiction also renders the event something other than what it purports to be.

By insisting that the deposition occur in Hong Kong, Wong is asking the Court to sanction a "voluntary" deposition but to call it a "compelled" deposition. The Commission reiterated at the hearing that it did not agree to Wong's "voluntary" deposition in Hong Kong. Wong, whom the Commission sued in this very matter, and who settled with the Commission by admitting to the Court's jurisdiction over him, should not now be permitted

to specify the terms under which he would testify, which are different from every other witness. The need for his testimony to be compelled, and not voluntary, is particularly apparent, as Wong refused during the Commission's investigation to answer the questions posed to him, instead seeking the protection of the Fifth Amendment's privilege against self-incrimination. At the eleventh hour in this litigation, Sabhlok for the first time sought Wong's testimony for his case. Yet, due to the timing of Defendant's request, there will be no opportunity for the Commission to conduct discovery to test Wong's belated revelations. Consequently, any non-compelled arrangement would prove particularly prejudicial to the Commission.

This Court concurs with Wong's counsel that he retains the right to assert his Fifth Amendment rights. However, the Court rejects counsel's proffer at the hearing that his client would be willing to submit to the Court's guidance should issues arise during his deposition if it were taken in Hong Kong. The nine-hour time difference alone makes such a contention disingenuous at best, with all due respect.

In *Estate of Ungar v. Palestinian Authority*, 412 F. Supp.2d 328 (S.D.N.Y. 2006), a compelling need was found for a Section 1783 subpoena for an American who was living in Egypt. Although the subpoena provided that the American would appear in Egypt, it specified the processes outlined in Federal Rule of Civil Procedure 28 for taking depositions under treaty processes, such as the Hague Convention. In contrast, Sabhlok made his request so late that such processes may not be available. However, Sabhlok's delay cannot itself "create" a compelling need under Section 1783(a), let alone confer jurisdiction on the Court where none exists.

To the extent the unreported decision in *SEC v. Sandifur*, 2006 WL 3692611, *5 (W.D. Wash. Dec. 11, 2006), suggests otherwise, it should not be relied upon. In *Sandifur,* the court failed to consider the issue of jurisdiction, mistakenly suggesting that the question was one of weighing "sovereignty concerns" of the foreign country against the convenience of the witness, but without ever considering the fact that the district court lacked jurisdiction over a deposition in Luxembourg, absent use of a treaty process. *Id.* Furthermore, the authority cited by the court in that case did not address the taking of compelled depositions

abroad. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court S.D. Iowa*, 482 U.S. 522 (1987)(ruling on written discovery between parties, not a deposition of a non-party).

Wong's Opposition frames the question for the Court as a balancing of his desire to appear for deposition in Hong Kong against the personal convenience of the other parties, claiming his status as a "non-party" must tip the balance in his favor. Wong's declaration remains silent as to specific facts. Thus, Wong does not state that he is the sole caretaker of his children when his wife is absent; he does not mention whether he ever travels or when he was last in the U.S.; he does not state that his wife is expected to be absent on the date he and Sabhlok arranged for his deposition; and he does not provide any facts suggesting that a date could not be arranged for his deposition (or trial testimony) when his wife is not traveling. The balancing process envisioned under Section 1783 requires that Wong make the case as to why the hardship he faces means he should not be deposed, not why the Court should be deprived of its jurisdiction over him.

Prior to the hearing on this matter, Wong had not responded to Sabhlok's alternative suggestion for a deposition in Hawaii, which would have obviated the current issue. Sabhlok's Motion at 5. Wong still has not specifically addressed that requested alternative, and his counsel did not do so at the hearing.

Also at the hearing, counsel for Mr. Wong did not dispute that his client has traveled in the United States three times since June of this year. Counsel merely argued that Mr. Wong was only passing through, and not intending to move back to the U.S. This Court finds that regardless of where he intends to reside, if Mr. Wong can find time to visit or pass through the U.S. repeatedly for business, and make whatever arrangements are necessary for the needs of his family, then he cannot reasonably assert family hardship as justification to decline to appear for deposition in the U.S. The Court balances the hardships in this case and finds that conducting Mr. Wong's deposition in the United States would require travel only by Mr. Wong and his counsel in Los Angeles, whereas if the deposition were held in Hong Kong, Mr. Sabhlok's counsel, Mr. Mattison's counsel, and SEC counsel would all have to travel there. Accordingly, the balance of hardships weighs in favor of holding Mr. Wong's deposition in the United States.

United States District Court
For the Northern District of California

### V.    Order

For all the reasons delineated above, this Court hereby amends its Order of October 16, 2009 to require that any subpoena for the deposition of Stephen Wong, pursuant to 17 U.S.C. § 1783, provide for his appearance in the United States, at a location agreed to by Mr. Wong and the parties, on the time line previously ordered by Judge Breyer.

IT IS SO ORDERED.

DATED: October 30, 2009

_____
JAMES LARSON
United States Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\08-4238\Order Grant 72.wpd