MARC J. FAGEL (Cal. Bar No. 154425)
SUSAN F. LaMARCA (Cal Bar No. 215231)
  lamarcas@sec.gov
ROBERT L. TASHJIAN (Cal Bar No. 191007)
  tashjianr@sec.gov
WILLIAM T. SALZMANN (Cal. Bar No. 205808)
  salzmannw@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California  94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        vs.<br><br>RAJ P. SABHLOK and MICHAEL C. PATTISON,<br><br>                    Defendants. | Case No. C-08-4238 CRB<br><br>**SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT'S MOTION FOR AN OFFER OF PROOF**<br><br>Date:          March 19, 2010<br>Time:         10:30 a.m.<br>Location:   Courtroom 8, 19th Floor |

# **TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ................................................................................ 1

I.      RELEVANT PROCEDURAL HISTORY .................................................... 2

II.     ARGUMENT........................................................................................... 5

      A.    There Is No Legal Basis For the So-Called "Offer of Proof"
           Defendant Seeks .............................................................................. 5

      B.    Proof of Pattison's Fraud Does Not Require Proof of a
           "GAAP Violation" ........................................................................... 7

           1.    Pattison's Actions Made Embarcadero's Disclosures
                False and Misleading ......................................................... 8

           2.    "Expert" Testimony Is Not Necessary to Establish
                Pattison's Violations ......................................................... 10

      C.    The Materiality of Defendant's Fraud Does Not Depend on
           Expert Testimony............................................................................ 12

      D.    Expert Testimony Is Not Necessary for Proof of Scienter ................. 16

      E.    There Is No Legitimate Obstacle to Defendant's Compliance
           With the Court's Order .................................................................... 18

III.    CONCLUSION........................................................................................ 20

# TABLE OF AUTHORITIES

CASES

*Aaron v. SEC*, 446 U.S. 680 (1980) ................................................ 16

*Aguilar v. International Long Shoreman's Union Local No. 10*, 966 F.2d 443 (9th Cir. 1992) ......... 19

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988).................................................. 13

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) ........................................ 5

*Danis v. USN Communications, Inc.*, 121 F. Supp.2d 1183  (N.D. Ill. 2000) .................................... 11

*Dorn v. Burlington N. Santa Fe R. Co.,* 397 F.3d 1183  (9th Cir. 2005)............................................ 12

*Fireman's Fund Ins. Co. v. Alaskan Pride Partnership*, 106 F.3d 1465 (9th Cir. 1997) ................... 12

*Gebhart v. SEC*, --- F.3d ---, 2010 WL 537500 (9th Cir. 2010) ........................................ 18

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) ........................................ 19

*Hollinger v. Titan Capital Corp.,* 914 F.2d 1564  (9th Cir. 1990)..................................16

*In re CNET Networks, Inc.*, 2007 WL 1089690 (N.D. Cal. Apr. 11, 2007) ...................................... 15

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) ........................... 13

*Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697 (M.D.N.C. 1992)................................................. 15

*Primavera Investors v. Liquidmetal Technologies, Inc.*, 403 F. Supp. 2d 1151 (M.D. Fla. 2005)...... 16

*SEC v. Dain Rauscher*, 254 F.3d 852, 856 (9th Cir. 2001)................................................ 17

*SEC v. Lums, Inc.,* 365 F. Supp. 1046 (S.D.N.Y. 1973) ................................................ 13

*SEC v. Rana Research, Inc.,* 8 F.3d 1358, 1364 (9th Cir. 1992) ................................................ 13

*SEC v. Shapiro*, 494 F.2d 1301 (2d Cir. 1974) ................................................ 16

*SEC v. Yuen*, 2006 WL 1390828 (C.D. Cal. 2006) ................................................ 16

*Summers v. Delta Airlines, Inc.*, 508 F.3d 923 (9th Cir. 2007)........................................1, 6

*The Takara Trust v. Molex Inc.*, 429 F. Supp. 2d 960  (N.D. Ill. 2006) ............................................. 16

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ................................................ 15

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)................................................ 15

*United States v. Munoz-Franco*, 487 F.3d 25 (1st Cir. 2007) ................................................ 10

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) ................................................ 10

*United States v. Simas*, 937 F.2d 459 (9th Cir. 991)................................................ 11

1  *United States v. Turner*, 2007 WL 1367597 (May 8, 2007) .................................................. 11

2  *United States v. Weaver,* 281 F.3d 228 (D.C. Cir. 2002).................................................. 11

3  *Vernazza v. SEC*, 327 F.3d 851 (9th Cir. 2003);

4  *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005) .................... 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**SUMMARY OF ARGUMENT**

2        Without citing any authority suggesting that his unusual request is legally valid, defendant

3  Michael C. Pattison seeks an order before trial requiring the Securities and Exchange Commission

4  ("Commission") to make an "offer of proof" as to how it will present the evidence for most or all of

5  its case in chief, including what percipient witnesses will say and how various testimony from

6  various witnesses will establish the elements of his violations of the securities laws.  Defendant's

7  motion has no place in civil litigation, resembling, at best, a motion for a directed verdict which

8  cannot be heard until after the Commission's evidence is presented.  *Summers v. Delta Airlines, Inc.*,

9  508 F.3d 923, 928-929 (9th Cir. 2007).

10        Defendant's motion makes no sense given the context in which it arises.  After ruling on

11  several of the parties' motions in limine during the Pretrial Conference held on February 4, 2010, the

12  Court determined that there were significant questions regarding the admissibility of the opinions of

13  defendant's proposed accounting expert, Richard Ostiller, including questions as to what Ostiller

14  would actually say.  Pretrial Conf. Tr. at 63 (attached to Appendix submitted concurrently).  The

15  Court's Order is an appropriate means to resolve the questions raised in the Commission's motion in

16  limine to limit Ostiller's testimony, especially in light of the Court's role as the gatekeeper for expert

17  opinions offered in a jury trial.  Defendant does not take issue with the Court's order in his motion.

18  However, the particular circumstances making it reasonable to set forth Ostiller's testimony do not

19  apply generally to every witness or each piece of evidence in this case.  Indeed, defendant's

20  arguments for why the Commission should be required to do so are so divorced from his stated

21  concerns about crafting his own expert's testimony that they appear made solely for the purpose of

22  inventing make-work for the Commission.

