United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>RAJ P. SABHLOK and MICHAEL C. PATTISON,<br><br>        Defendants.<br>_____/ | No. C-08-4238 EMC<br><br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>**(Docket Nos. 152, 154, 155, 156, 157, and 169)** |

The Court held a hearing on July 22, 2010, on the pending motions in limine not ruled upon by the prior assigned judge. This order memorializes the Court's rulings and, where necessary, provides additional guidance.

**I.     DISCUSSION**

A.     Plaintiff's Motion in Limine No. 1 (Docket No. 155)

This motion in limine filed by the SEC concerns the testimony of Defendant's expert, Richard J. Ostiller. The motion is **GRANTED** in part and **DENIED** in part. More specifically, the Court rules as follows.

    1.     Undisclosed, Confidential Sources and Engagements

At a pretrial conference held in February 2010, Judge Breyer clearly held that, to the extent any of Mr. Ostiller's opinions are based on undisclosed sources, those opinions are not admissible. *See* Docket No. 173 (Tr. at 3). This Court agrees with Judge Breyer's ruling. For example, Mr. Ostiller may not base his opinion on the asserted fact that many companies were confused about the

relevant accounting rules to the extent that opinion is based on the work he did for those companies and the identities of those companies were not disclosed to the SEC.[1] Nor may he assert as a fact confusion amongst such undisclosed sources. Without knowledge of who those companies are and the evidence pertinent to their situations, the SEC cannot conduct an adequate cross-examination of Mr. Ostiller on critical questions – *e.g.*, whether there was genuine or feigned confusion at these companies.

Parts of the proposed direct examination of Mr. Ostiller are in conflict with Judge Breyer and this Court's ruling. For example, the following italicized testimony shall not be permitted:

> Q. And how did your experience with these companies assist you in forming your opinions?
>
> A. My prior experience helped provide a foundation for my opinions in that I was familiar with the documentation, relevant accounting rules and pronouncements, the history of those pronouncements, and *generally familiar with the confusion that has been experienced by other companies*.

Docket No. 188 (Prop. Direct at 5) (emphasis added).

Similarly, the following testimony shall not be permitted:

> Q. Have you been involved in any engagements where grant date[s] were selected with hindsight?
>
> A. Yes.
>
> Q. And how did those companies account for the stock options selected with hindsight?
>
> A. Generally, as long as the recipient received an exercise price equal to the fair market value of the company's stock price on the specified grant date, the companies applied APB and concluded that compensation expense was not required.
>
> Q. And from the practices that you have investigated, did you see a common theme in the accounting issues that companies faced?
>
> A. Yes. In each of these situations, there was a misunderstanding of the correct measurement date for the option grants at issue.

---

[1] Of course, Mr. Ostiller is not prohibited from testifying about confusion with respect to the relevant accounting rules if that opinion is not based on undisclosed sources.

*Id.* (Prop. Direct at 45-46).

### 2. Narrating Underlying Facts

Mr. Ostiller may testify about the basis for his opinions. *See* Fed. R. Civ. P. 26(a)(2) (providing that a retained expert must provide a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them"). He may also answer hypothetical questions based on certain stated assumptions. However, Mr. Ostiller may not provide a narrative of the underlying facts.

### 3. Defendant's State of Mind

For some of the claims pled by the SEC, there is a scienter requirement. For example, for the Rule 10b-5 claim, the SEC must prove that Defendant acted knowingly or recklessly. In the instant case, Defendant seeks to have Mr. Ostiller provide testimony to support his theory that his conduct was not reckless, *i.e.*, that he did not engage in highly unreasonable conduct which constitutes an extreme departure from the standards of ordinary care and which presents an obvious danger of misleading buyers or sellers. *See* 9th Cir. Model Civil Jury Instruction No. 18.3; *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir.1990) (en banc).

Because recklessness is an objective standard, and not a subjective one, Mr. Ostiller may not testify about Mr. Ostiller's state of mind or facts peculiar to Mr. Ostiller personally. Mr. Ostiller, however, may provide testimony about standards of ordinary care and why any departure under the circumstances of this case was not an extreme departure. For example, Mr. Ostiller may testify that the relevant accounting rules and Embarcadero's policies regarding grant dates for stock options were ambiguous. Facts about Mr. Ostiller's particular background and experience are not relevant to the objective test of recklessness.

