UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES & EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>    v.<br><br>MICHAEL C. PATTISON,<br><br>       Defendant.<br>_____/ | No. C-08-4238 EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

A Final Pretrial Conference was held in this matter on August 11, 2010. Pursuant to Federal Rule of Civil Procedure 16(e), this order memorializes the Court's rulings and/or the parties' stipulations.

## I. TRIAL DATE & LENGTH OF TRIAL

A. The trial shall begin on September 7, 2010, in Courtroom D, 15th Floor. There shall be a total of fourteen court days. The first day of trial, *i.e.*, September 7, 2010, shall be held from 8:00 a.m. to 5:00 p.m. The subsequent trial days shall be held from 8:30 a.m. to 2:00 p.m., although court may hold in session beyond 2:00 p.m. if necessary. There will be one 15-minute break in the morning and a 45-minute lunch break.

B. Each party shall have twenty-four hours to present its or his case. This includes all examination, including direct and cross. This does not include jury selection, jury instructions, opening statements, or closing arguments. The Court may impose separate time limits for opening statements and closing arguments.

## II. PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A. No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness. If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections. The Court may schedule a conference that afternoon or the following morning to resolve the disputes.

B. With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by September 2, 2010, at 9:00 a.m. If any such exhibits are still objected to, both counsel shall notify the Court by 9:00 a.m., September 3, 2010, and shall identify the exhibits at issue and the objections. Counsel should notify the Court via e-filing *and* via fax at (415) 522-4200. The Court may address the dispute on the first day of trial before any testimony begins.

C. If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day (8:00 a.m. for the first day of trial). The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

## III. PROCEDURE FOR WITNESSES AT/DURING TRIAL

A. Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness. At any time, if the party whose case is being presented is not prepared to present its next witness, that party may be deemed to have rested that portion of its case. No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal) unless otherwise ordered by the Court. Alternatively, the Court may charge time for the remainder of the court day to the party failing to have its next witness available.

B. Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order. Counsel should give opposing counsel reasonable notice (at least one day) with respect to which witnesses will be testifying on a

particular day. Witnesses may be taken out of order if necessary. Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C. Only one lawyer for each party may examine any single witness.

D. If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E. Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

F. Immediately before each new witness takes the stand, counsel calling the witness shall place on the witness stand a clearly marked copy of each exhibit that counsel expects to have the witness refer to during his or her direct examination. Immediately before beginning cross-examination, counsel conducting cross-examination shall do the same with any additional exhibits to be referenced on cross.

G. If counsel intends to have the witness draw diagrams or put markings on visual exhibits or diagrams prepared by the party calling the witness, the witness should do so before taking the stand. Once on the stand, the witness may adopt the diagrams and/or markings and explain what they represent. If the diagram or visual exhibit is prepared by the opposing party, the witness shall not make any markings on the diagram or visual exhibit without leave of the Court.

H. Witnesses (other than the party or a representative thereof) shall be excluded from the courtroom prior to completing their testimony.

### IV. OTHER PROCEDURES AT/DURING TRIAL

A. To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant). There shall be no speaking objections or argument from either counsel unless requested by the Court. Only one counsel may make objections for each witness.

B. Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II,

*supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary. If bench conferences become excessive, the Court will charge time spent thereon against either or both parties' time.

### V. **WITNESSES**

A.  Final Witness Lists

The parties submitted their final witness lists on August 13, 2010. *See* Docket Nos. 248, 251.

B.  Disputes re Witnesses

1.  Custodian of Records

The parties have reached a stipulation such that there is no need for the custodians of records identified by the SEC to testify.

2.  Auditor Witnesses Generally

The Court has already made a ruling regarding the proper scope of auditor testimony -- *i.e.*, lay versus expert testimony. *See* Docket No. 209 (Order at 6-9). On August 9, 2010, two days before the final pretrial conference, Mr. Pattison submitted a brief, without asking leave of the Court, regarding the issue of lay versus expert testimony. Mr. Pattison in effect asked for reconsideration of the Court's prior ruling. The Court hereby denies the motion to reconsider.

Under the Civil Local Rules, Mr. Pattison was required to seek leave to file a motion to reconsider. *See* Civ. L.R. 7-9(a) (providing that "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion"). He did not do so. Moreover, under the Civil Local Rules, Mr. Pattison was required to make a specific showing as to why he should be given leave to file a motion to reconsider. *See* Civ. L.R. 7-9(b). Again, Mr. Pattison failed to do so. For example, Mr. Pattison failed to show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before [its] interlocutory order." Civ. L.R. 7-9(b)(3). Therefore, Mr. Pattison's motion to reconsider is denied.

