**United States District Court**
For the Northern District of California

1
2
3
4
5              UNITED STATES DISTRICT COURT
6             NORTHERN DISTRICT OF CALIFORNIA
7
8    SECURITIES AND EXCHANGE              No. C-08-4238 EMC
     COMMISSION,
9
                    Plaintiff,
10                                        **FINAL JURY INSTRUCTIONS**
          v.
11                                        **(September 22, 2010)**
     MICHAEL C. PATTISON,
12
                    Defendant.
13   _____/
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 1 – DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 2 – BURDEN OF PROOF –**

**PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**JURY INSTRUCTION NO. 3 – WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits which are received into evidence; and

3.  any facts to which the lawyers have agreed.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 4 – WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)   Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)   Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4)   Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**JURY INSTRUCTION NO. 5 – EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 6 – CHARTS AND SUMMARIES**

**NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 7 – CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**United States District Court**
For the Northern District of California

### JURY INSTRUCTION NO. 8 – STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you.  You should therefore treat these facts as having been proved.

1.      Defendant Michael C. Pattison served as Embarcadero's controller from approximately January 2000 through July 2005.  The defendant is a certified public accountant.

2.      Embarcadero is a corporation located in San Francisco, California, that makes software.  From approximately April 2000 through June 25, 2007, Embarcadero was a "public company," meaning that its common stock was registered with the SEC and was publicly traded on the NASDAQ National Market, also called the NASDAQ Global Market.  In June 2007, the company was acquired by private investors.

3.      Exhibit 653 describes, for each date that Embarcadero's stock was traded when it was a public company, the stock's closing prices.  A "closing price" is the last price reported on an exchange (in this case, the NASDAQ) as a sales price in a transaction for the purchase and sale of shares of stock.

4.      From approximately June 2000 through January 2007, Stephen R. Wong, a co-founder of Embarcadero, served as its chief executive offer (or "CEO").  Also, from January 2000 through October 2005, Raj P. Sabhlok served as Embarcadero's chief financial officer (or "CFO").

5.      As a public company, Embarcadero made quarterly and annual reports to shareholders
about its financial condition on certain forms.

6.      Embarcadero filed three quarterly reports to shareholders each year on a form called a "Form 10-Q." The first quarterly period each year covered the three months that ended March 31; the second covered the three months that ended June 30; and the third covered the three months that ended September 30. Embarcadero's fiscal year ended on December 31.  Instead of filing a fourth quarterly report, Embarcadero included information about the last three months of every year in its annual reports.

United States District Court

For the Northern District of California

1    7.    Embarcadero's annual reports to shareholders were filed on a form called a "Form

2    10-K."

3    8.    From late 2000 through the third quarter of 2004, Embarcadero regularly granted

4    stock options to its employees and executives as a form of compensation.

5    9.    Each stock option gave the person granted the option the right to buy Embarcadero's

6    common stock in the future from Embarcadero at a set price, called the "exercise" price or the

7    "strike" price.

8    10.    The stock options Embarcadero granted had terms describing when the employee

9    could exercise the option by paying the exercise price, and when the option would expire if

10    the employee did not exercise it.  Those terms were called the vesting schedule.  At Embarcadero,

11    employee stock options generally vested over a four-year period and employees could not exercise

12    stock options for at least one year from the grant date.

13    11.    In approximately October 2000, Embarcadero's Compensation Committee authorized

14    the CEO, Mr. Wong, to grant options to employees who were not officers or directors of

15    Embarcadero.

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 9 – SECURITIES –**

**DEFINITION OF RECURRING TERMS**

Congress has enacted securities laws designed to protect the integrity of financial markets.

There are terms concerning securities laws that have a specific legal meaning.  The following definitions apply throughout these instructions, unless noted otherwise.

A security is an investment of money in a commercial, financial or other business enterprise, with the expectation of profit or other gain produced by the efforts of others.  One common type of security is a stock.

The buying and selling of securities is controlled by the Securities Laws.  Many of these laws are administered by the SEC.

