UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>   v.<br><br>MICHAEL C. PATTISON,<br><br>       Defendant.<br>_____/ | No. C-08-4238 EMC<br><br>**AMENDED ORDER AND JUDGMENT GRANTING MOTION FOR ENTRY OF FINAL JUDGMENT**<br><br>**[REVISIONS ARE IN BOLD AND GREEN HIGHLIGHT]**<br><br>**(Docket No. 328)** |

      Following the jury's verdict against Defendant Michael C. Pattison on two claims (§ 13(b)(5) of the Exchange Act and Rule 13b2-1), the SEC seeks the following remedies: (1) an order enjoining Defendant from future violations of the federal securities laws, (2) disgorgement of his ill-gotten gains and (3) a civil monetary penalty "designed to deter[] his wrongful conduct." The Court will address each of these remedies in turn.[1]

## I.   REMEDIES

A.   <u>Injunctive Relief</u>

      The Commission requests that the Court enjoin Defendant from further violations of § 13(b)(5) of the Exchange Act and Rule 13b2-1. Pl.'s Mot. at 1. Injunctive relief is the primary statutory remedy for violations of the federal securities laws. 15 U.S.C. §§ 77t(b), 78u(d); *SEC v. Randolph*, 736 F.2d 525e, 529. A district court may grant the SEC's request for a permanent

---

[1] For a more detailed account of the facts and procedural posture of this case, please refer to the Order Denying Defendant's Motion for Judgment as a Matter of Law and for a New Trial ("Order Denying JMOL").

injunction upon a showing of a reasonable likelihood that the defendant will commit future violations. *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). In determining the likelihood of future violations, the court should consider the totality of the circumstances, including: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the violation; (3) the defendant's recognition of the wrongfulness of the conduct; (4) the likelihood, given the defendant's occupation, of future violations; and (5) the sincerity of his assurances against future violations. *Id*. The Court may issue a permanent injunction even if the defendant is not currently engaged in any violations. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

Although *Fehn* involved different provisions of the Exchange Act, namely § 10(b) and § 15(d), violations of those sections are analogous to the 13(b)(2) and 13b2-1 violations *sub judice*. In *Fehn*, the court provided that "the requisite scienter for aiding and abetting liability is '*knowingly*.'" *Id.* at 1295 (emphasis added). Likewise, § 13(b)(2) states that "[n]o person shall *knowingly* circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record or account." 15 U.S.C. § 78m(b)(5) (emphasis added). The Court finds that the *Fehn* factors apply, and that taken together, weigh in favor of enjoining Defendant from future violations. Each factor is discussed below.

1. <u>Degree of Intent or Scienter</u>

First, the Court finds that substantial evidence, indeed the weight of the evidence, supports the conclusion that Defendant had the requisite degree of intent to grant injunctive relief. The jury found that Defendant acted knowingly when he falsified records and/or circumvented internal controls to make it appear that no stock option grants were backdated and below fair market value. Verdict at 2 (Docket No. 315). As discussed in the Order Denying JMOL, the Court fully concurs in the jury's determinations. This factor favors an injunction.

2. <u>Nature of the Infraction</u>

Second, evidence presented at trial demonstrates that Defendant's backdating practices occurred routinely from late 2000 to 2004, and that multiple reports filed with the SEC during that period contained false or misleading certifications as a result of Defendant's false records. As a result of Defendant's conduct, in-the-money options were repeatedly granted without being

1  recognized as a compensation expense every quarter for nearly four years. *See* Tr. at 916-17
2  (McKenzie testimony regarding procedure for issuing stock options from 2000 to 2004); Exs. 562
3  (Sept. 29, 2003 email to Wong proposing July 1, 2003 as a grant date, noting that it was the "Low
4  for the Q."), 567 (Oct. 6, 2003 email with modified list). Defendant's violations were part of an
5  ongoing pattern of conduct, as opposed to isolated incidents. This factor favors an injunction.

