UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL C. PATTISON,<br><br>        Defendant.<br>_____/ | No. C-08-4238 EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF LAW AND MOTION FOR NEW TRIAL; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO AMEND JUDGMENT**<br><br>**(Docket No. 355)** |

Currently pending before the Court is Mr. Pattison's motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e); motion for judgment as a matter of law pursuant to Rule 50(b); and motion for a new trial pursuant to Rule 59(a). Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **DENIES** the Rule 50(b) and Rule 59(a) motions and **GRANTS** in part and **DENIES** in part the Rule 59(e) motion.

**I.   DISCUSSION**

As noted above, Mr. Pattison has filed three motions for the Court's consideration: a Rule 59(e) motion, a Rule 50(b) motion, and a Rule 59(a) motion. The Court briefly addresses the latter two motions first.

A.   Rule 50(b) and Rule 59(a) Motions

As the SEC points out, prior to filing the pending Rule 50(b) and Rule 59(a) motions, Mr. Pattison filed a Rule 50(b) motion and Rule 59(a) motion in December 2010, after the jury verdict

was rendered. *See* Docket Nos. 324, 327 (motions). The Court denied both motions on February 22, 2011. *See* Docket No. 351 (order).

According to Mr. Pattison, his pending Rule 50(b) and Rule 59(a) motions are not motions for reconsideration of the Court's February 22 order. *See* Mot. at 16. If so, then Mr. Pattison has not established he has the right to bring a *second* Rule 50(b) motion and motion for a new trial. *See* Opp'n at 13 (arguing that "renewed" motions are not proper). In his papers, Mr. Pattison indicates that he filed a second Rule 50(b) motion and motion for a new trial as a precautionary measure only. That is, Mr. Pattison contends that because the Court issued an order granting the SEC's motion for entry of a final judgment after the jury verdict was rendered, he needed to file the currently pending Rule 50(b) and Rule 59(a) motions in order to preserve his rights on appeal. *See* Mot. at 16; *see also* Reply at 3.

Because Mr. Pattison has filed the pending Rule 50(b) and Rule 59(a) motions simply to preserve his appeal rights, the Court need not address in any detail the motions here. It is sufficient to note that the arguments raised in this second Rule 50(b)/Rule 59(a) motion are largely a rehash of arguments made in the first Rule 50(b)/Rule 59(a) motion. Accordingly, the reasons the Court previously articulated in its order denying the first Rule 50(b)/Rule 59(a) motion are equally applicable here, and the Court therefore denies the second Rule 50(b)/Rule 59(a) motion for the same reasons.

B.  Rule 59(e) Motion

The Court now turns to the Rule 59(e) motion, which is the main motion pressed by Mr. Pattison. Under Rule 59(e), a party may move to alter or amend a judgment.

> "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." But amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). The party moving for relief has the burden of showing that an amendment is appropriate. *See Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (stating that Rule 59(e) motions "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances"); *see also Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995) (stating that "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

In the instant case, Mr. Pattison argues only manifest error and manifest injustice, *i.e.*, the first and third grounds stated above, to challenge the judgment in which the Court ordered injunctive relief, disgorgement, and a civil penalty. *See* Docket No. 353 (order).