23        In particular, defendant asserts that he might want to change the "scope" of the testimony he

24  seeks from Ostiller at trial, depending on the facts adduced during the Commission's case.  However,

25  of the three areas in which defendant seeks a so-called "offer of proof," one—materiality—is a topic

26  on which Ostiller claimed he offered no opinions.  A second—the "standard of care" by which

27  Pattison's conduct should be judged—is a legal standard of reasonable prudence, and not a topic on

28  which Ostiller should be heard, nor a topic on which he has offered elucidation to date.  The third

1    topic—how the Commission will prove that defendant, or Embarcadero, "violated GAAP"—is a

2    matter that will likely be uncontested at trial.  Indeed, the company admitted that its financial

3    statements, which contained defendant's false statements and material omissions, failed to conform to

4    GAAP when the company restated them.  Defendant's own proposed accounting expert does not take

5    issue with this conclusion.

6           Most importantly, however, the Commission's case is about whether defendant acted

7    deceptively in routinely backdating options to employees and executives such as himself, and how he

8    concealed the expenses he knew the company should have recorded, contrary to his representations to

9    Embarcadero's shareholders, its board, and to its auditors about how options were granted and how

10   he accounted for them.  If, despite the evidence, defendant chooses to defend against the

11   Commission's case by claiming that he was "confused" by the accounting standards, or if he chooses

12   to take issue with the accounting standards themselves or how they were applied by Embarcadero, it

13   is his burden to offer such evidence.  It is not, however, the Commission's burden to disprove in its

14   case-in-chief whatever defense he may ultimately offer.  Accordingly, defendant's motion for an

15   offer of proof should be denied.

16   **I.      RELEVANT PROCEDURAL HISTORY**

17          The Commission initiated this action on September 9, 2008.  The Commission's complaint

18   alleges that defendant Michael C. Pattison, while Controller of the then-public company,

19   Embarcadero Technologies, Inc. ("Embarcadero"), participated in a scheme to defraud the company's

20   shareholders and made, or helped make, material omissions and misrepresentations in its publicly

21   filed financial statements.  *See, e.g.,* Compl. ¶¶ 1-5.

22          The complaint plainly states Embarcadero's misrepresentations in its financial statements and

23   elsewhere.  These included Embarcadero's misrepresentation that employee stock option "grants

24   made during the year were at fair market value, which is defined as the closing price share on the day

25   prior to the option grant date."  *Id.* ¶ 16.  The complaint further states that Embarcadero informed

26   investors that its employee stock options were granted with exercise prices "not less than 100% of the

27   estimated fair market value on the date of grant."  *Id.*  Finally, as alleged in the complaint,

28   Embarcadero stated that it elected to account for its employee stock options pursuant to Accounting

1    Principles Board Opinion No. 25.  *Id.* ¶ 15.  As Embarcadero explained clearly in its annual reports,

2    any compensation expense associated with the grants of employee stock options would be measured

3    by "the difference, if any, on the date of the grant, between the estimated fair value of the Company's

4    shares and the exercise price of the options to purchase that stock."  *Id.*

5            As the complaint further alleges, defendant's scheme involved selecting the low price from

6    among the closing prices for Embarcadero's stock experienced over the prior quarter, and then

7    matching that low price with the corresponding date to falsely claim that stock options had then been

8    issued.  *Id.* ¶¶ 22-23.  He and his fellow executives at Embarcadero carried out this scheme for

9    approximately five years, and defendant deceived accountants, board members and others along the

10   way in playing his integral role in the scheme to defraud shareholders and in the preparation of the

11   false financial statements.  *Id.* ¶¶ 75-77.  As alleged in the complaint, Embarcadero omitted to inform

12   investors that Pattison and the other executives selected the exercise prices of employee stock options

13   with hindsight.  *See, e.g., id.* ¶ 59.

14           Pattison moved to dismiss the complaint against him, claiming that the complaint lacked

15   specificity.  *See* Mot. to Dismiss, filed Nov. 10, 2008 (Docket No. 19).  The Court denied his motion.

16   Order Denying Mot. to Dismiss dated Feb. 18, 2009 (Docket No. 49), at 7 (finding that "it is clear

17   that the SEC has pled the 'who, what, when, where, and how' of [Pattison's] material

18   misrepresentations and omissions.")

19           Discovery commenced on November 25, 2008, and the parties exchanged initial disclosures

20   on December 9, 2008.  In the initial case management conference statement, the parties agreed that

21   each party would be permitted to take "up to 25 depositions without leave of the Court."  Joint Case

22   Management Conf. Statement, filed Dec. 31, 2008 (Docket No. 30), at 7-8.  Pattison and his co-

23   defendant, Embarcadero's former chief financial officer Raj P. Sabhlok, noticed 15 depositions,

24   including four individuals from PricewaterhouseCoopers LLP, Embarcadero's outside auditors

25   during the relevant period.  Pattison's counsel routinely denied requests from the Commission to split

26   deposition time, suggesting that the Commission petition for the Court's intervention if it needed time

27   to ask questions.  *See, e.g.,* e-mail message from P. Richard, Esq. dated Mar. 27, 2009 (attached to

28   Appendix).

1    Shortly before the original trial date, Pattison moved for summary judgment.  *See* Mot. for

2  Summary Judgment, filed Nov. 13, 2009 (Docket No. 100).  In his motion, Pattison litigated the issue

3  of scienter, claiming that there "no evidence" that he acted recklessly.  *Id.* at 12-19 (citing *Hollinger*

4  *v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990)).  The Court denied Pattison's motion.  Order

5  Denying Summary Judgment dated Dec. 23, 2009 (Docket No. 135).

6    In preparation for trial, defendant filed nine motions in limine ("MIL").  *See* Docket Nos.

7  147-54, 169.  Among them was a motion to limit so-called "lay witness" opinions from auditors or

8  Embarcadero's attorney.  *See* Def. MIL No. 6 (Docket No. 152).  The Court heard argument on

9  Pattison's motion at the pretrial hearing held on February 4, 2010.  *See* Pretrial Conf. Tr. at 15-21.  At

10  the hearing, the Court distinguished between an auditor giving an expert opinion "about events that

11  he or she didn't participate in" and an auditor testifying about his interactions with the defendant.  *Id.*

12  at 19.  As the Court observed, a percipient witness's interactions with the defendant are admissible,

13  even though the witness is a auditor, because the interactions "go[] to the defendant's state of mind . .