///
///
///
///
///
///

### 4. Legal Opinions

The main dispute here concerns whether Mr. Ostiller should be allowed to testify about his interpretation of the Embarcadero stock option plan. While the SEC correctly notes that the plan is a legal document, the Court will not bar Mr. Ostiller from testifying about his interpretation of the document because an ambiguity in the terms of the stock option plan may inform whether Defendant engaged in unreasonable conduct constituting an extreme departure from ordinary care. *See, e.g.*, *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (holding that the district court properly admitted expert testimony to interpret contract provisions having a specialized meaning in the railroad industry); *WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (noting that evidence of custom or usage relevant to interpretation of ambiguous contract language so expert testimony addressing at length the usual meaning given to provisions of a real estate lease was admissible); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (affirming the trial court's admission of expert testimony to explain accounting provisions of unambiguous farmout agreement because those provisions had a specialized usage and meaning within the oil and gas industry); *American Home Assur. Co. v. Cat Tech, L.L.C.*, No. H-08-3692, 2010 U.S. Dist. LEXIS 56764, at *23-24 (S.D. Tex. June 9, 2010) (noting that "[e]xpert testimony on the proper interpretation of contract terms may be admissible when the meaning depends on trade or industry practice"). However, the Court will limit testimony if it involves knowledge and experience of a legal rather than accounting expert. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) (stating that expert may not offer legal conclusions).

### 5. Other Companies

With respect to "other companies," there is a distinction between other companies for which Mr. Ostiller did work and other companies for which Mr. Ostiller did not do work but has knowledge about (*e.g.*, through their public restatements). With respect to the former, the analysis in Part I.A.1, *supra*, is applicable – *i.e.*, Ms. Ostiller shall not be permitted to testify about the other company unless it has been disclosed to the SEC. With respect to the latter (as well as for any company that has been disclosed to the SEC), Mr. Ostiller shall be permitted to testify about the fact

4

that other companies did do restatements. In addition, he shall be permitted to testify that there was confusion at other companies regarding the applicable accounting rules (which led to the restatements) but only if there is some factual basis to support his claim that there was confusion. On cross-examination, the SEC may, *e.g.*, challenge Mr. Ostiller's testimony if the only factual basis for his claim of confusion at other companies is the professed confusion by the companies in their public restatements. In addition, the SEC may provide evidence to refute any claim by Mr. Ostiller that there was confusion at the other companies or at least provide evidence to demonstrate that the situation involving the other companies was materially different from the situation involving Embarcadero (*e.g.*, different documentation was involved with the other companies). The Court, however, will not permit the examination to devolve into excessive minitrials on collateral matters. *See* Fed. R. Evid. 403.

As a final point, the Court notes that it is dubious about attempts to expand testimony about backdating practices of other companies. If, for example, Mr. Ostiller did not state in his report an opinion that such widespread practices can constitute GAAP, he will not be allowed to so testify. The scope of expert testimony will be defined and delimited by the expert's report. Likewise, on cross-examination, *e.g.*, of audits, testimony about other companies' practices may be subject to objections based on relevance, hearsay, as well as Federal Rule of Evidence 403.

B.      Plaintiff's Motion in Limine No. 2 (Docket No. 156)

This motion in limine filed by the SEC concerns whether Defendant should be allowed to present evidence of what other companies were doing with respect to backdating and APB 25. The analysis in Part I.A.5, *supra*, is applicable here. Accordingly, the motion is **GRANTED** in part and **DENIED** in part.

At the hearing, Defendant noted that witnesses other than Mr. Ostiller might have knowledge about what the practices at other companies were. Defendant pointed in particular to Embarcadero's auditors. As noted above, any such testimony will be subject to close scrutiny upon objection for relevance, hearsay, and prejudice.

As one illustration discussed at the hearing, Defendant asserted that he did not act recklessly because he relied on the advice of the auditors that the accounting of Embarcadero was proper.

5

According to Defendant, the auditors concluded that the accounting of Embarcadero was proper (in 2000-2004) because other companies were doing the same thing with respect to backdating. There are several issues with Defendant's argument. To successfully establish relevance of other companies' backdating conduct, Defendant would first have to show that the specific auditors working for Embarcadero knew that other companies were doing the same thing. Second, Defendant would have to show that that information informed their conclusion that the accounting for Embarcadero was proper (as opposed to their simply not knowing Embarcadero engaged in backdating). Third, Defendant would have to show that the auditors communicated to him the fact that other companies were doing the same thing – because even if Defendant relied on the auditors' advice that the accounting was proper, *why* they gave that advice is not relevant in judging the reasonableness of Defendant's reliance unless they shared that information with Defendant.