Moreover, on the merits, the Court sees no basis for reconsideration. The Court has reviewed the cases cited by Mr. Pattison in his brief. None of the cases affects how the Court has viewed and currently views the issue of lay versus expert testimony.

4

For example, *Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004), is one of the cases that the Court mentioned at the hearing and then cited in its order on the motion in limine. Mr. Pattison's contention that the Court misconstrued *Bank of China* is incorrect. *Bank of China* is consistent with the Court's approach as the Second Circuit held that,

> to the extent Huang's testimony was grounded in the investigation he undertook in his role as a Bank of China employee, it was admissible pursuant to Rule 701 of the Federal Rules of Evidence because it was based on his perceptions.
>
> However, to the extent Huang's testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was error. Thus, Huang's explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted.

*Id.* at 181-82.

As another example, *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519 (6th Cir. 2004), is not on point because the Sixth Circuit's analysis was driven by the advisory committee notes for Federal Rule of Evidence 701 which state that "'the owner or officer of a business [may] testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert.'" *Id.* at 524.

And as a further example, in *United States v. Cruise*, 363 F.3d 187 (2d Cir. 2004), the government did not dispute that the witness's testimony regarding the meaning of a phrase was expert in nature. *See id.* at 193-94. The government instead tried to "minimize the scope of that testimony." *Id.* at 194. Moreover, the Second Circuit was most troubled by the fact that witness was straying in his testimony from the scope of his expertise. *See id.* at 195-96.

The Court therefore denies the motion to reconsider both on procedural as well as substantive grounds. To the extent, however, Mr. Pattison's brief raises issues where additional guidance from the Court may be helpful, the Court notes as follows.

An auditor may, as a general matter, testify about his or her percipient role in the underlying events. Thus, as the Court previously held: "[T]he auditors [may] testify about their role auditing Embarcadero's financials and their personal interactions with [Mr. Pattison]." Docket No. 209

(Order at 9). If an auditor also testifies about, *e.g.*, why he or she reached a particular conclusion, that testimony shall not be barred so long as it is directly tied to the auditor's percipient role in the underlying events, even if it involves some degree of experience and specialized knowledge. Where the auditor strays from his or her percipient role and discusses, *e.g.*, the accounting rules more generally, that testimony shall not be permitted.

The Court so rules in part because the line between expert and lay testimony is unclear and has been subjected to varying interpretations by the courts. In addition, the Court so rules because the sanction for nondisclosure of experts lies in Federal Rule of Civil Procedure 37(c)(1), which states that a failure to identify an expert witness within the time frame provided by Rule 26(a)(2)(c) need not give rise to any sanction where the failure is harmless. Notably, Mr. Pattison appears to have deposed the bulk of the witnesses at issue, and thus, even if the witnesses offered expert-like testimony, Mr. Pattison had a fair opportunity to cross-examine on those matters. Furthermore, descriptions of these witnesses' expected trial testimonies were exchanged months ago. Accordingly, where the witnesses such as the auditors have already been deposed, the Court shall, as a general matter, be more lenient with respect to the scope of testimony permitted as stated above. However, because Mr. Wallace was not deposed, the Court will impose strict limits on his testimony.

### 3. Daniel Wallace

The Court shall permit Mr. Wallace to testify even though he was not previously deposed. Mr. Wallace's investigative testimony has been available to Mr. Pattison. Moreover, Mr. Pattison could have subpoenaed Mr. Wallace, as an individual, to appear for a deposition but apparently chose not to do so. But, as discussed above, because Mr. Wallace was not previously deposed, the Court shall draw a stricter line as to what constitutes lay testimony.

### 4. Karen Shum

To the extent Mr. Pattison seeks to have Ms. Shum testify about her or PwC's knowledge of option pricing issues for technology companies in Silicon Valley, the Court has already indicated that, at most, the testimony is conditionally relevant. *See* Docket No. 209 (Order at 6) (stating that Mr. Pattison would have to show, *inter alia*, that the auditor communicated to him the fact that other

1 companies were doing the same thing).[1]  She cannot testify to establish the bare fact of such
2 practices.

### 5. Stephen Ferruolo

To the extent Mr. Pattison has objected that Mr. Ferruolo's testimony is expert and not lay in nature, the Court's ruling with respect to the admissibility of auditor testimony provides the necessary guidance.