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, Internet and similar methods of communication and travel from one state to another within the United States.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 10 – CLAIMS ASSERTED BY THE PLAINTIFF**

The SEC claims that the defendant has violated various provisions of federal securities law, in particular the Exchange Act and the Securities Act.  The specific claims asserted by the SEC are as follows:

(1)     Violation of Rule 10b-5 of the Exchange Act.

(2)     Aiding and abetting violation of Rule 10b-5.

(3)     Aiding and abetting violation of Section 13(a) of the Exchange Act.

(4)     Violation of Section 13(b)(5) of the Exchange Act.

(5)     Violation of Rule 13b2-1 of the Exchange Act.

1

**JURY INSTRUCTION NO. 11 – SECURITIES – BACKDATING OF STOCK OPTIONS**

2       "Backdating" – insofar as that term means pricing stock options on a day prior to the date of

3  the grant – is not in and of itself a violation of the federal securities law.  However, evidence of such

4  practices may be considered by you, along with other evidence, in connection with the claims

5  asserted against the defendant.  In other words, you may consider evidence of retroactive pricing, or

6  "backdating," in light of the specific elements that must be proved in connection with each of the

7  claims asserted.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

13

**JURY INSTRUCTION NO. 12 – SECURITIES – ACCOUNTING GUIDELINES**

You have heard reference at times during the trial to generally accepted accounting principles ("GAAP"), Accounting Principles Board Opinion No. 25 ("APB 25"), Financial Accounting Standard 123 ("FAS 123") and Financial Accounting Standards Board Interpretation No. 44 ("FIN 44").  Except where otherwise provided, a violation of these principles, opinion, standards, or guidelines in and of itself, does not establish a violation of the securities law. However, evidence of such accounting violations may be considered by you, along with other evidence, in connection with the violations alleged.

United States District Court

For the Northern District of California

14

United States District Court

For the Northern District of California

**VIOLATION OF RULE 10b-5**

**JURY INSTRUCTION NO. 13 – RULE 10b-5 CLAIM – ESSENTIAL ELEMENTS**

A "10b-5 claim" is a claim brought under a federal statute, Section 10(b) of the Exchange Act, which in essence prohibits acts of deception in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue.  A corresponding SEC Rule, Rule 10b-5, prohibits the misrepresentation of material facts and the omission of material facts in connection with the purchase or sale of securities.  A person or business entity who violates the securities laws, including Rule 10b-5, may be liable for the violation.

The SEC alleges that the defendant violated Rule 10b-5 by participating in a scheme to defraud shareholders of Embarcadero and making, or helping others make, material misrepresentations and omissions of fact regarding how Embarcadero granted and accounted for employee stock options.

On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.    The defendant did any of the following things in connection with the purchase or sale of securities: (a) employed a device, scheme or artifice to defraud; or (b) made an untrue statement of a material fact; or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading; or (c) engaged in an act, practice or course of business that operated as a fraud or deceit;

2.    The defendant acted knowingly or recklessly; and

3.    The defendant used or caused the use of an instrumentality of interstate commerce, such as mail or telephone facility of a national securities exchange in connection with the purchase or sale of securities, regardless whether the instrumentality or facility itself was used to make an untrue statement or a material omission.  In connection with means that there was some nexus or relationship between the allegedly fraudulent conduct and the sale or purchase of the securities.

1    If you find that the SEC has proved all of the above elements, your verdict should be for the

2  SEC.  If, on the other hand, you find that the SEC has failed to prove one or more of these

3  elements, your verdict should be for the defendant.

**JURY INSTRUCTION NO. 14 – RULE 10b-5 CLAIM – MISREPRESENTATIONS OR OMISSIONS – MATERIALITY**

The SEC must prove by a preponderance of the evidence that the misrepresentation or omission of the defendant was material.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether or not to buy or sell that security.

An omission concerning a security is material if there is a substantial likelihood that a reasonable investor would have regarded what was not disclosed to [him] [her] as having significantly altered the total mix of information [he] [she] took into account in deciding whether to buy or sell the security.