        3.         Recognition of Wrongful Nature of Conduct

7  Third, Defendant has not expressly recognized the wrongfulness of his conduct. He
8  facilitated the public filing of financial statements that were erroneous because of the undisclosed
9  backdating of options; yet Defendant took no steps during these four years to correct these
10 misstatements. He either placed the blame for options backdating on others, *e.g.*, Stephen Wong, or
11 contended he was merely complying with Embarcadero's stock option plan. When confronted with
12 the fact that he was temporarily placing stock option in unrelated employee E*Trade accounts,
13 Defendant refused to acknowledge that this practice was wrongful or unlawful. *See, e.g.*, Tr. 2022
14 (Sept. 20, 2010 testimony of Pattison).

15 Defendant points to *SEC v. Todd* in response, wherein the court denied the SEC's request for
16 a permanent injunction, reasoning that the defendants' argument therein that they committed no
17 fraud does not amount to a refusal to recognize the wrongfulness of their conduct. 2007 U.S. Dist.
18 LEXIS 38985, *50 (S.D. Cal. May 30, 2007) (noting that "[t]his is a wholly appropriate position
19 during the pendency of Rule 50 and Rule 59 motions . . . ."). In considering this factor, the Court
20 does not fault Defendant for availing himself of all reasonable legal arguments in the instant case.
21 But it cannot ignore the jury's conclusions, including its determination that Defendant acted
22 *knowingly* on a repeated basis without taking any steps to issue proper accounting. By contrast, the
23 defendants in *Todd* acted without scienter. *Id.* at *49. Defendant's deceptive conduct persisted until
24 the end of his employment with Embarcadero. This factor weights in favor of an injunction.[2]

---

[2] It bears noting that the court in *Todd* determined that the securities violations were "isolated" and the misstatements at issue "involved neither intent nor an extreme departure from the standards of ordinary care." *Todd*, 2007 U.S. Dist. LEXIS 38985 at *50. Here, as discussed above, an order of permanent injunction is more appropriate in light of the recurrent nature of the erroneous conduct and the sufficient degree of knowledge and intent.

3

### 4. Likelihood Given Defendant's Occupation of Future Violations

The SEC argues that because Defendant is a CPA and has work experience as a controller of a privately held and publicly traded business, he is in a position to commit a future violation of § 13(b)(5) and Rule 13b2-1.

Relying on *SEC v. Cohen,* Defendant contends that future violations are unlikely since he is no longer working for a publicly traded company. The Court disagrees. The defendant in *Cohen* committed to a dramatic career change, from serving as a Chief Financial Officer of a publicly-traded corporation to working as a "homebuilder." *Id.* at 62. In stark contrast, Defendant currently holds a position as an accountant in a private trading company, and is still a licensed CPA, eligible to return to the public accounting field. Moreover, Defendant may return to the public accounting field, as he apparently has not ruled out working for a publicly-traded company in the future. Def.'s Dep. at 259-261 (Ex. A to Tashjian Decl.) (Docket No. 329). These facts, paired with the jury's finding that Defendant engaged in *knowing* violations of the Exchange Act, support the conclusion that there is a risk of future violation.

Defendant also points to *SEC v. Todd*, wherein the court declined to issue a permanent injunction. The court explained that the defendants' unlawful conduct "involved neither intent nor an extreme departure from the standards of ordinary care." *Todd,* 2007 U.S. Dist. LEXIS 38985 at *49. The court also found their infractions to be isolated, and noted that they had no history of securities law violations. *Id.* at *49-50. Here, in contrast, Defendant's conduct was recurrent and knowing. *Cf. Murphy*, 626 F.2d at 655 (upholding an injunction issued for violations not based on scienter where the court found that defendant acted at least recklessly).

The Court recognizes that, despite Defendant's repeated Exchange Act violations, he had no prior history of securities law violations. Nevertheless, the likelihood that Defendant may again find himself in a position of responsibility over a company's compliance with securities laws tips the scales slightly in favor of an injunction with respect to this factor.