With respect to the first ground, a manifest error is, in effect, a clear error. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (stating that "[a]mendment or alteration is appropriate under Rule 59(e) if[,] [for example,] the district court committed clear error or made an initial decision that was manifestly unjust"). While "[c]ourts have generally not defined what constitutes 'clear error' under Rule 59(e)," case law indicates that "clear error should conform to a 'very exacting standard'" – *e.g.*, a court should have "'a clear conviction of error.'" *Piper v. United States DOJ*, 312 F. Supp. 2d 17, 21 (D.D.C. 2004). Furthermore, as indicated above, the error must be one on which the final judgment was predicated, *see Allstate*, 634 F.3d at 1111, and, equally important, the error must be one that would alter the outcome of the case. *See Bokel v. NYPD Prop. Clerk Div.*, No. 06-CV-2849 (SLT) (LB), 2008 U.S. Dist. LEXIS 54081, at *4-5 (E.D.N.Y. July 15, 2008) (concluding that the plaintiff "failed to satisfy the burden of showing that this Court . . . overlooked a controlling decision or material fact that would alter the outcome"); *see also* Wright, *et al.*, Fed. Prac. & Proc. § 2810.1 (stating that "amendment of the judgment will be denied if it would serve no useful purpose"); Fed. R. Civ. P. 61 (providing for harmless error, *i.e.*, "[u]nless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order"); 12-61 Moore's Fed. Prac. – Civ. § 61.02[2] (stating that,

"even if the trial court is mistaken, it will not be reversed unless its ruling results in substantial prejudice, or had a substantial effect on the outcome of the case"). This is consistent with Ninth Circuit case law which holds that, while "newly discovered evidence is one basis for granting a Rule 59(e) motion, not just any evidence will do" – the evidence must have been "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Duarte v. Bardales*, 526 F.3d 563, 573 (9th Cir. 2008).

As for the third ground, courts have generally indicated that manifest injustice constitutes the result of a plain error. *See In re Telfair*, 745 F. Supp. 2d 536, 561 (D.N.J. 2010). That is, the error must have been so "'direct, obvious, and observable,'" *Tennessee Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004), that the trial court should correct its mistake and thereby "'spar[e] the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). *See also White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (noting that "Rule [59(e)] was adopted to '[make] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment").

For the reasons discussed below, there is only one error raised by Mr. Pattison that rises to the level of a manifest error or manifest injustice.

### 1. Rule 13b2-2 Injunction

The first amendment to the judgment that Mr. Pattison requests concerns the injunctive relief ordered by the Court. At trial, the jury concluded that Mr. Pattison committed a violation of, *inter alia*, Rule 13b2-1 of the Securities Exchange Act. *See* Docket No. 315 (jury verdict). Rule 13b2-1 provides that "[n]o person shall directly or indirectly, falsify or cause to by falsified, any book, record or account subject to section 13(b)(2)(A) of the Securities Exchange Act." 17 C.F.R. § 240.13b2-1. In its order of February 23, 2011, the Court permanently enjoined from Mr. Pattison from violating the rule.

However, the Court's injunction not only barred Mr. Pattison from engaging in this conduct but also barred him from engaging in conduct prohibited by Rule 13b2-*2*. *See* Docket No. 353 (Order at 9). That rule provides, *inter alia*, that "[n]o director or officer of an issuer shall, directly or

indirectly . . . [m]ake or cause to be made a materially false or misleading statement to an accountant in connection with . . . [a]ny audit, review or examination of the financial statements of the issuer required to be made pursuant to this subpart." 17 C.F.R. § 240.13b2-2(a).

As Mr. Pattison points out, a violation of Rule 13b2-2 was never a claim asserted by the SEC in this case, and therefore, he argues, the Court committed a manifest error by including an injunction that barred conduct prohibited by Rule 13b2-2. The Court agrees. Moreover, the SEC has not substantively opposed amending the injunction in this regard. *See* Opp'n at 4 ("tak[ing] no position as to whether the Court should amend"). The Court therefore amends the judgment to remove the Rule 13b2-2 language from the injunction.