14  . ."  *Id.*

15    The Commission moved in limine to exclude the proposed testimony of Pattison's retained

16  experts as unreliable and offering opinions on subjects outside their stated expertise, including the

17  law.  *See* Commission MIL Nos. 1, 3 (concerning accounting opinion of Richard J. Ostiller and

18  materiality opinion of Kenneth M. Lehn, respectively) (Docket Nos. 155, 157).  The Court

19  entertained extended argument concerning Ostiller's opinion.  *See* Pretrial Conf. Tr. at 3-8, 53-64, 67-

20  68.  The Court placed some limitations on Ostiller's testimony—specifically, the Court ruled that

21  Ostiller could not testify "as to what the defendant thought or didn't think," and stated he would not

22  be permitted to provide an opinion "based on sources that he can't disclose—confidentiality

23  agreements or otherwise."  *Id.* at 6-7.  After discussion about Ostiller's basis for testimony

24  concerning a "reasonable" interpretation of the applicable accounting standard for employee stock

25  options, the Court ordered the defense "to write out in full the testimony they expect from this expert.

26  . . .  I'm going to see exactly how it's going to come in.  I'm going to see what his opinion is, and his

27  reasons for his opinion, and I'll come to some conclusion."  *Id.* at 63.  The Court ordered defendant to

28  submit the written testimony by March 26, 2010.  *Id.* at 67.

1   The Court also suggested doubts about defense expert Lehn's opinion concerning materiality.

2   Pretrial Conf. Tr. at 8-10.  As the Court framed the issue, "[T]he way he has done his analysis is that

3   he and other people using his analysis wouldn't consider it [*i.e.*, Embarcadero's accounting

4   misstatements] material.  Fine.  I mean, that's fine, but I don't understand that that's necessarily

5   admissible. . . .  [I]t's almost an *ipse dixit* sort of thing." *Id.* at 9-10.  The Court requested further

6   discussion and did not rule on the Commission's motion.  *Id.* at 10.

7   **II.   ARGUMENT**

8   **A.   There Is No Legal Basis For the So-Called "Offer of Proof" Defendant Seeks**

9   Defendant cites no authority—none—for the proposition that the Commission should be

10  required to submit an offer of proof on the eve of trial.  *See* Mot. at 1-2.  Instead, Pattison argues that

11  it will be "impossible" for the Court to determine how the Commission will prove its case and that

12  "judicial economy" will be best served through such an offer.  *Id.*  Nonsense; defendant's request is

13  nothing more than a tactic to delay the submission of the testimony of his own retained expert, which

14  the Court ordered weeks ago at the pretrial hearing.  Pattison moved twice to dismiss the claims

15  against him, once at the pleading stage and again for summary judgment at the conclusion of

16  discovery.  The Court denied both motions and it should deny the latest attempt to litigate the issues

17  raised in defendant's motion.[1]

18  Pattison expresses uncertainty about how the Commission intends to present its evidence.

19  That is Pattison's problem, not the Court's.  The Commission's allegations are set forth with

20  specificity in its complaint filed 18 months ago.  Order Denying Mot. to Dismiss dated Feb. 18, 2009

21  (Docket No. 49), at 7 (finding that "it is clear that the SEC has pled the 'who, what, when, where, and

22  how' of [Pattison's] material misrepresentations and omissions.").  That defendant now confuses the

23  elements of the claims (*see* Parts II(B) & (D), below) should not be the cause of additional hand-

---

24  [1] There is no basis in law for one party to request, by motion or otherwise, that his opponent set forth
25  the evidentiary basis of his case under the guise of requesting a so-called "offer of proof."  In order
    for a party to preserve its right to challenge on appeal the court's exclusion of the party's evidence,
26  the party may be required to make an offer of proof as to what the evidence would have shown unless
    it is otherwise clear from the context.  FED. R. EVID. 103(a)(2).  Offers of proof are thus the mirror
27  image of objections—if not timely made, the potential claim of error based on an evidentiary ruling
    may be waived.  *Id.*; *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 173 (1988).
28

1  holding from the Commission:  discovery was open for more than a year, and defendants noticed 15

2  depositions and served a variety of other discovery requests on the Commission.  (Indeed, Pattison

3  could have noticed additional depositions under the agreed-upon terms of discovery among the

4  parties.)

5          To the extent that Pattison does not comprehend the nature of the Commission's case, it is a

6  problem of his own making.  During discovery, his counsel routinely refused in advance to agree to

7  share questioning time at depositions, from which Pattison could have gleaned more information

8  about the Commission's case.  The Commission, moreover, fully complied with the Court's Pretrial

9  Order, which requires the parties to set forth the evidence, including witnesses, they would offer, and

10  provide a list and copy of each exhibit to be used in presenting its case-in-chief.

11          Defendant's professed concern for judicial economy is not evident in his motion, in which he

12  seeks to lay the foundation for pre-trial dismissal based on the Commission's alleged failure of proof.

13  *See* Mot. at 11 ("If [the Commission] has no admissible evidence, the case will be appropriately

14  dismissed in lieu of a jury trial.").  Pattison previously chose to move for summary judgment on

15  scienter-related issues.  *See* Mot. for Summary Judgment at 3 ("Issues to be Decided") (Docket No.

16  100).  His decision to raise the issue of materiality now, on the eve of trial, is too late.

17          His current motion most closely resembles a motion under Rule 50(a) of the Federal Rules of

18  Civil Procedure for judgment as a matter of law.  Such motions, however, may only be granted after

19  the party against whom such judgment is sought "has been fully heard on [the] issue." FED R. CIV. P.

20  50(a)(1).  And, the Ninth Circuit has held that it is error to substitute an "offer of proof" for live

21  witness testimony in dismissing claims.  *Summers v. Delta Airlines, Inc.*, 508 F.3d 923, 928-929 (9th

22  Cir. 2007).  In *Summers*, the Court specifically stated:  "We hold that, when a party seeks during trial

23  to present relevant and admissible testimony from a witness on a disputed issue, Rule 50(a) precludes

24  the district court from requiring that the testimony be given through an offer of proof instead." *Id.* at

25  928.  By seeking to require the Commission to present its entire case-in-chief in writing, on the

26  grounds that the Commission purportedly cannot prove the elements of its case, defendant is asking

27  for the very relief rejected by the Ninth Circuit.