C.  <u>Defendant's Motion in Limine No. 6 (Docket No. 152)</u>

In this motion, Defendant argues that Embarcadero's auditors from PricewaterhouseCoopers ("PwC") should not be permitted to provide testimony about "the supposed clarity of various accounting pronouncements related to stock options, whether Embarcadero properly accounted for the stock options it issued during the relevant time frame, . . . whether it was reasonable for [Defendant] to understand those pronouncements, [and] the materiality of the alleged misstatements (or lack thereof)." Mot. at 3. According to Mr. Pattison, this testimony is expert in nature and the SEC never disclosed the PwC auditors as experts at the time it was required to do so under Judge Breyer's order. In response, the SEC argues that the auditors will be providing only lay testimony, and not expert testimony.

Federal Rule of Evidence 701 governs lay opinion testimony. It provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) *not based on*

*scientific, technical, or other specialized knowledge within the scope of Rule 702.*[2]

Fed. R. Evid. 701 (emphasis added). The question is whether the auditors' testimony will contravene Rule 701(c).

In resolving this issue, the Court notes that, even after the 2000 amendment to Rule 701, which added provision (c) to the rule, many courts have indicated that simply because a witness has specialized knowledge does not automatically convert the witness's testimony to expert testimony. *See, e.g.*, *Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) (stating that "[t]he fact that [the witness] has specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from testifying pursuant to 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise in international banking").

One critical issue is whether the witness with specialized knowledge was a percipient witness to the underlying facts. If the witness with specialized knowledge was a percipient witness, that does not mean that his testimony automatically qualifies as lay testimony. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (noting that "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702" because, "[o]therwise, a layperson witnessing the removal of a bullet from a heart during an autopsy could opine as to the cause of the decedent's death"). But where a witness with specialized knowledge provides percipient testimony about "'common enough' [matters that] require . . . a limited amount of expertise," then the testimony constitutes lay testimony and not expert. *Id.* at 1245; *see also* Fed. R. Evid. 701, 2000 advisory committee notes (citing *State v. Brown*, 836 S.W.2d 530 (Tenn. 1992), in support of the statement that "lay testimony 'results from a process of reasoning familiar in

---

[2] The 2000 advisory committee notes indicate that the addition of (c) above has two purposes: (1) "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing" and (2) to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson." Fed. R. Civ. P. 701, 2000 advisory committee notes; *see also* 4-701 Weinstein's Fed. Evid. § 701.03[b] (noting the same).

1  everyday life,' while expert testimony 'results from a process of reasoning which can be mastered
2  only by specialists in the field'").

3    The question ,of course, becomes where to draw the line as to what constitutes a common
4  enough matter.  Some courts appear to be more liberal than others.  *See, e.g.*, *United States v.*
5  *Oriedo*, 498 F.3d 593, 602 (7th Cir. 2007) (concluding that expert disclosure rules did not apply to
6  testimony by a surveillance agent that he was concerned about certain activity that he personally
7  observed because it raised concerns about countersurveillance; noting that agent did not "testify
8  generally about narcotics counter-surveillance practices or . . . offer an explicit opinion that what he
9  observed was counter-surveillance"); *United States v. Maher*, 454 F.3d 13, 23-24 (1st Cir. 2006)
10 (holding that testimony by police officer that he recognized a note as a drug note and that he
11 believed the number "4" on the note to refer to four ounces of cocaine did not cross the line to
12 become expert testimony).  Where the Ninth Circuit stands is not entirely clear.  The best indicator is
13 *Figueroa-Lopez*, where it concluded that (1) testimony by law enforcement officers that the
14 defendant's conduct conformed to the methods and techniques of experienced drug dealers was not
15 lay in nature but that (2) testimony by one agent that certain activity was suspicious related to
16 matters common enough to qualify as lay testimony.[3]  *See Figueroa-Lopez*, 125 F.3d at 1245-46.

17   For purposes of the instant case, the Court need not at this juncture define with precision
18 what constitutes a common enough matter to be the basis of lay testimony rather than expert.  That is
19 because, even under the authority cited by Defendant – in particular, *United States v. White*, 492
20 F.3d 380 (6th Cir. 2007) – the auditors' testimony as described by the SEC does not appear likely to
21 cross the line to become expert testimony.  In *White*, the defendant was charged with engaging in a
22 scheme to defraud Medicare.  In support of its case, the government offered testimony from
23 Medicare auditors who had worked on cost reports for companies affiliated with the defendant.  On
24 appeal, the Sixth Circuit held that some of the testimony by the auditors constituted expert
25 testimony.  More specifically, testimony about "the structure and procedures inherent in the
26 Medicare program, as well as their understanding of various terms," was expert in nature, and not

---

[3] The 2000 advisory committee notes cite *Figueroa-Lopez* with approval.