As for the SEC's objection regarding testimony by Mr. Ferruolo that he knew other law firms in Silicon Valley were advising clients that retrospective pricing of stock options was acceptable, the testimony (similar to above) is at most conditionally relevant.  In particular, Mr. Pattison would have to show that Mr. Ferruolo communicated this information to him or to Mr. Wong or Mr. Sabhlok during the relevant time period.

### 6. Gary Haroian

Mr. Haroian shall provide live testimony.  Mr. Pattison has failed to explain why his live (as opposed to deposition) testimony would be prejudicial, particularly when Mr. Pattison had the opportunity to depose and did actually depose him.

As explained at the pretrial conference, since the Restatement containing a description of the Special Committee investigation and its findings is admissible, Mr. Haroian shall be permitted to provide testimony about the Special Committee investigation, except as to specific matters which have been redacted from the Restatement.  Mr. Pattison may cross-examine Mr. Haroian to, *e.g.*, expose any bias in the way that the investigation was conducted or to challenge the accuracy of the investigation.

### 7. Michael Roberts

Mr. Roberts shall provide live testimony in lieu of deposition testimony if either party is to call him as a witness.

///

---

[1] Because the SEC has alleged aiding and abetting claims, another issue is whether the auditor communicated the same to persons whom Mr. Pattison aided and abetted -- *i.e.*, Mr. Wong or Mr. Sabhlok.  Mr. Wong and Mr. Sabhlok are the two individuals whom the SEC has indicated were the principals of Embarcadero centrally involved in the alleged violations.

### 8. Michael Shahbazian

Mr. Shahbazian shall be permitted to testify about Embarcadero's internal review of its stock option granting process that began in mid-2006. Any testimony, however, about systems that he implemented shall not be allowed.

### 9. Dennis Wong

The Court shall not permit Mr. Pattison to solicit testimony from Mr. Wong, as part of his case-in-chief, about the materiality of Embarcadero's failure to record a compensation expense for the relevant stock options. The Court, however, reserves ruling as to whether Mr. Wong may testify as part of Mr. Pattison's rebuttal case.

## C. Deposition Testimony

The only witnesses whose testimony shall be provided via deposition are Frank Polestra and Stephen Wong. The Court shall issue its specific rulings on the parties' deposition designations at a later date.

## VI. WRITTEN DISCOVERY RESPONSES & EXHIBITS

### A. Written Discovery Responses

In his pretrial filings, Mr. Pattison states that he intends to present as evidence some of the SEC's responses to written discovery, namely: (1) responses to Rogs Nos. 9-18 (renumbered by the SEC Rogs Nos. 14-23); and (2) responses to RFAs Nos. 32-38.

The Court agrees with the SEC that the interrogatory responses should not be presented as evidence to the jury. Most of the interrogatories are about damages or penalties, which is a calculation for the Court, not the jury. In one interrogatory (No. 17/22), Mr. Pattison asked the SEC to identify persons who knew about the backdating but the SEC never provided a substantive response. In another interrogatory (No. 18/23), the SEC was asked to state all facts to support its response to RFA No. 38. RFA No. 38 asked the SEC to admit that a particular document was not backdated. The SEC denied the RFA. In its response to the above interrogatory, the SEC stated that facts indicating that the document was backdated included, *inter alia*, Mr. Pattison's admission that it was his practice to backdate. The Court excludes this interrogatory response because it has marginal probative value as evidence and will likely confuse the jury should it be admitted. The

interrogatory is basically a contention interrogatory, which was helpful for Mr. Pattison to figure out what his legal strategy should be, but would not be very informative for the jury.

The Court also agrees with the SEC that the responses to the RFAs should not be presented as evidence to the jury. In response to RFAs Nos. 32-38, the SEC made outright denials – with one exception where it said that it had insufficient information to admit or deny (RFA No. 33). Given the denials, there is little value in having this putative evidence go to the jury.

B. Exhibits

    1. Stipulation re Authenticity

The parties have entered into a stipulation regarding the authenticity of certain exhibits. *See* Docket Nos. 239-40 (stipulation and order).

    2. General Guidance

        a. Documents Related to State of Mind of Key Players

Evidence related to the state of mind of Mr. Pattison is clearly relevant. Moreover, because of the aiding and abetting claims, evidence related to the state of mind of Mr. Wong and Mr. Sabhlok is also relevant. As noted above, the SEC clarified at the pretrial conference that these two individuals were the major players at Embarcadero whom Mr. Pattison is alleged to have aided and abetted.