You must decide whether something was material based on the circumstances as they existed at the time of the statement or omission.

**JURY INSTRUCTION NO. 15 – RULE 10b-5 CLAIM – KNOWINGLY OR RECKLESSLY**

A defendant acts knowingly when he makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.  A defendant acts knowingly if he omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.

"Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 16 – RULE 10b-5 CLAIM – KNOWINGLY – DELIBERATE**

**IGNORANCE**

You may find that the defendant acted knowingly if you find by a preponderance of the evidence that the defendant:

1.      was aware of a high probability that Embarcadero's public disclosures were false, and

2.      deliberately avoided learning the truth.

You may not find such knowledge, however, if you find that the defendant actually believed that Embarcadero's public disclosures were accurate, or if you find that the defendant was simply careless.

19

United States District Court

For the Northern District of California

**AIDING AND ABETTING VIOLATION OF RULE 10b-5**

**JURY INSTRUCTION NO. 17 – AIDING AND ABETTING VIOLATION OF RULE 10b-5 – ESSENTIAL ELEMENTS**

      The SEC also claims that the defendant aided and abetted another person's violations of Rule 10b-5.  To prove this aiding and abetting claim, the SEC must establish by a preponderance of the evidence that:

1.      Another person (*i.e.*, someone other than the defendant engaging in conduct of his or her own will) violated Rule 10b-5 by knowingly or recklessly participating in a scheme to defraud or making material misrepresentations or omissions of fact (known as the "primary violation"); and

2.      the defendant had actual knowledge of both the primary violation and of his role in furthering it; and

3.      the defendant provided substantial assistance in the primary violation.

      The SEC must establish all of the elements listed in Instruction No. 13 for each claimed primary violation.

**JURY INSTRUCTION NO. 18 – AIDING AND ABETTING VIOLATION OF**

**RULE 10b-5 – ACTUAL KNOWLEDGE**

For any aiding and abetting claim, the SEC must prove that the defendant had actual knowledge of both the primary violation and of his role in furthering it; recklessness is not enough.

**JURY INSTRUCTION NO. 19 – AIDING AND ABETTING VIOLATION OF**

**RULE 10b-5 – SUBSTANTIAL ASSISTANCE**

As stated in Instruction No. 17, to prove that the defendant aided and abetted any securities violation, the SEC must prove that the defendant " substantially assisted" someone else in committing a securities violation.

"Substantially assisted" means that the defendant's assistance was a substantial factor in causing the securities violation.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

**AIDING AND ABETTING VIOLATION OF SECTION 13(a)**

**JURY INSTRUCTION NO. 20 – AIDING AND ABETTING VIOLATION OF SECTION 13(a) – ESSENTIAL ELEMENTS**

The SEC claims that the defendant also aided and abetted Embarcadero's violations of Section 13(a) of the Exchange Act.  Section 13(a) and its rules require public companies, such as Embarcadero, to file periodic reports to shareholders quarterly and annually that describe their financial condition, and to timely file current reports as needed.  In particular, public companies are required to file annual reports on Forms 10-K, quarterly reports on Forms 10-Q, and current reports on Forms 8-K.  The reports must not be materially inaccurate or misleading.

To prove this aiding and abetting claim, the SEC must establish by a preponderance of the evidence that:

1.   Embarcadero filed a materially inaccurate or misleading Form 10-K, or Form 10-Q, or Form 8-K (known as the "primary violation");

2.   the defendant had actual knowledge of both the primary violation and of his role in furthering it; and

3.   the defendant provided substantial assistance in the primary violation.

The elements of aiding and abetting that are included in Instructions Nos. 18 and 19 apply equally to this aiding and abetting claim.

The term "material" is defined in Instruction No. 14 above.

There is no requirement that Embarcadero knowingly (as defined in Instruction No. 15 above) filed a materially inaccurate or misleading report.  However, the SEC must still prove that the defendant had actual knowledge of the primary violation and his role in furthering it.