### 5. Sincerity of Assurances Against Future Violation

Defendant has provided evidence of sincere assurances against future violations. For example, he voluntarily met with attorneys of Embarcadero's Special Committee and forthrightly

told them the facts about the options backdating. Declaration of Patrick J. Richard ("Richard Decl.") ¶ 2. On November 16, 2007, Mr. Defendant also voluntarily met with the SEC, although he invoked the Fifth Amendment during the SEC's investigation. *Id.* Defendant's assurances thus appear to be sincere, despite his steadfast opposition to the jury's findings. This factor weights against an injunction.

### 6. Injunctive Relief is Warranted

In sum, the Court finds that the *Fehn* factors weigh in favor of granting a permanent injunction. The Court finds that the SEC has met its burden of establishing that a permanent injunction against future violations of § 13(b)(5) of the Exchange Act and Rule 13b2-1 is appropriate. Accordingly, the Commission's request for a permanent injunction is **GRANTED** and the Court hereby permanently enjoins Defendant from further violations of § 13(b)(5) and Rule 13b2-1 of the Exchange Act.

## II. DISGORGEMENT

The Court has "broad equity powers to order the disgorgement of 'ill-gotten gains' obtained through the violation of federal securities laws." *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006); *see also SEC v. Rind*, 991 F.2d 1486, 1491 (9th Cir. 1993). The remedy "consists of factfinding by a district court to determine the amount of money acquired through wrongdoing--a process sometimes called 'accounting'--and an order compelling the wrongdoer to pay that amount plus interest to the court." *SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006) Disgorgement is designed to deprive a wrongdoer of unjust enrichment and to deter others by rendering violations unprofitable. *SEC v. First Pacific Bancorp,* 142 F.3d 1186, 1191 (9th Cir. 1998); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993). It is not a punitive remedy. The SEC therefore must provide a reasonable calculation of profits "causally connected to the violation." *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989). The wrongdoer bears the risk of uncertainty. *Id*.

The SEC seeks disgorgement in the amount of $ 106,437.22. Pl.'s Mot. at 20. This amount represents the total amount gained from Defendant's exercise of options ($86,000) plus interest. SEC's Mot. at 19. The Court finds this is not the proper measure of disgorgement. The focus

should be on the causal connection between Defendant's violations and profits made as a result of the Defendant's violations. The entirety of the profit made on the options is not causally connected to the backdating practice herein. The predicate of the securities law violations here is the backdating of option grants. The Court finds there is a causal relationship between Defendant's violations and that portion of the profits attributable to the backdating (*i.e.*, the "in the money" portion). In this regard, the Court credits the analysis in the expert report of Richard J. Ostiller (Ostiller Rept. ¶ 156; Ex. E to Tashjian Decl.) (Docket No. 329 at 44) which concluded that $59,971 of the $85,867 in profits from Defendant's exercised options "relates to Administrator grant date selection." The Court accordingly finds that the principal amount of Defendant's unjust enrichment, or "ill-gotten gains," is $59,971.

The SEC asks the Court to include prejudgment interest in the disgorgement amount. Naturally, Defendant opposes an award of prejudgment interest. The Court has wide discretion in deciding (a) whether to award interest on a successful claim, and (b) what the most appropriate method of calculating the interest amount is under the circumstances. *See generally SEC v. Olins*, No. 07-6423-MMC, 2011 U.S. Dist. LEXIS 5928 (N.D. Cal., Jan. 21, 2011). In deciding whether to award prejudgment interest, the Court considers whether the interest is compensatory or duplicative and whether the equities in the particular case weigh in favor or against an adjustment for interest. *See F.D.I.C. v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir. 1998). In this case, the Court finds an award of prejudgment interest to be appropriate, as it is not duplicative and the equities weigh in favor of including interest in the disgorgement. After all, any interest accumulated by Defendant's undeserved profits inured to him alone, as a consequence of his unlawful conduct.