2. Court's Orders of February 22 and 23, 2011

With a few exceptions, the remaining amendments to the judgment that Mr. Pattison requests relate to the Court's February 22 order in which it denied Mr. Pattison's first Rule 50(b)/Rule 59(a) motion. To the extent the requested amendment falls within this category, the Court notes that, as stated above, Mr. Pattison is not – as a formal matter – seeking reconsideration of the February 22 order. He does argue, however, that errors made in this order informed the Court's ultimate judgment in which it issued injunctive relief, disgorgement, and a civil penalty. Each of these claimed errors is addressed below.

a. First Claimed Error

First, Mr. Pattison argues that the Court erred in stating in its February 22 order that it was *undisputed* that PWC (*i.e.*, the accounting/auditing firm) was not aware that grant dates for options were retrospectively chosen. *See* Mot. at 4-5; Reply at 9-10. Mr. Pattison's argument is nothing more than semantic quibbling. Of course, Mr. Pattison argued at trial that PWC actually knew what was taking place. In its order, the Court was simply making the point that there was no evidence that PWC was ever explicitly told about the backdating. At best, there was indirect evidence which might have raised an inference that PWC knew about the backdating – *e.g.*, the grant authorization lists contain multiple grant dates but only one approval date. In any event, regardless of whether PWC's knowledge was a disputed point, there was substantial and persuasive evidence that PWC was not aware that grant dates for options were retrospectively chosen.

5

b. <u>Second Claimed Error</u>

Second, Mr. Pattison argues that the Court erred in including the section titled "Options Backdating" in its February 22 order – a section which consists in part of citations to cases to define what backdating is and its legality. *See* Mot. at 5-6; Reply at 11-12. Mr. Pattison contends that "it is clear legal error for the Court to make evidentiary assumptions that are based on findings from other courts." Reply at 11.

The Court rejects Mr. Pattison's argument because it was not citing the cases as evidence. Rather, the citations were provided only for background and context. Furthermore, as the SEC points out, the citations were consistent with what the Court told the jury via the jury instructions. *See* Docket No. 321 (Jury Instruction No. 11) ("'Backdating' – insofar as that term means pricing stock options on a day prior to the date of the grant – is not in and of itself a violation of the federal securities law. However, evidence of such practices may be considered by you, along with other evidence, in connection with the claims asserted against the defendant. In other words, you may consider evidence of retroactive pricing, or 'backdating,' in light of the specific elements that must be proved in connection with each of the claims asserted."). Finally, Mr. Pattison fails to take into account that the section titled "Options Backdating" does more than just cite to cases. In the section, the Court cites to concrete evidence presented at trial – *e.g.*, evidence indicating that Embarcadero claimed to follow accounting principles (APB No. 25) and would take a compensation expense if an option was granted at a price less than fair market value on the date of the grant.

c. <u>Third Claimed Error</u>

Third, Mr. Pattison contends that the Court erred in stating in its February 22 order that he failed to raise in his Rule 50(a) motion the argument that there was no evidence in the record as to what constitutes "reasonable detail" for purposes of the § 13(b)(5) claim. *See* Mot. at 6-8; Reply at 9. Section 13(b)(5) provides that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account described in paragraph (2)." 15 U.S.C. § 78m(b)(5). Paragraph (2) in turn provides that certain issuers shall, *inter alia*, "make and keep books, records, and accounts, which, *in reasonable*

6

*detail*, accurately and fairly reflect the transactions and dispositions of the assets of the issuer." *Id.* § 78m(b)(2)(A) (emphasis added).

It is a fair argument that the Court erred in stating that Mr. Pattison did not raise the "reasonable detail" argument as part of his Rule 50(a) motion.[1] On pages 23 and 24 of his Rule 50(a) motion, Mr. Pattison discusses the "reasonable detail" standard in § 13(b)(5) and argues, *inter alia*, that he "applied Embarcadero's options-granting procedures with precisely the 'level of detail and degree of assurance as [a great many] prudent officials [did] in the conduct of their own affairs.'" Docket No. 288 (Mot. at 23-24) (quoting 15 U.S.C. § 78m(b)(7)).