28

1  In short, Pattison's practical goal in requesting a so-called "offer of proof" is not to advance

2  the trial process, but instead to invent "make-work" for the Commission in order to needlessly

3  increase the costs and burdens of litigating this case.  As described more fully below, even if

4  defendant's request were not so legally baseless, none of the reasons for his request hold up.[2]

5  **B.    Proof of Pattison's Fraud Does Not Require Proof of a "GAAP Violation"**

6  Defendant's motion begins with the false premise that the Commission's case is about

7  whether or not "Embarcadero" violated generally accepted accounting principles ("GAAP").[3]  *See*

8  Mot. at 2.  It is not.  The Commission alleged specific misrepresentations and omissions in

9  Embarcadero's financial statements, including misrepresentations that employee stock options were

10  granted at fair market value on the date of grant (Compl. ¶¶ 15-16), that Embarcadero would record a

11  compensation expense equal to "the difference, if any, on the date of the grant, between the estimated

12  fair value of the Company's shares and the exercise price of the options to purchase that stock" (*id.*

13  ¶ 15), and that the company elected to account for employee stock options pursuant to APB No. 25

14  (*id.* ¶ 16).  The complaint further alleges that Pattison and other executive-defendants failed to inform

15  the company's shareholders, accountants, lawyers, and directors, and that defendants selected the low

16  price of each fiscal quarter as the exercise price for employee stock option grants.  *Id.* ¶¶ 59, 75-77.

17

18  _____

19  [2]  Pattison's appeal to the "guidance" of Judge Orrick is unpersuasive.  Mot. at 2.  The Court had
20  specific concerns and questions about the testimony of defendant's retained accounting expert,
    Richard J. Ostiller.  *See* Part II(E), below.  None of these concerns applied to the Commission's
21  allegations concerning defendant's misrepresentations, the materiality of the misrepresentations, or
    defendant's scienter.

22  [3]  If it were the case that the Commission was required to "prove" that Embarcadero violated GAAP,
23  then that case would be quickly resolved in the Commission's favor.  Embarcadero *admitted* it failed
    to comply with GAAP when, in 2007, the company restated its financials for the prior three years and
24  informed shareholders that each of its prior financial statements could not be relied upon because of
    the failure to accurately report compensation expenses in accordance with the GAAP requirements
25  the company had stated it followed.  *See* Annual Report filed by Embarcadero Tech., Inc. on Form
    10-K (filed May 24, 2007) at 3 (explaining basis for decision to restate financial statements).  In
26  truth, despite defendant's vociferous protests, the Commission expects that there will not actually be
    any dispute at trial regarding whether the backdating practices at Embarcadero complied with (or
27  alternatively, "violated") GAAP.  Indeed, defendant's own proposed accounting expert does not take
    issue with the company's conclusions contained in its restatement.  Ostiller Dep. Tr. at 80.
28

As alleged in the complaint, Pattison knew (or was reckless in not knowing) how Embarcadero described its stock option grants and related accounting in the company's financial statements.  *See, e.g.*, Compl. ¶ 29.  Nevertheless, as the Controller—the person in charge of Embarcadero's accounting—Pattison lied about the purported dates on which options were granted to employees and to executives like Pattison himself.  Compl. ¶¶ 1-5.  He then falsely reported Embarcadero's income and expenses in its financial statements, stating to shareholders that no compensation expense had been recorded because options were purportedly granted at the fair market value.  *Id.*

### 1.    Pattison's Actions Made Embarcadero's Disclosures False and Misleading

Embarcadero's management, including Pattison, falsely described to shareholders how they granted stock options and how they accounted for the stock options they granted.  As the Controller, Pattison clearly was expected to understand the company's disclosures and any accounting rules that Embarcadero either had to, or elected to, follow.  Nevertheless, his personal knowledge of and responsibility for the accounting are not the sole or even chief basis for finding that he knew, or was reckless in not knowing, that the backdating scheme was deceptive.  Indeed, both Raj Sabhlok, the chief financial officer who was not a CPA, and Stephen Wong, the chief executive officer who testified that he relied on Pattison for the accounting, were also liable for defrauding the shareholders.  Compl. ¶¶ 1-5 (describing Sabhlok's involvement in scheme); *see SEC v. Wong*, Case No. 08-cv-04239 CW (filed Sept. 9, 2008).  Their actions in issuing options with false dates and prices selected with hindsight because Embarcadero's stock price was low, together with their signing and certifying financial statements that falsely described to Embarcadero's shareholders how options were issued and accounted for, made them liable for their fraud regardless of their shallow accounting backgrounds.[4]

---

[4]  It is the Commission's contention that both Stephen Wong and Raj Sabhlok are liable for fraud. Both Wong and Sabhlok consented to an injunction against their future violations of Section 10(b) of the Exchange Act, among other provisions, without admitting or denying the Commission's allegations.  Final judgment has been entered against Wong.  The proposed final judgment against Sabhlok has not been entered, however.  *See* Docket No. 164 (filed Jan. 15, 2010).

1   Thus, while there will undoubtedly be evidence adduced at trial that demonstrates that

2   Pattison clearly understood the applicable accounting rules, the Commission's case against him does

3   not depend upon proving that he "violated" an accounting rule.  Rather, the Commission's case

4   begins with the fact that Pattison, on behalf of Embarcadero, made certain disclosures in the

5   company's financial statements which he knew to be false and misleading.  For instance, in the first

6   footnote to the financial statements, Embarcadero described its "significant" accounting policies,

7   including "Stock-based Compensation."  The disclosure included in relevant part:

8       Pursuant to SFAS No. 123, "Accounting for Stock-Based Compensation," the Company
        accounts for employee stock options under Accounting Principles Board Opinion
9       ("APB") No. 25, "Accounting for Stock Issued to Employees," and follows the
        disclosure-only provisions of SFAS No. 123. Under APB No. 25, compensation expense
10      is based on the difference, if any, on the date of the grant, between the estimated fair
        value of the Company's common stock and the exercise price of options to purchase that
11      stock.

12  *See* 2003 Annual Report filed by Embarcadero Tech., Inc. on Form 10-K (filed Mar. 12, 2004) at 37,

13  40.  Embarcadero thus informed its shareholders that it had *elected* to follow APB No. 25, and that it

14  had made this election "pursuant to SFAS No. 123."  Embarcadero could just as well have accounted

15  for the value of the options pursuant to SFAS 123, without reference to APB No. 25, and recorded a

16  larger expense in its income statement; however, it chose to, and disclosed to shareholders, that it was

17  following the accounting rule the defense now describes as "unworkable" and "rescinded."[5]  Mot. at

18  3.  Accordingly, the accounting principle from which Pattison (and Embarcadero) deviated was

19  Embarcadero's own disclosure.  (Notably, though Pattison was the expert in accounting among top

20  management at Embarcadero, he did not find the rule so "unworkable" that he ever suggested that the

21  company report its options expense under SFAS 123.)