8

lay, because the auditors "relied to a significant degree on specialized knowledge acquired over years of experience" to provide this testimony. *Id.* at 403-04. However, the court noted that much of the auditors' testimony did qualify as lay testimony: "Each challenged witness had personal knowledge of facts relevant to the case -- whether from their role auditing cost reports submitted by Defendants, or from their personal interactions with Defendants. Much of their testimony fits squarely within the proper bounds of Rule 701 . . . ." *Id.* at 403.

In the instant case, based on the representations of the SEC at the hearing herein, it does not appear that the PwC auditors will be testifying about, *e.g.*, accounting rules generally. Rather, the auditors will testify about their role auditing Embarcadero's financials and their personal interactions with Defendant. This is consistent with *White* and, more importantly, *Figueroa-Lopez*.[4]

Accordingly, the Court **DENIES** without prejudice this motion in limine. The motion is denied without prejudice to the extent that Defendant still has the right to object to the auditors' testimony where it appears to be going beyond the boundaries contemplated above.

D.   Defendant's Motion in Limine No. 8 (Docket No. 154)

In this motion, Defendant seeks to exclude as evidence Embarcadero's 10-K for the fiscal year ending on December 31, 2006, which contains the company's restated financial results. The restatement took place after a Special Committee at Embarcadero reviewed the company's stock option backdating practices.

Defendant has objected to the evidence on hearsay and prejudice grounds. With respect to the hearsay objection, he argues that the restatement cannot be admitted under the business records

---

[4] In addition to *White*, the primary cases on which Defendant relies are *Brown*, 836 S.W.2d 530, and *Humboldt Baykeeper & Ecological Rights Foundation v. Union Pacific Railroad Co.*, No. C 06-02560 JSW, 2010 WL 2179900 (N.D. Cal. May 27, 2010). *Brown* is not dispositive of the dispute in the instant case because, as the court in *White* noted, the distinction between lay and expert testimony made in *Brown* "is far from clear in cases where, as here, a witness with specialized or technical knowledge was also personally involved in the factual underpinnings of the case." *White*, 492 F.3d at 400 (noting that, in *Brown*, the court stated that a lay witness could testify that "'a footprint in snow looked like someone had slipped, or that a substance appeared to be blood'" but that a paramedic's testimony that skull trauma caused the bruises on a victim's face was not lay testimony). As for *Humboldt*, the court did conclude that certain testimony was not lay testimony because it was based on the witnesses' expertise "and not merely their percipient observations." *Humboldt*, 2010 WL 2179900, at *1. However, the opinion does not provide any of the underlying facts and therefore the Court cannot assess the weight to be given to that conclusion.

1  hearsay exception.  In support of this argument, he cites *United States v. Reyes*, 239 F.R.D. 591, 600
2  (N.D. Cal. 2006) (holding that documents of two law firms which were hired by Brocade's Audit
3  Committee to examine practices relating to stock option grants did not fall within the business
4  records hearsay exception), and *Paddack v. Dave Christiensen, Inc.*, 745 F.2d 1254, 1258 & n.3 (9th
5  Cir. 1984) (noting that audit at issue was not a traditional financial statement audit and instead was
6  prepare for purposes of litigation; therefore, concluding that audit documents did not qualify as
7  business records for purposes of an exception to hearsay).  As for the prejudice objection, Defendant
8  contends that the narrative in the restatement about the Special Committee review would be unduly
9  prejudicial, not only because an implied imprimatur attaches to the restatement but also because
10 some of the conclusions reached therein, if accepted, would be dispositive to the ultimate question
11 for the jury.  On the other hand, Defendant conceded that the financial information contained in the
12 10-K qualified as a business record exception.  The Court agrees given the reasoning in *In re*
13 *WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 2215
14 (S.D.N.Y. Feb. 18, 2005), which so held.

15     At the hearing, the Court instructed the parties to meet and confer to determine whether they
16 could reach an agreement as to redacting certain parts of the restatement.

17     Accordingly, the Court **DEFERS** ruling on this motion in limine.

18 E. <u>Plaintiff's Motion in Limine No. 3 (Docket No. 157) and Defendant's Motion in Limine No.</u>
19     <u>9 (Docket No. 169)</u>

20     Each party has filed a motion challenging the testimony of the opposing party's expert on
21 materiality.  Defendant's expert on materiality is Kenneth M. Lehn.  The SEC's expert on
22 materiality is Howard J. Mulcahey.  Each party has pointed to problems with the testimony of the
23 other party's expert (as reflected in their expert reports).  For example, Plaintiff argues that Mr.
24 Lehn's testimony is flawed because, in discussing valuation of an option, which is based on the
25 current stock price and exercise price of the option, he ignores the fact that the exercise price of a
26 call option in a backdating situation is unique – *i.e.*, the true grant date has a different exercise price
27 from the backdated grant date.  In turn, Defendant argues that Mr. Mulcahey's testimony is flawed
28 because he ignores the critical date when the alleged truth was actually revealed and focuses instead

on earlier events which only disclosed the fact of the audit and impending restatement. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 288 (S.D.N.Y. 2008) (indicating that the truth can slowly emerge through a series of partial disclosures).