Thus, a relevant question is what the state of mind of these key players was during the time of the alleged "conspiracy." According to the SEC, the backdating practice at issue was in place from approximately 2000 to 2004. Therefore, communications involving these key players during this time frame will likely be admissible. Evidence post-dating this time period may still be admissible if it goes to the state of mind of the key players during that time period. In other words, after-the-fact conduct can be probative of their earlier state of mind.

Where evidence is being offered not for the truth of the matter asserted but rather for the effect on the listener and the listener is one of these key players, the evidence will in all likelihood not be hearsay. The parties should meet and confer to determine whether they can reach an agreement on a limiting instruction that explains to the jury how the evidence is being offered. Such an instruction shall be submitted by August 19, 2010.

b. <u>Documents Related to Widespread Knowledge of Backdating Practices</u>

Because one of the SEC's factual theories is that Mr. Wong, Mr. Sabhlok, and Mr. Pattison were engaged in a secret scheme to defraud (secret from the Board and auditors), it is fair for Mr. Pattison to offer evidence that the backdating of stock options was not a secret and was in fact notorious to many persons at Embarcadero. Of course, simply because a person had knowledge that stock options were backdated does not necessarily mean that the person knew that no compensation expense was recorded with respect to those stock options – or that a compensation expense (arguably) needed to be recorded. But it may go to Mr. Pattison's state of mind and may rebut an aspect of the SEC's theory of the case.

To the extent the SEC has lodged a hearsay objection to evidence concerning other persons' knowledge of the backdating, Mr. Pattison may be able to lay a foundation establishing the applicability of the business records exception. Moreover, if the evidence is not necessarily being offered to prove the truth of the matter asserted (*i.e.*, that there was backdating) but rather to show the state of mind/awareness of one or more parties to the communication, it is not hearsay.

c. <u>Jiang-Related Documents</u>

The Court shall allow evidence related to Ms. Jiang for certain purposes – *e.g.*, to show that she was one of many people at Embarcadero who knew that there was backdating and that therefore there was no secret scheme to defraud. Also, if the communication reveals the state of mind of Mr. Pattison, Mr. Wong, or Mr. Sabhlok, it is admissible.

However, the Court shall not allow evidence related to Ms. Jiang for other purposes – *e.g.*, to show that a CPA (Ms. Jiang) believed that the backdating practice was permissible and that therefore Mr. Pattison's actions were reasonable. Whether Ms. Jiang made any conclusions about the legality of backdating, and the basis of any such opinion is speculative. Moreover, allowing evidence for this purpose would effectively make Ms. Jiang an expert, for which she has not been qualified or disclosed.

d. <u>Grant Approval Summaries</u>

The grant approval summaries may qualify as business records for purposes of the exception to the hearsay rule if a proper foundation is laid. Whether the date attested by Mr. Wong is accurate

1   (and thus whether records are reliable in that regard) is a question for the jury.  However, the Court
2   agrees with the SEC that Mr. Pattison may not have any witness testify about the summaries.
3   Anyone with personal knowledge of the summaries may provide percipient testimony about the
4   summaries – *e.g.*, the preparer of the summaries, Mr. Wong who signed the summaries, and the
5   auditors and/or Mr. Pattison if the summaries were exchanged between them.  But it is not proper for
6   Mr. Pattison to show the summaries to, *e.g.*, a member of Embarcadero's board and simply ask their
7   opinion whether the document on its face discloses backdating.

### 3. Specific Rulings

Attached hereto are (1) the Court's rulings regarding which parts of the Restatement (10-K) shall be redacted (redactions noted in right margin) and (2) the Court's rulings regarding the parties' objections on which they requested advance rulings.

With respect to (1), the Court stands by its ruling that the Restatement as a 10-K is a business record for purposes of the exception to the hearsay rule.  The Court acknowledges the authority cited by Mr. Pattison, *see Paddack v. Dave Christiensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984); *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006), but notes that these cases are distinguishable because they did not involve a 10-K as here.  As the court in *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC), 2005 U.S. Dist. LEXIS 2215 (S.D.N.Y. 2005), reasoned, a 10-K has an indicia of reliability.  And as the Court previously noted, the indicia of reliability is supported by the fact that Mr. Pattison has failed to articulate any plausible reason why Embarcadero would have an interest in or incentive to issue a Restatement if not required, disclose backdating and failure to account therefor if not true, or overstate the magnitude of the underreporting.  In effect, the Restatement has the same indicia of reliability as a statement against interest.  *Cf.* Fed. R. of Evid. 804(b)(3).  Furthermore, nothing in those portions of the Restatement which the Court will allow into evidence expressly assigns blame or wrongdoing by any individual including Mr. Pattison.  The Court has decided to redact certain portions of the Restatement not based on hearsay grounds but rather based on Federal Rule of Evidence 403.

With respect to (2), the Court notes that its rulings herein do not bar a party from raising (or re-raising) a foundation or authenticity challenge, unless authenticity has previously been stipulated

to. Furthermore, an objection that is sustained does not bar a party from asking that the evidence be admitted if it comes up in a different context and is offered for a different purpose than previously discussed.

## VII. DEMONSTRATIVES

The parties shall meet and confer in advance (prior to the date of demonstration) and exchange demonstratives to avoid objections. Any objections shall be brought to the Court's attention before 4:00 p.m. the day prior to being exhibited.

## VIII. VOIR DIRE, JURY INSTRUCTIONS & VERDICT FORM

A.  Voir Dire

The Court shall not use a jury questionnaire but shall voir dire the potential jurors (taking into account the proposed voir dire submitted by the parties). The Court has already described in its Case Management Conference order the list of standard questions it intends to ask. *See* Docket No. 202 (order). It will likely supplement those with the following questions or variations thereof:

1. This is a civil action brought by the Securities and Exchange Commission, sometimes known as the "SEC," against Michael C. Pattison for violations of federal securities laws. Does anyone on the panel know, or have any of you or your close friends or relatives had any dealings with Mr. Pattison or with any of his relatives?

2. The SEC's case against Mr. Pattison involves his employment at Embarcadero Technologies, Inc., a software company. Are any of you familiar with Embarcadero Technologies? If yes, how?

3. The lawyers representing Mr. Pattison in this case are Patrick Richard, Jim Vorhis, Katy Young, and Brendan Macaulay of the law firm Nossaman LLP. Do any of you know any of these attorneys? Have any of you had any dealings with this law firm?

4. Have any of you, a member of your family or a close friend ever had any dealings with the Securities and Exchange Commission?

5. The lawyers representing the SEC in this case are Susan LaMarca, Robert Tashjian, and Bill Salzmann. Do any of you know these attorneys?

6. Have any of you or any of your close friends or relatives ever been charged with any crime involving the regulation of securities or financial disclosure laws?

7. Have you or any of your close friends or relatives ever been a party to a lawsuit involving a government agency that regulates securities or financial disclosures, including the Securities and Exchange Commission?

8. Have you or any of your close friends or relatives ever been involved with any investigation by the Securities and Exchange Commission or similar regulating agency?

9. Do you manage money or investments for anyone outside of your immediate family? If so, is there anything about your management of others' money that would prevent you from deciding this case fairly?

10. Have you or your close friends or relatives lost money because of fraud or financial mismanagement by someone outside the family? If so, do you blame any government agency, including the Securities and Exchange Commission, for the loss?

11. Have you or any of your close friends or relatives ever had a professional license in the securities industry?

12. Do you know what a stock option is? Do you have any strong feelings about stock options?

13. Have you ever been employed by a company that granted stock options?

14. Have you or any of your close friends or relatives ever been granted stock options as an employee? If yes, please describe the circumstances.

15. Do you have any formal accounting experience? What was that experience? Have you taken any accounting classes?

16. Have you ever heard, read, or seen anything about the "backdating" of stock options?

17. Do you have any reason why you could not be fair and impartial in deciding a case where the Securities and Exchange Commission has sued a person for making false or misleading statements to the public? If yes, why?

18. Do you have much financial investment experience in stocks? If so, how do you make your investment decisions?

13

The Court shall also give each party an opportunity (25 minutes) to voir dire the potential jurors after questioning by the Court.

B. <u>Jury Instructions</u>

The parties are to meet and confer to determine whether they can reach an agreement regarding any preliminary instructions that should be read to the jury at the outset of the case (*i.e.*, before the presentation of opening statements and evidence) regarding the main claims at issue. Such instructions shall be filed by August 19, 2010.

The Court notes that the SEC has filed a brief stating that it intends to dismiss the Section 17(a) claims, the Section 13(b)(2) claims, and the Section 14(a)/Rule 14a-9 claim. Mr. Pattison has filed a statement of nonopposition.

C. <u>Verdict Form</u>

The Court defers ruling on a final verdict form until after the jury instructions are resolved. The Court notes that, at this juncture, it is inclined to use a general verdict form (per cause of action).

IT IS SO ORDERED.

Dated: August 17, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge

14