**VIOLATION OF SECTION 13(b)(5)**

**JURY INSTRUCTION NO. 21 – SECTION 13(b)(5) CLAIM – ESSENTIAL ELEMENTS**

The SEC claims that the defendant knowingly falsified one or more of Embarcadero's books, records, or accounts described below.  The SEC also claims that the defendant knowingly circumvented or knowingly failed to implement a system of internal accounting controls.

To prove this claim, the SEC must show by a preponderance of the evidence that the defendant knowingly either:

1.  falsified any of Embarcadero's books, records, or accounts that reflect the transactions and disposition of Embarcadero's assets; or

2.  circumvented Embarcadero's system of internal accounting controls; or

3.  failed to implement a system of internal accounting controls at Embarcadero.

The term "knowingly" as used in § 13(b)(5) means intentionally; recklessness is not sufficient.

The terms "books, records, or accounts" mean accounts, correspondence, memoranda, tapes, discs, papers, books, and other documents or transcribed information of any type, whether expressed in ordinary or machine language.  The SEC must prove that the book, record, or account does not, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the company's assets.

The phrase "system of internal accounting controls" means a system sufficient to provide reasonable assurances that transactions are recorded as necessary to prepare financial statements that conform to generally accepted accounting principles and to account for assets.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 22 – SECTION 13(b)(5) CLAIM –**

**IMPLEMENTATION OF INTERNAL CONTROLS**

As stated in Instruction No. 21 above, the SEC claims that the defendant failed to implement a system of internal accounting controls.  For all such claims, the SEC must also prove that the defendant was responsible for implementing such controls.

**VIOLATION OF RULE 13b2-1**


**JURY INSTRUCTION NO. 23 – RULE 13b2-1 CLAIM –**
**ESSENTIAL ELEMENTS**

The SEC claims that the defendant also violated Rule 13b2-1 of the Exchange Act.  This rule prohibits anyone from falsifying any book, record, or account so that it does not, in reasonable detail, accurately and fairly reflect the transactions and the disposition of the assets of a company.

To prove this claim, the SEC must show by a preponderance of the evidence that the defendant, directly or indirectly, falsified, or caused to be falsified, any book, record, or account of Embarcadero such that it did not, in reasonable detail, accurately and fairly reflect the transactions and the disposition of Embarcadero's assets.

The SEC need not prove that the defendant knowingly (as defined in Instruction No. 15) falsified or caused to be falsified any book, record, or account of Embarcadero.  In addition, the SEC need not prove that the book, record, or account was materially (as defined in Instruction No. 14) false or inaccurate.  The SEC must prove that the books, records, and accounts did not, in reasonable detail, accurately and fairly reflect the transaction and disposition of the assets of Embarcadero.

The terms "books, records, or accounts" are defined in Instruction No. 21 above.

**JURY INSTRUCTION NO. 24 – UNANIMITY**

For Claim 3, Claim 4, and Claim 5, each of which contains a claim that there was a false filing (such as 10-K, 10-Q, or 8-K) or a false record or book or account, you must unanimously agree that the same filing or book or record or account was false.

**JURY INSTRUCTION NO. 25 – OTHER INDIVIDUALS**

You have heard testimony and allegations related to other individuals including Stephen Wong and Raj Sabhlok that worked at Embarcadero Technologies, Inc.  You are not to guess or speculate as to the reason for their absence from these proceedings, and you must base your verdict solely on the evidence in that case.

1

**JURY INSTRUCTION NO. 26 – JURY NOT TO CONSIDER RELIEF**

2         In this civil case, you are only to determine whether Mr. Pattison violated the laws alleged in

3 the claims.  It is within the Court's purview to decide what relief, if any, is appropriate.  You are

4 only to decide only whether the SEC has proved its claims against Mr. Pattison.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### JURY INSTRUCTION NO. 27 – DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict with respect to each claim must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**JURY INSTRUCTION NO. 28 – COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**JURY INSTRUCTION NO. 29 – RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**United States District Court**
For the Northern District of California