Federal law governing the calculation of prejudgment interest rates applies in this case. *See The Guides, Ltd. v. The Yarmouth Group Property Management, Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002) (noting that "a federal rate of interest rather than the state rate applies where jurisdiction is based on a federal question."). There are several accepted methods of calculating prejudgment interest. Prejudgment interest rates may be calculated in the same way as postjudgment interest, *i.e.,* at a rate equal to the weekly average 1-year constant maturity Treasury yield (approximating the rate the government pays in exchange for a loans), as published by the Board of Governors of the Federal

Reserve System, for the calendar week preceding the date of judgment. 28 U.S.C. § 1961(a); *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984) (holding that "the measure of interest rates prescribed for post-judgment interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for pre-judgment interest"); *see also Nelson v. EG & G Measurements Group*, 37 F.3d 1384, 1391 (9th Cir. 1994) ("This makes good sense because pre-judgment interest is intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment.").[3]  Along these lines, the SEC requests that interest be calculated based on the average 1-year constant maturity Treasury yield as of the week prior to Defendant's last exercise of options (4.14% on October 14, 2005), with annual compounding.[4]  *See* Tashjian Decl. (Docket No. 329) Ex. C.  While Defendant opposes the imposition of any prejudgment interest, he does not take issue with the SEC's proposed calculation methodology in his opposition brief.  The Court therefore adopts the SEC's proposed methodology, and adds prejudgment interest of 4.14 percent beginning October 20, 2005 (compounded annually with an adjustment covering the period from October 21, 2010 through February 21, 2011), and awards prejudgment interest in the amount of $14,475.  The Court accordingly adjusts the disgorgement amount to $74,446.

### III.  CIVIL PENALTY

The Court may impose civil monetary penalties against any person who violates the Exchange Act.  15 U.S.C. §§ 77t(d), 78u(d)(3); *see SEC v. Pallais,* No. 08-8384, 2010 U.S. Dist. LEXIS 137586, at *10 (S.D.N.Y. July 9, 2010) ("the discretion to determine the appropriate kind of

---

[3] An alternative method of calculation is to use the Internal Revenue Service underpayment rate (approximating the rate at which the government would lend money to a person) pursuant to 26 U.S.C. § 6621(a)(2) and 26 C.F.R. § 301.6621-3. *See, e.g.*, *SEC v. Olins*, No. 07-6423-MMC, 2011 U.S. Dist. LEXIS 5928 (N.D. Cal., Jan. 21, 2011) (in an action brought by the SEC, the IRS underpayment rate is a more appropriate rate by which to calculate prejudgment interest than the treasury-bill rate); *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476-77 (2d Cir. 1996) (finding IRS underpayment rate, which "reflects what it would have cost to borrow the money from the government" more appropriate in calculating prejudgment interest than treasury-bill rate, as "that is the rate at which one lends money to the government").

[4] Here, the unjust enrichment began when Defendant first exercised backdated options in December 2001.  Ostiller Decl. Ex. F.  Defendant's last exercise was on October 20, 2005, at which point he realized the full amount of ill-gotten principal.  *Id.*  Since the SEC does not propose that the Court calculate interest as of the first exercise date, the Court will not do so.

penalty to impose lies with the district court"). The SEC requests that the Court impose a monetary penalty against Defendant. The SEC contends that a "third tier" penalty is appropriate due to Defendant's repeated violations of the securities laws. "Third tier" penalties may be imposed when the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement [and] such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." 15 U.S.C. § 78(d)(3)(B)(iii). "Second tier" penalties are available for violations that involve "fraud, deceit, manipulation, or deliberate or reckless disregard for a regulatory requirement." 15 U.S.C. § 77t(d)(2)(B).

Here, the jury found Defendant knowingly engaged in conduct violative of regulatory and statutory laws. Neither party disputes that at the very least, if any penalty were to apply, second tier penalties would be appropriate. As to the application of the third tier, the SEC failed to prove any actual loss to other persons such as shareholders that were proximately caused by Defendant's violations. Moreover, the jury's verdict against the SEC on the 10(b)(5) claim implies, and the Court so finds, that the SEC failed to prove the misstatements in the financial statements were material. Thus, there was no significant risk of substantial loss to others as a result of Defendant's violations. *See Pallais,* 2010 U.S. Dist. LEXIS 137586 at *10 (imposing a "second tier" penalty of $65,000 because the Commission failed to satisfy the substantial loss requirement). A second tier penalty is therefore appropriate. *See SEC v. M & A West Inc.,* No. 01-3376, 2005 U.S. Dist. LEXIS 22358, at *14 (N.D. Cal., June 20, 2005) (imposing "second tier" penalties of $55,000 each because a penalty is "necessary here to deter future fraudulent conduct" and will make the defendant "think twice before pursuing any questionable business practices").

The penalty for each second tier violation may not exceed $60,000 for a natural person or the "gross amount of pecuniary gain" to the defendant. *Id.* (as adjusted for inflation as of Feb. 2, 2001 pursuant to 17 C.F.R. § 201.1002). The Court may assess a penalty for each distinct violation, *e.g.*, each time Defendant falsified a record. *See, e.g., SEC v. Coates,* 137 F. Supp. 2d 413, 427 (S.D.N.Y. 2001) (assessing a $10,000 penalty for each of four separate, misleading statements to an investor in violation of the Exchange Act)*; SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998) (assessing $1.2 million third tier penalty based on the number of investors who were

defrauded).  Under the circumstances here, the Court finds that in light of the lack of harm to shareholders and the disgorgement and injunctive relief ordered, the statutory purpose of civil penalty is satisfied by a monetary penalty of $50,000.

## V. CONCLUSION

Having considered the parties' briefs and accompanying submissions, as well as the argument of counsel, the Court hereby **GRANTS** the SEC's Motion for Final Judgment for the foregoing reasons, and **ORDERS** as follows:

1. Defendant is permanently enjoined from violating § 13(b)(5) of the Exchange Act of 1934, 15 U.S.C. § 78(m)(b)(5), by, directly or indirectly, knowingly circumventing or knowingly failing to implement a system of internal accounting controls or knowingly falsifying any book, record, or account made by or kept pursuant to § 13(b)(2) of the Exchange Act, 15 U.S.C. § 78m(b)(2).

2. Defendant is permanently enjoined from violating Exchange Act Rule 13b2-1, 17 C.F.R. §§ 240.13b2-1, by (a) directly or indirectly falsifying or causing to be falsified any book, record, or account subject to § 13(b)(2)(A) of the Exchange Act; or (b) while serving as an officer or director of an issuer, directly or indirectly, making or causing to be made a materially false or misleading statement to an accountant, or omitting to state or causing another person to omit or state, any material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant, in connection with any audit, review, or examination of the financial statements of the issuer required to be made pursuant to § 13 of the Exchange Act, or the preparation or filing of any document or report required to be filed with the Commission pursuant to § 13 or otherwise.

3. Defendant is liable for disgorgement of $59,971, representing the reasonable approximation of his unjust gains resulting from the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of **$14,475** for a total of **$74,446**.

4. Defendant is shall pay a "Tier 2" civil penalty in the amount of $50,000 pursuant to § 20(d)(2) of the Securities Act, 15 U.S.C. § 77t(d)(2), and § 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

9

1  5.   Defendant shall satisfy his obligations by paying a total of **$124,446** within six months of the date of entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Michael C. Pattison as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of such payment and letter to the attention of Marc J. Fagel, Regional Administrator, at the Commission's San Francisco Regional Office, 44 Montgomery Street, Suite 2600, San Francisco, CA 94104.  Defendant shall pay post-judgment interest on any delinquent amounts (past the date of payment ordered herein) pursuant to 28 U.S.C. § 1961.  The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

6.   The Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

7.   This Order constitutes a final judgment, and shall be entered accordingly.

This Order disposes of Docket No. 328.

IT IS SO ORDERED.

Dated: February 23, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge

10