But this error in characterizing Mr. Pattison's argument in his Rule50(a) motion does not warrant changing the outcome of the final judgment. This is because the reasonable detail standard was never a disputed issue at trial. Tellingly, Mr. Pattison never asked for a § 13(b)(5) jury instruction that defined "reasonable detail."[2] In fact, the § 13(b)(5) jury instruction that was given

---

[1] The SEC's argument to the contrary should be rejected. Although Mr. Pattison referred to claims 7 and 8 in his Rule 50(a) motion, those claims were clearly the § 13(b)(5)/Rule 13b2-1 claims. Claims 7 and 8 were renumbered claims 4 and 5 for the jury verdict form.

[2] At trial, the jury was instructed:

> To prove [the § 13(b)(5)] claim, the SEC must show by a preponderance of the evidence that the defendant knowingly either:
>
> 1. falsified any of Embarcadero's books, records, or accounts that reflect the transactions and disposition of Embarcadero's assets; or
>
> 2. circumvented Embarcadero's system of internal accounting controls; or
>
> 3. failed to implement a system of internal accounting controls at Embarcadero.
>
> The term "knowingly" as used in § 13(b)(5) means intentionally; recklessness is not sufficient.
>
> The terms "books, records, or accounts" mean accounts, correspondence, memoranda, tapes, discs, papers, books, and other documents or transcribed information of any type, whether expressed in ordinary or machine language. The SEC must prove that the book, record, or account does not, *in reasonable detail*, accurately and fairly reflect the transactions and dispositions of the company's assets.
>
> The phrase "system of internal accounting controls" means a system sufficient to provide reasonable assurances that transactions

7

1  was based largely on an instruction that was submitted jointly by the parties which did not include
2  any definition of reasonable detail. *See* Docket No. 217 (Stipulated Instruction No. 48) (not
3  including any language defining "reasonable detail").

4  In his papers, Mr. Pattison suggests that the reasonable detail standard was in dispute
5  because he applied a definition of grant date that was accepted by hundreds of other companies;
6  thus, he acted with the "'level of detail and degree of assurance as [a great many] prudent officials
7  [did] in the conduct of their own affairs.'" Mot. at 7 (quoting 15 U.S.C. § 78m(b)(7)). The problem
8  with this argument is that, ultimately, its focus is on Mr. Pattison having acted with reasonable
9  *assurances*, not with reasonable *detail*. *See* 15 U.S.C. § 78m(b)(7), (providing that "the terms
10 'reasonable assurances' *and* 'reasonable detail' mean such level of detail *and* degree of assurance as
11 would satisfy prudent officials in the conduct of their own affairs") (emphasis added). Mr. Pattison
12 cannot argue that what was at issue in the instant case was whether he provided a sufficient level of
13 detail about the backdating, rather than whether he failed to report the backdating in the first place.
14 Any error in this Court's characterization of Mr. Pattison's Rule 50(a) argument was immaterial to
15 the judgment herein.

### d. Fourth Claimed Error

17 Fourth, Mr. Pattison takes issue with the Court's statement in the February 22 order that he
18 did not contest the validity of the Restatement's conclusion that the financial statements had to be
19 restated because of the option grant practice. Mr. Pattison argues that he "repeatedly disputed the
20 validity of the Restatement by challenging its admissibility and by questioning its arbitrary
21 assumptions." Mot. at 8; *see also* Reply at 12-13. The problem with Mr. Pattison's argument here
22 is that the Court's statement at issue needs to be taken in context. In subsequent sentences, the
23 Court explains the statement:

> [Mr. Pattison] presented no evidence or proffer challenging the
> conclusion that option grants were not properly accounted for. Any
> disagreement as to the quantitative analysis of the restated financial
>
> are recorded as necessary to prepare financial statements that conform
> to generally accepted accounting principles and to account for assets.

28 Docket No. 321 (Jury Instruction No. 21) (emphasis added).

> statements or precise dollar amounts restated, while perhaps relevant to materiality on the § 10(b)(6) claim, were not material to the § 13(b)(5) or Rule 13b2-1 claims. Moreover, the Court's redaction of material in the Restatement that cast blame on Defendant further reduced any possible prejudice to [Mr. Pattison].

Docket No. 351 (Order at 20). Notably, during the hearing on the parties' motions in limine, Mr. Pattison conceded that he had no disagreement with respect to the quantitative analysis. *See* Docket No. 210 (Tr. at 59-60).[3] His challenges to the Restatement were based on hearsay and admissibility, not to its substantive conclusion.

Moreover, it should be noted that the Court also stated that, even if it erred in admitting the Restatement, "there was substantial evidence of Defendant's wrongful conduct independent of the Restatement's findings." Docket No. 351 (Order at 20). Thus, even if Mr. Pattison's claimed error had merit, it did not affect the ultimate disposition of the case.

### e. Fifth Claimed Error

Fifth, Mr. Pattison argues that the Court erred in stating in the February 22 order that Mr. Pattison had waived his "paper expert" argument because he did not raise the argument before or during trial. *See* Mot. at 9; Reply at 13. It is a fair argument that the Court erred in making this statement given that, in his motion in limine to exclude the Restatement, Mr. Pattison protested that the SEC "seeks to try this case by proxy and to rely on this hearsay document in lieu of expert witnesses." Docket No. 154 (Mot. at 1).

---

[3]

| Court: | So you don't object to the actual numbers; the restated balance-sheet information; all of the – the accounting part of it, then? |
| --- | --- |
| Counsel: | I think that's right, your Honor. It's – I think it's the narrative. |
| Court: | So it's the narrative that describes the investigation, the findings, the blaming of Mr. Pattison and management – the findings of – kind of the qualitative stuff. |
| Counsel: | Exactly. . . . |

Docket No. 210 (Tr. at 59-60).

9

1   Even so, the error does not warrant changing the judgment because the Court made
2   alternative rulings on the "paper expert" argument. The Court stated that the argument was without
3   merit because "[t]he fact that a financial statement contains analyses, opinions, or conclusions does
4   not render it an expert opinion," because "[i]f that were the case, all 10-Ks and 10-Qs would be
5   considered expert reports [and] Defendant cites no authority for this proposition." Docket No. 351
6   (Order at 21). The Court further stated that "any error in admitting the Restatement was harmless."
7   *Id.*

### f.  Sixth Claimed Error

Sixth, Mr. Pattison argues that the Court failed to instruct the jury on Rule 13b2-1 as it had promised. *See* Mot. at 9-10; Reply at 10. This contention is without merit.

Initially, the Court proposed an instruction for Rule 13b2-1 that included the following language: "The SEC need not prove that the defendant knowingly (as defined in Instruction No. ____) falsified or caused to be falsified any book, record, or account of Embarcadero. In addition, the SEC need not prove that the book, record, or account was materially (as defined in Instruction No. ____) false or inaccurate." Docket No. 241, at 58 (proposed instruction). Mr. Pattison objected to the instruction, as the Court noted in a subsequent order in which it finalized the jury instructions:

> The defendant has objected to this instruction. The defendant argues that the word "falsify" by itself means only deliberate, intentional conduct. The defendant also has a problem with the paragraph discussing materiality. Basically, these are the same issues that the defendant raised in his prior briefing on jury instructions. The Court reiterates that, unlike § 13(b)(5), Rule 13b2-1 does not require that the act be done knowingly. The Court previously noted the SEC comments and case law on this point.
>
> To address the defendant's concerns, the Court shall reiterate that the statute does not require perfection but only that books, records and accounts in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

Docket No. 268, Ex. 2, at 36-37. Thus, the Court modified the instruction to state, in relevant part, as follows:

> The SEC need not prove that the defendant knowingly (as defined in Instruction No. ____) falsified or caused to be falsified any book, record, or account of Embarcadero. In addition, the SEC need not prove that the book, record, or account was materially (as defined in Instruction No. ____) false or inaccurate. The SEC must prove that

1  ==the books, records, and accounts did not, in reasonable detail,==
2  ==accurately and fairly reflect the transaction and disposition of the assets of Embarcadero.==

*Id.* at 36 (highlighted portion in original). The highlighted portion reflects the modification made by the Court – *i.e.*, the addition of new language. Thus, the Court kept the substance of its promise that it would reiterate that the statute only requires that books, records, and accounts, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.[4] The Court's failure to expressly state that the rule does not require "perfection" was not material to the instruction. Moreover, Mr. Pattison never objected that any language had been left out of the Rule 13b2-1 instruction that was ultimately given to the jury.

### g. Seventh Claimed Error

Seventh, Mr. Pattison argues that the Court erred in stating in the February 22 order that there was evidence that the PWC auditors were misled. *See* Mot. at 10-11; Reply at 10. This is another example of semantic quibbling by Mr. Pattison. The Court was simply conveying the point that the PWC auditors were not expressly "told by Defendant that the option grants were backdated." Docket No. 351 (Order at 10). The PWC witnesses testified persuasively that they were not aware of the backdating. Mr. Pattison failed to effectively impeach them on cross-examination.

### h. Eighth Claimed Error

Eighth, Mr. Pattison asserts that the Court erred in stating in its order and final judgment that he currently holds a position as an accountant in a "private trading company." *See* Mot. at 11-12; Reply at 10. Here, the Court did make an error. At his deposition, Mr. Pattison testified that he is currently employed by LCF Enterprises and that the company is not a publicly held company but rather a family office. *See* Docket No. 329 (Tashjian Decl., Ex. A) (Pattison Depo. at 60). It is a private company but not a private trading company. Once again, however, the error is immaterial. The Court's point was that Mr. Pattison was still working as an accountant and nothing precluded

---

[4] The Court said it would *reiterate*. Nowhere earlier did the Court say that the rule does not require perfection.

his returning to public accounting. Notably, Mr. Pattison stated in his deposition that his work for LCF is "[m]uch the same as what I would do at a public accounting firm." *Id.*

### i. Ninth Claimed Error

Ninth, Mr. Pattison contends that the Court erred in stating in its order and judgment that he did not dispute that second-tier penalties, at the very least, would be appropriate if any penalty were to apply. *See* Mot. at 12; Reply at 13. According to Mr. Pattison, the statement is incorrect and "unnecessary for purposes of the opinion or the imposition of penalties." Mot. at 12. Mr. Pattison's concern is that the Ninth Circuit may be misled. *See id.*; Reply at 13.

The problem with Mr. Pattison's argument is that, even if he did not make any concession about second-tier penalties, there is no reason to amend the judgment based on the above. He does not contend that this alleged misstatement about his legal position affected the outcome herein. In any event, even in the absence of any concession, the Court's ruling on the merits of second-tier penalty stands.

### j. Tenth Claimed Error

Tenth, Mr. Pattison contends that the Court erred in its order and judgment by issuing an injunction when the jury found that he acted at most "knowingly," and not without "scienter." *See* Mot. at 13-14; Reply at 6-8. Mr. Pattison's argument here boils down to the contention that, when the Ninth Circuit used the term "scienter" in *SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996), it meant only an "intent to deceive, manipulate, or defraud," which is how the Supreme Court defined "scienter" in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).

Mr. Pattison's argument is flawed for multiple reasons.

First, although, in *Ernst*, the Supreme Court did define "scienter" as an "intent to deceive, manipulate, or defraud," it never held that that was the only definition of the term applicable in all contexts. Indeed, the Supreme Court noted that, "[i]n *this* opinion [which addressed a § 10(b)/Rule 10b-5 violation] the term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud." *Id.* at 193 n.12 (emphasis added). Notably, Black's Law Dictionary recognizes a broader definition of the term, noting that it "is frequently used to signify the defendant's guilty knowledge." Black's Law Dictionary 1345 (6th ed.).

Second, it is clear that, in *Fehn*, in which the Ninth Circuit stated that one factor to consider in deciding whether to impose an injunction is the degree of "scienter" – the court intended to use a broader meaning of the term – *i.e.*, state of mind. *See, e.g.*, *Fehn*, 97 F.3d at 1293, 1295 (in aiding and abetting case, discussing whether primary violator's had the "[requisite] scienter for commission of the primary violation" and whether defendant had the "requisite scienter for aiding and abetting liability," which was "'knowingly'"). In rejecting the earlier Rule 50(b) motion, the Court explained that the state of mind found by the jury informed the first *Fehn* factor. Mr. Pattison's singular focus on the word "scienter" ignores the substance of this Court's analysis.

Third, under Mr. Pattison's position, there could never be an injunction for a securities violation unless the defendant had an intent to deceive, manipulate, or defraud. This position, however, is contrary to Ninth Circuit law, as the SEC points out. *See SEC v. Murphy*, 626 F.2d 633, 654 (9th Cir. 1980) (noting that, at trial, defendant was found to have violated § 17(a) of 1933 Act and § 10(b) of 1934 Act and Rule 10b-5; upholding "the injunction both because we concur in the district court's finding that Murphy acted with scienter and because the defendant violated § 17(a)(2), *as to which an injunction may issue without proof of scienter*") (emphasis added).

Fourth, although there are courts that have held that § 13 does not have a scienter requirement, they have typically explained that that is the case in a § 13 civil action; in contrast, a § 13 criminal action (*i.e.*, § 13(b)(5)) requires a showing of knowing falsification, which *is* a scienter requirement.[5] *See, e.g.*, *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998). While the instant case is

---

[5] Section 78m(b)(2) provides that certain issuers shall, *inter alia*, "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer." 15 U.S.C. § 78m(b).

Section 78m(b)(4) provides that "[n]o *criminal* liability shall be imposed for failing to comply with the requirements of paragraph (2) of this subsection except as provided in paragraph (5) of this subsection." *Id.* § 78m(b)(4) (emphasis added).

Section 78m(b)(5) in turn provides: "No person shall . . . *knowingly* falsify any book, record, or account described in paragraph (2)." *Id.* § 78m(b)(5) (emphasis added); *see also* H.R. Conf. Rep. 100-576, at 916 ("The Senate amendment amended Section 13(b) of the Securities Exchange Act of 1934 to provide that no criminal liability shall be imposed for failing to comply with the FCPA's books and records or accounting control provisions unless a person knowingly circumvents a system of internal accounting controls or knowingly falsifies books, records, or accounts kept pursuant to Section 13(b)(2) of the Exchange Act.").

13

a civil action and not a criminal action, the § 13 jury instruction that the parties agreed upon stated that *knowing* falsification was required – in other words, the SEC (although it did not have to) agreed to the criminal liability scienter requirement. Accordingly, there was scienter in this case (in the sense of a knowing falsification); at least, the jury so found.

Finally, even as to the merits of Mr. Pattison's own slicing and dicing of the word "scienter," Mr. Pattison fails to explain how a knowing falsification is really anything different from an intent to deceive. In other words, if a person intentionally makes a false statement (found here), that is tantamount to an intent to deceive. As the Ninth Circuit stated in *Gebhart v. SEC*, 595 F.3d 1034 (9th Cir. 2010), "[t]o establish a violation of section 10(b) and Rule 10b-5, the SEC is required to 'show that there has been a misstatement or omission of material fact, made with scienter'" and "'[t]he plaintiffs may establish scienter by proving either actual *knowledge* or recklessness.'" *Id.* at , 1040 (emphasis added)  In his motion, Mr. Pattison states: "Equating any volitional act with the heightened standard of 'intent to deceive, defraud or manipulate' is contrary to law and contrary to the purpose of the different standards." Mot. at 14. But this statement misses the point. This is not about *any* volitional act; this is about the volitional act of *falsifying*. As noted in the legislative history for § 13, "[t]he knowledge required is that the person be aware that he is or may be making a false statement or causing corporate records to be falsified through a conscious undertaking or due to his conscious disregard for the truth." S. Rep. 95-114, at 4107.

### k.     Eleventh Claimed Error

Eleventh, Mr. Pattison argues that the Court erred in stating that (1) the jury concluded that he did not do "proper accounting" and that (2) his backdating conduct persisted until the end of his employment with Embarcadero. *See* Mot. at 14-15. The first argument is once again semantic quibbling. The second argument has technical merit to the extent the conduct may not have persisted to the very end of Mr. Pattison's employment, but this error in characterization of the evidence is immaterial because his conduct did continue for four years up until his final year of

---

In *Ponce v. SEC*, 345 F.3d 722 (9th Cir. 2003), the Ninth Circuit did state that "[a] plain reading of Section 13(b) reveals that it . . . does not impose a scienter requirement." *Id.* at 737 n.10. However, at issue in *Ponce* was only § 13(b)*(2)*. It did not apply to § 13(b)(5)'s criminal liability standard.

14

employment with Embarcadero. The Court's analysis and ultimate judgment was not affected by the claimed overstatement.

### 3. Limited-Term Injunction

As a final point, the Court addresses a new argument that Mr. Pattison raised at the hearing on his Rule 59(e) motion. According to Mr. Pattison, the Court should amend the judgment so as to impose an injunction for only a limited period of time as opposed to an injunction of indefinite length.

The Court rejects Mr. Pattison's argument. It was never raised in any of his prior briefing, including but not limited to his opposition to the SEC's request for an injunction. Thus, there was no error (manifest or otherwise) by the Court in not imposing a limited-term injunction. In a letter brief filed after the hearing on the Rule 59(e) motion, Mr. Pattison contends that he did make the argument in previously filed papers. He points out that, in his opposition to the SEC's request for an injunction, he made the following statement:

> The Commission asks the Court to permanently enjoin Mr. Pattison from committing future violations of Sections 13(b)(5) and Rule 13b2-1 of the Exchange Act, yet it produced *no* evidence that Pattison is at all likely, much less reasonably likely, to violate those laws in the future. Having failed to present such proof, and it appearing that there are no civil enforcement actions in which an injunction has been imposed on a defendant without a showing of scienter, this court should deny the Commission's request for the imposition of an injunction of any length.

Docket No. 336 (Opp'n at 13) (emphasis in original; footnote omitted). However, that Mr. Pattison opposed an injunction of "any length" cannot be equated with a position advocating a limited-term injunction. Certainly, Mr. Pattison failed to present any authorities or argument by a limited term injunction might be appropriate. Accordingly, the Court denies Mr. Pattison's request for relief.

That being said, the Court notes that this ruling does not preclude Mr. Pattison from seeking a modification or dissolution of the injunction based on the applicable standards at some point in the future. *See, e.g.*, *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) (stating that "[a] party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction").

## II. CONCLUSION

For the foregoing reasons, the Court denies the Rule 50(b) motion and the Rule 59(a) motion and grants in part and denies in part the Rule 59(e) motion. The final judgment is amended pursuant to Rule 59(e) so as to remove the Rule 13b2-2 language from the injunction. The Court shall also correct factual inaccuracies made in its February 22 and February 23 orders to clarify the record on appeal; however, these corrections do not affect the final judgment. The corrected orders, which include the terms of the final judgment as now amended, are attached as Exhibits A and B (with the corrections in bold and green highlight) to this order. The corrected orders shall also be concurrently filed herewith.

This order disposes of Docket No. 355.

IT IS SO ORDERED.

Dated: June 9, 2011

_____
EDWARD M. CHEN
United States District Judge