22      Furthermore, Embarcadero's very disclosure to shareholders set forth above belies the notion

23  that Pattison's misdeeds are simply the deviation from a "complex" or "complicated" accounting

24  rule.  Rather, the disclosure made clear the simple mechanics of how compensation expenses were to

25  be recorded:  "[C]ompensation expense is based on the difference, if any, on the date of the grant,

26

27  [5]  Given Pattison's backdating, Embarcadero's reported expenses calculated under SFAS 123 were
    also wrong, since Pattison similarly used the false dates in preparing this calculation, which uses the
28  date of grant as an input for calculating the "fair value" of options under SFAS 123.

1   between the estimated fair value of the Company's common stock and the exercise price of options to

2   purchase that stock." Embarcadero 2003 Annual Report at 40.  In the same financial statements,

3   prepared by defendant, Embarcadero claimed to its shareholders that the amount of such

4   "compensation expense" for 2003 was zero.  *See* Embarcadero 2003 Annual Report at 35

5   (Consolidated Statements of Changes in Stockholders' Equity).

6       **2.      "Expert" Testimony Is Not Necessary to Establish Pattison's Violations**

7       Re-litigating his motions in limine, defendant asserts without legal support that the

8   Commission is somehow required to present "expert" testimony to establish defendant's fraud.

9   *Compare* Mot. at 2-3 (arguing that "GAAP standards must be established through expert testimony")

10   and Def. MIL No. 6 at 4 (arguing that "testimony concerning the application of GAAP is the subject

11   of expert opinion testimony.")  He was wrong then, and he is wrong now.  Securities fraud may be

12   proven by testimony from percipient witnesses who testify about facts establishing the defendant's

13   fraud, including how a defendant cooked a company's books.  *See, e.g., United States v. Rigas*, 490

14   F.3d 208, 222-25 (2d Cir. 2007) (in securities financial fraud alleging misclassification of debt,

15   accountant employed by company was permitted to offer opinions about how debt was transferred

16   from company's books to another set of books, and how the reclassification of debt affected the

17   company's financial statements); *United States v. Munoz-Franco*, 487 F.3d 25, 35-36 (1st Cir. 2007)

18   (bank officer could offer testimony about the propriety of certain loans, based on his firsthand

19   perceptions).[6]

20       Indeed, the cases defendant relies upon, two district court cases, do not support his

21   overwrought position.  In the first, *Danis*, the district court made the observation that violations of

22   GAAP are established through expert testimony in the context of a case where the plaintiffs had

23   retained an accounting expert, but as the court observed his "report does not contain an opinion that

24   the 1996 financial statements were materially misstated."  *Danis v. USN Communications, Inc.*, 121

25   _____

26   [6] At the Pretrial Conference, Pattison's counsel insisted that the Commission's case must be
    dismissed without such expert testimony.  Pretrial Conf. Tr. at 40-43 (citing *In re Imperial Credit*
27   *Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005 (C.D. Cal.)).  Remarkably, Pattison fails to cite this
    decision in support of his motion.
28

1   F. Supp.2d 1183, 1192 (N.D. Ill. 2000).  Even worse for defendant, in the second case on which he

2   relies, out of the Western District of Washington, in the context of a criminal prosecution of an

3   executive for misleading auditors in a bond offering, the court agreed with the prosecution that the

4   auditors could testify as percipient fact witnesses, and that the testimony the government expected to

5   elicit was not "expert."  *United States v. Turner*, 2007 WL 1367597 (May 8, 2007).  Indeed, in

6   rejecting the defendant's position in Turner, the court found:  "The Court agrees with the

7   Government here too that witnesses who may be specialists do not have to be designated "experts" in

8   order to testify about their roles in cases that called for their special expertise as the relevant facts

9   developed. . . . The Court cannot find that the charges against Defendant can only be proven in terms

10  of GAAP.  Nor will the Court write per se GAAP violations into the elements of the offenses at issue

11  here."  *Id*. at *2 (citation omitted).  The defendant in *Turner* was ultimately convicted.

12          Defendant's argument again fails when he claims that a particular (but unidentified) subgroup

13  of auditors—those whom he describes as after-the-fact "investigators"—cannot testify except as

14  "experts."  Again, the case law is to the contrary.  *United States v. Weaver,* 281 F.3d 228, 231 (D.C.

15  Cir. 2002) (finding that internal auditor from Postal Inspection Service, whose "testimony linked the

16  ledger gaps and unrecorded (but deposited) checks to the alleged cash thefts" was admissible as

17  percipient witness testimony).  *See United States v. Simas*, 937 F.2d 459 (9th Cir. 991) (testimony

18  from FBI agents relaying and interpreting statements made to them was admissible under FRE 701).

19  Just as problematic, defendant does not bother to identify who the witnesses are whom defendant

20  considers "after-the-fact."  As the Commission's witness summaries make clear, each percipient

21  witness who we may call at trial will describe their personal involvement in and understanding of

22  facts they perceived during the time of the events at issue.[7]  Finally, during the Pretrial Conference

23  _____

24  [7] Two auditors' testimony may span as far as "2006-2007," which defendant apparently considers to
    be "after-the-fact," although each was also involved in events at earlier times, including 2004 and
25  2005:  Udit Tibrewal and Danny Wallace, both with PWC.  Wallace became the audit partner in mid-
    2005 just as Pattison departed from Embarcadero.  Tibrewal's involvement dates back to 2004, when,
26  as the auditor tasked with gathering information from Pattison, he experienced Pattison's reluctance
    to provide timely information.  *See, e.g.*, Exhibit 61 (2004 e-mail in which Tibrewal's request to
27  Pattison for support to test options recorded earlier in the year is met with Pattison's response: "Are
    you kidding? This is ridiculous").
28

1  the Commission explained that one reason the testimony of persons who discovered defendant's

2  fraud and prepared the restated financial statements would be so valuable was to show the jury how

3  the fraud remained concealed.  In response the Court observed:  "It's not unlike going to—calling the

4  investigator at the scene of a crime, and saying how—how you know the bullet hole had been

5  covered up in the wall, and that he had to go and get a magnetometer—whatever it is—and take the

6  building apart, timber by timber.  And there he discovered the bullet hole."  Pretrial Conf. Tr. at 36.

7  Such testimony is routinely admitted, and not as "expert" testimony.  *Dorn v. Burlington N. Santa Fe*

8  *R. Co.,* 397 F.3d 1183, 1192-93 (9th Cir. 2005) (improper to limit testimony of highway patrol officer

9  regarding his perceptions of tire marks as "expert testimony that was not disclosed"); *Fireman's*

10  *Fund Ins. Co. v. Alaskan Pride Partnership*, 106 F.3d 1465, 1467 (9th Cir. 1997) (claims adjuster

11  permitted to testify that claim was legitimate loss, based on his personal knowledge gained in

12  investigating the claim)

13  **C.      The Materiality of Defendant's Fraud Does Not Depend on Expert Testimony**

14         The hollowness of defendant's argument is perhaps most striking in his contention that the

15  Commission "should be required to proffer the testimony it intends to use to support its claim that

16  alleged misstatements and omissions in Embarcadero's public filings were material."  Mot. at 5.

17  Such a "proffer" cannot even be important to the testimony that defendant's proposed expert Ostiller

18  would give, as Ostiller has not offered opinions regarding the materiality of defendant's fraud.  More

19  basically, however, the "two facts" defendant mentions in his motion, among the *numerous other*

20  *facts* in the record from which materiality may be inferred, do not require "expert" opinion to be

21  offered to the jury.  Indeed, defendant's argument that they do is based entirely on a misreading of

22  the law.

23         Defendant's argument begins with his invented straw man, that the Commission intends "to

24  prove materiality through two facts:  (1) Embarcadero's stock price dropped after certain public

25  disclosures in 2006, and (2) the private equity firm that purchased Embarcadero in 2007 ("TCB")

26  paid less for the company than an offer it made in 2006."  Defendant cites to nothing for this

27  assertion which grossly understates the evidence from which the jury will conclude that defendant's

28  fraud was material.  Regardless, the significant market decline in Embarcadero's stock price in

1  response to corrective disclosures about it options problems, as well as the substantial decline of

2  $1.18 per share (from $8.38 to $7.20) in the price Embarcadero's shareholders ultimately received for

3  their stock as a result of the revelation of defendant's fraud, are facts that are basic, undisputable facts

4  that do not depend upon expert testimony.  Defendant's argument regarding the stock price decline is

5  premised entirely on a misstatement of the law, while his argument about the diminished price

6  Embarcadero's shareholders received misapprehends both the law and the facts.

7          To prove materiality, the Commission will present evidence from which the jury will

8  conclude that there is "a substantial likelihood that the disclosure of the omitted fact would have been

9  viewed by the reasonable investor as having significantly altered the 'total mix' of information made

10  available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (*quoting TSC Indus. Inc. v.*

11  *Northway, Inc.*, 426 U.S. 438, 449 (1976)).  Erroneously importing standards that are separate from

12  the question of materiality, and which do not apply to the Commission's enforcement action against

13  the defendant, defendant asserts that the Commission must establish "a 'causal connection' between a

14  claimed misrepresentation or omission and any loss."  Mot. at 6.[8]  The Commission need not prove

15  the elements of "reliance" or "loss causation" because, among other reasons, the Commission does

16  not seek damages from the defendant.  *See SEC v. Rana Research, Inc.,* 8 F.3d 1358, 1364 (9th Cir.

17  1992) ("We hold that reliance is not an element of a Rule 10b-5 violation by misrepresentation;

18  rather, it is an element of a private cause of action for damages implied thereunder.  The SEC need

19  not prove reliance in its action for injunctive relief on the basis of violations of section 10(b) and

20  Rule 10b-5.") (footnotes omitted.); *SEC v. Lums, Inc.,* 365 F. Supp. 1046, 1059 (S.D.N.Y. 1973) ("In

21  an enforcement proceeding, on the other hand, no proof of reliance is necessary, and the only cause

22  nexus required is the statutory 'connection with the purchase or sale of security.'").[9]

23  _____

24  [8]  Defendant also misstates the law regarding proof of loss causation.  While defendant incorrectly

25  cites to the opinion in *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 534 F.3d 1068 (9th Cir.
    2008), which was withdrawn and corrected, 540 F.3d 1049 (9th Cir. 2008), in support of his theory

26  that the loss causation must be proven through expert testimony, the Ninth Circuit has not so held.

27  [9]  The Commission seeks as its relief a penalty, as authorized by statute, as well as injunctive relief
    including orders against future violations of the securities laws and disgorgement of ill-gotten gains,

28  with prejudgment interest.  (As the Commission submission to the Court described, it is the request

**Footnote continued on next page**

1      It is perfectly acceptable, and well within the common knowledge, for the jury to draw

2   conclusions about the importance to investors of defendant's fraudulent conduct, based on a

3   significant decline in stock price immediately following disclosures that first revealed previously

4   undisclosed information.  This Court thus observed at the Pretrial Conference that there is enough

5   that exists in the common knowledge to suggest that when information is disseminated by a company

6   on the market, and the company's stock price then drops, "absent successful cross-examination which

7   would reduce it to nothing," a jury could well conclude that there was a relationship between the

8   announcement and the price decline.  Pretrial Conf. Tr. at 48.

9      Defendant makes similar errors in arguing that the evidence of the substantially lower price

10  paid by a private equity firm for Embarcadero's stock in 2007 after the fraud began to be revealed is

11  "inadmissible to prove materiality to a reasonable investor."  Mot. at 9.  The jury could reasonably

12  conclude from the fact that, in 2006 based on Embarcadero's announcement that its financial

13  statements were not reliable and it would need to restate them due to the backdating the private equity

14  firm withdrew its offer to purchase Embarcadero's stock for $8.38 per share, that a reasonable

15  investor indeed found the misrepresentations and omissions to significantly alter the available

16  information.  Apparently, defendant does not consider the private equity firm, TCB, to be a

17  "reasonable investor."  Defendant's argument is specious.  In addition to the fact that the disclosures

18  about backdating led to the withdrawal of the $8.38 offer, to which the private equity firm had been

19  contractually committed, once Embarcadero was nearing completion of the financial statements the

20  private firm made a new offer at a substantially lower price:  $7.20 per share.  Consequently, every

21  shareholder of Embarcadero who owned stock from September 2006 (when the original $8.38 per

22  share deal was announced) through the consummation of the final transaction by the same private

23  equity firm at $7.20 per share in June 2007, saw a significant portion of their investment evaporate.

24  From this evidence, the jury would doubtless find Pattison's fraud material to reasonable investors.

25      Defendant's further argument that the Commission should be required to recite all the

26  evidence that tends to prove the materiality of Pattison's fraud appears premised on the fallacious

27  _____

for a penalty that permits the parties to request a jury trial.  *See* Docket No. 170; *accord* Docket No.

28  171 (defendant's submission)).

1    suggestion that the element of materiality is somehow reserved for "expert" testimony.  The law

2    holds otherwise.  Materiality involves mixed questions of law and fact.  *TSC Indus., Inc. v. Northway,*

3    *Inc.*, 426 U.S. 438, 450 (1976).  It is therefore more likely that proposed experts, such as defendant's

4    proposed expert in economics, Lehn, offer the *inadmissible* opinion that information could not be

5    material based on their narrow view of the evidence.  In addition to unnecessarily supplanting the

6    decision of the jury, such testimony amounts to a legal opinion.  *See United States v. Bilzerian*, 926

7    F.2d 1285, 1295 (2d Cir. 1991) (defendant's expert's opinion about a phrase he claimed was

8    generally understood in the securities industry was properly excluded because it related to whether

9    the defendant's disclosures complied with legal requirements and "would have constituted an

10   impermissible instruction on governing law").  The Commission's motion to exclude Lehn's opinions

11   remains pending before the Court.

12          In contrast, percipient witnesses who describe actual events from which the jury may draw

13   conclusions about the materiality of defendant's fraud are far preferable to an expert who purports to

14   summarize select evidence and offer opinions that supplant the Court's or the jury's role.  Thus,

15   consistent with the case law, numerous facts could reasonably be relied upon by the jury to find

16   Pattison's fraud material, including:

17   •   The fact that Pattison repeatedly used false dates and correspondingly low option prices in

18       options granted to hundreds of employees over four years in order to give them, and himself,

19       "in-the-money" options may suggest to the jury that the information he falsified would be

20       important to a reasonable investor.  *See, e.g., Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp.

21       697, 702 (M.D.N.C. 1992) (when "assessing what a reasonable shareholder would deem

22       important, the nature, purpose, value, and recipients of the stock grants are all important

23       factors to be considered"); *In re CNET Networks, Inc.*, 2007 WL 1089690 at *9 (N.D. Cal.

24       Apr. 11, 2007) (Alsup, J.) (stating that in-the-money options are "pernicious" because the

25       "employee gets the incentive without doing anything to increase the company's value").

26   •   The fact that Pattison's fraud resulted in the overstatement of income for every annual

27       period that he worked as the company's Controller could well be relied upon by the jury as

28       proof of the materiality of his fraud.  *See, e.g., SEC v. Yuen*, 2006 WL 1390828 at *36 (C.D.

Cal. 2006) ("information relating to a company's financial condition and profitability is generally material") (citing *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980)); *Primavera Investors v. Liquidmetal Technologies, Inc.*, 403 F. Supp. 2d 1151, 1154-55 (M.D. Fla. 2005) (finding that any reasonable investor would want to know that financial statements are wrong because stock options were not properly accounted for).

- As the company's Controller, defendant's efforts to conceal the backdating practices and to falsify records may reasonably be understood as proof that *Pattison* himself considered the unrecorded expense to be material, which is evidence of materiality, and it may further lead the jury to find that investors would question the integrity of management. *See SEC v. Shapiro*, 494 F.2d 1301, 1307 (2d Cir. 1974) (insiders' behavior is empirical evidence of materiality); *The Takara Trust v. Molex Inc.*, 429 F. Supp. 2d 960, 975 (N.D. Ill. 2006) ("investors may reasonably question the integrity of the company's management, and thus cause an alleged misstatement or omission to be material").

None of these facts depends upon an expert for introduction at trial. Moreover, certain of these facts, including that Pattison himself considered it important to conceal the true dates on which options were granted, may be gleaned based on nearly any of the record evidence. Accordingly, defendant's suggestion that the Commission should spell out the evidence for him is simply make-work.[10]

## D.    Expert Testimony Is Not Necessary for Proof of Scienter

There is no dispute that the Commission is required to prove that defendant acted with the requisite scienter, *Aaron v. SEC*, 446 U.S. 680 (1980), and that scienter may be satisfied by proof of either knowledge or recklessness. *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1568-69 (9th Cir. 1990). To determine whether a defendant's actions were reckless, the Ninth Circuit has articulated the "standard of care" by which a defendant's conduct is measured in a securities case as "reasonable prudence." *Vernazza v. SEC*, 327 F.3d 851, 861 (9th Cir. 2003); *SEC v. Dain Rauscher*, 254 F.3d

---

[10]  In a case such as this, where the only truly contested issues are defendant's scienter and the materiality of his fraud, defendant essentially seeks for the Commission to describe all testimony and summarize each exhibit to be presented at trial. The Commission has already done so, to the extent the Court requested that the parties provide all exhibits and summarize the testimony they intend to present in their respective cases.

1    852, 856 (9th Cir. 2001).  Notably, this standard of "reasonable prudence" is the same standard that

2    applies to other tortfeasors, as well as other persons in the securities industry accused of fraud.  *Dain*

3    *Rauscher*, 254 F.3d at 856-57.  There is not a special standard that applies to Controllers, or certified

4    public accountants, such as Pattison.  And the standard is defined by the law —no amount of expert

5    testimony can tailor this standard to allow defendant a pass on the grounds that other persons were

6    engaged in the same conduct.  Despite defendant's several leaps over the law suggesting otherwise, it

7    would be pointless in this case for an expert to attempt to offer further explication of this legal

8    standard.  Far from suggesting that experts should be called to explain what "standard of care" should

9    apply, the Ninth Circuit has upheld the exclusion of an expert on this very point.  *Vernazza*, 327 F.3d

10   at 851.  Compliance with an "industry standard" will not absolve an industry professional from

11   violations of the securities laws.  *Dain Rauscher*, 254 F.3d at 857.

12         Furthermore, numerous statutes and rules described disclosures Embarcadero was required to

13   make to its shareholders.  For instance, Embarcadero was required annually to file reports, certified

14   by independent public accountants, describing the company's financial condition, including its

15   expenses, its income, the amount of its outstanding equity and particulars such as management

16   compensation.  Exchange Act Section 13(a), 15 U.S.C. § 78m; 17 C.F.R. § 240.13a-1; Form 10-K;

17   Regulation S-K, 17 C.F.R. §§ 229.301, 402.  As its Controller, defendant was Embarcadero's

18   executive who was most personally involved in explaining to Embarcadero's auditors how

19   Embarcadero prepared and complied with its disclosures, and he had a duty to ensure that

20   Embarcadero's financial statements honestly and accurately depicted the company's financial results.

21   Defendant, in acting for Embarcadero, was also duty bound to furnish any additional information

22   necessary to make the statements in Embarcadero's disclosures not misleading.  17 C.F.R. § 240.12b-

23   20.  Accordingly, the appropriate "standard of care" here is defined by the law:  reasonable prudence.

24   Therefore, it would be inappropriate in this case to subject the jury to an expert's rendition of this

25   legal standard.

26         One (among other) means to establish defendant's scienter in this case would be to show how

27   objectively unreasonable defendant's actions were, as purely objective evidence of defendant's

28   extreme departure from the standards of ordinary care may give rise to an inference of scienter.  *See*

1   *Gebhart v. SEC*, --- F.3d ---, 2010 WL 537500 (9th Cir. 2010) ("'The fact that the misrepresentation

2   is one that a man of ordinary care and intelligence in the maker's situation would have recognized as

3   false is not enough to impose liability ..., *but* it is evidence from which his lack of honest belief may

4   be inferred.' (emphasis added)") (*quoting* RESTATEMENT (SECOND) OF TORTS § 526 cmt. d).

5          To overcome this presumption, the defendant may present evidence that he subjectively

6   believed he was acting in good faith. *Gebhart v. SEC*, --- F.3d ---, 2010 WL 537500.  Of course,

7   defendant is likely to face the same problem encountered by many fraud defendants – will an after-

8   the-fact explanation of his supposedly subjective intent be believed by a jury faced with so much

9   evidence of wrongdoing?  In any event, if defendant chooses to rebut the Commission's evidence by

10  suggesting to the jury that he was subjectively "confused" by the accounting standards, it is his

11  burden to prove.  To demonstrate Pattison's fraud, the Commission is not required in its case-in-chief

12  to dispel defendant's various theories about how he was confused by accounting standards or about

13  how he thought others should have interpreted his false documents; rather, those are matters the

14  defendant will have to prove if he chooses to present these theories in his defense.

15  **E.      There Is No Legitimate Obstacle to Defendant's Compliance With the Court's Order**

16         Defendant offers the Court no legitimate reason why he cannot set forth his proposed

17  accounting expert's direct testimony, as ordered by the Court during the Pretrial Conference.

18  Defendant apparently does not take issue with the soundness of the Court's order, which is well

19  within the Court's discretion as the gatekeeper in determining whether an expert, whose opinions

20  have been challenged, may testify.  Defendant states only that "the scope of Ostiller's testimony in

21  Pattison's case will depend on witness examination taken during the SEC's case-in-chief."  Mot. at

22  12.  To the extent the defendant's reference to scope is intended to mean that he would seek

23  additional testimony from Ostiller depending upon the testimony of percipient witnesses, defendant is

24  foreclosed from that possibility by the Federal Rules.  Undisclosed bases for opinions may not be

25  offered at trial.  FED. R. CIV. P. 26(a)(2) and 37(c)(1).  As this Court has already made rulings

26  consistent with this basic principle in this case.  *See* Pretrial Conf. Tr. at 3, 7, 20-21.  If, alternatively,

27  the vague reference to "scope" meant that the defendant may wish to ask him fewer questions than he

28

1  now anticipates, defendant should have sought relief or clarity on this limited question rather than

2  presenting this long, convoluted motion.

3          Moreover, the so-called "offer of proof" defendant seeks on the various topics is not at all

4  necessary for defendant to craft his proposed expert's testimony.  Of the three topics Pattison

5  suggests, two—the materiality of defendant's fraud, and the "standard of care" by which Pattison's

6  conduct is to be judged—are not topics on which Ostiller has offered any opinions to date.  Thus, in

7  his deposition Ostiller stated that he was not asked to offer opinions as to materiality, and he

8  understood the defendants had employed a separate expert to address such issues.  Ostiller Dep. 154-

9  55.  Similarly, when asked during his deposition if there was any standard by which Ostiller

10  measured Pattison's conduct as "reasonable," Ostiller stated that "reasonable" was not an accounting

11  term of art and that by it he simply meant "appropriate."  *Id*. at 216.[11]  Ostiller thus offers no

12  elucidation on any "standard of care," and he does not describe how Pattison's conduct met or failed

13  to meet such a standard.  Indeed, Ostiller does not even weigh in on the third topic of defendant's

14  motion—whether or not the defendant's violative conduct also violated the standards used by

15  accountants, GAAP.   Although defendant claims the Commission must prove that he "violated

16  GAAP," even though Embarcadero admitted in its restatement that its original accounting (performed

17  by Pattison) was not in compliance with GAAP, when Ostiller was asked whether he was offering

18  any opinions in this regard, he said he was not:  "Again, the scope of my work was not to reach a

19  conclusion about the propriety of the adjustment or the additional compensation expense that was

20  included in the restatement."  *Id*. at 80.

21          Finally, if defendant is truly at a loss as to what case the Commission will present through the

22  testimony of the several disclosed percipient witnesses, his confusion is purely of his own making.

23  After 13 months of discovery, in which the Commission very early on disclosed the persons with

24  ───────────────

25  [11]  Of course, this sort of circular definition is the very type of *ipse dixit* that should not be presented
    to a jury.  *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Zenith Electronics Corp. v. WH-*
26  *TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (Easterbrook, J.), *cert. denied*, 1255 S. Ct.
    2978, 162 L. Ed. 2d 890 (2005).  It is particularly problematic where the expert's *ipse dixit* is merely
27  his personal view of what is "appropriate" or "reasonable," and the Ninth Circuit has found such
    testimony to be inadmissible.  *Aguilar v. International Long Shoreman's Union Local No. 10*, 966
28  F.2d 443, 447 (9th Cir. 1992).

1 knowledge and provided transcripts of prior testimony; in which the parties agreed to seriously relax

2 the limitations on the number of depositions and the Commission agreed to additional depositions by

3 defendants after the cut-off; and after the Commission repeatedly granted the defendants' requests to

4 delay disclosures of experts, any inability of defendant to now discern how the Commission will

5 present its case is not due to any lack of opportunity.

6 **III.    CONCLUSION**

7        Defendant's motion for a so-called "offer of proof" has no place in this civil litigation, in

8 which defendant has had every opportunity to obtain the discovery he belatedly seeks by his motion.

9 It is premised on several misstatements of the legal standards for proof of defendant's fraud.  Further,

10 his motion will not advance the task the Court set for him to present the direct examination, in

11 writing, of his proposed accounting expert, as the topics upon which defendant seeks a so-called

12 "offer of proof" are not necessary to his proposed expert's testimony.  Accordingly, defendant's

13 motion should be denied in its entirety.

14

15 Dated: March 8, 2010                          Respectfully Submitted,

16

17                                               */s/  Susan F. LaMarca*
                                                 Susan F. LaMarca
18                                               Attorney for Plaintiff
                                                 SECURITIES AND EXCHANGE COMMISSION
19

20

21

22

23

24

25

26

27

28