While the parties have identified noteworthy problems, the Court cannot say that either expert's testimony is as a result so unreliable that it should be excluded under Federal Rule of Evidence 702. *See* Fed. R. Evid. 702 (providing, *inter alia*, that an expert's testimony must be the product of reliable principles and methods, and the expert must have "applied the principles and methods reliably to the facts of the case"). Ultimately, the parties confuse reliability with correctness. All that Rule 702 requires is the former, not the latter, and "'[t]he evidentiary requirement of reliability is lower than the merits standard of correctness.'" Fed. R. Evid. 702, 2000 advisory committee notes; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008) (noting that "a determination that proffered expert testimony is reliable does not indicate, in any way, the correctness or truthfulness of such an opinion" and that "[t]he task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation"). Accordingly, a problem with an expert's methodology or application of the methodology does not automatically lead to exclusion. Only where the problem is, in essence, significant is there a basis for exclusion. *See, e.g.*, *Kudabeck v. Kroger Co.*, 338 F.3d 856, 861-62 (8th Cir. 2003) (noting that "attacks regarding the completeness of [a doctor's] methodology go to the weight and not admissibility of his testimony"); *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, 2008 U.S. Dist. LEXIS 87625, at *21-22 (N.D. Cal. Oct. 16, 2008) (stating that, "[i]n general, a court may admit a survey if it is conducted according to generally accepted principles and if it is relevant" and that "[c]hallenges to defects in methodology normally affect the weight to be accorded the survey, rather than its admissibility" – that is, unless " the methods used are so deficient"); *see also In re Scrap Metal*, 527 F.3d at 529-30 (indicating that an expert's error in application of methodology would ordinarily go to weight of expert's testimony, although a significant error might go to admissibility); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, LLC, 467 F.3d 107, 134 (2d Cir. 2006) (stating that, "[t]o the extent that there are gaps or

inconsistencies in [the expert's] testimony, those issues 'go to the weight of the evidence, not to its admissibility'").

In short, at the end of the day, the Court concludes that the parties are challenging the *weight* to be attributed to the experts' opinions rather than the *admissibility* of the opinions. The general methodologies employed by the experts (*e.g.*, events analysis) are generally reliable and accepted.

Accordingly, the Court **DENIES** both motions in limine. In addition, the Court holds that, to the extent Defendant seeks to challenge the truthfulness of Mr. Mulcahey based on the events discussed in *Chandler v. Bombadier Capital, Inc.*, 44 F.3d 80, 82 (2d Cir. 1994), he is barred from doing so. Those events have limited probative value given their remoteness in time. *See* Fed. R. Evid. 608(b), 1972 advisory committee notes (noting that "[s]afeguards are erected in the form of specific requirements that the instances required into be probative of truthfulness or its opposite and not remote in time"); Fed. R. Evid. 403 (allowing for exclusion of evidence where probative value is substantially outweighed by danger of unfair prejudice). Also, there is less of a danger of untruthfulness here given that Mr. Mulcahey is testifying as an expert only, and not as a percipient witness. *See United States v. Butch*, 48 F. Supp. 2d 453, 462 (D.N.J. 1999) (stating that "'[t]he character of the previous conduct, the importance of the testimony, and the probable effect on the jury if the misconduct is divulged are all factors a judge must consider in deciding whether to allow inquiry about past conduct'").

## II.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

(1) The SEC's motion to exclude certain parts of Mr. Ostiller's testimony is granted in part and denied in part.

(2) The SEC's motion to exclude evidence regarding other companies is granted in part and denied in part.

(3) Defendant's motion to exclude certain parts of the PwC auditors' testimony is denied without prejudice.

(4) Defendant's motion to exclude the restatement is deferred.

(5) The SEC's motion to exclude the testimony of Mr. Lehn is denied.

(6)   Defendant's motion to exclude the testimony of Mr. Mulcahey is denied.

This order disposes of Docket Nos. 152, 154, 155, 156, 157, and 169.

IT IS SO ORDERED.

Dated: July 23, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge